1 | PETER N. HADIARIS, ESQ.
State Bar No. 122590
2 | 100 E. St. Ste 210
Santa Rosa, CA 95404
3 | 415/694-0052
peter@hadiaris.com
4 | Attorney for debtor

5

6

7

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | In Re: )
  | )
11 | SF OAKLAND BAY LLC ) No. 25-30699 HLB
  | )
12 | Debtor(s) ) Chapter 11
  | )
13 | TIN: 5836 ) DECLARATION OF JOSEPH
  | ——————————————————————————————— ) CHUA SUPPORTING
14 | ) MOTION FOR ORDER
  | APPROVING USE OF CASH
15 | COLLATERAL

16 |     I, Joseph Chua, declare:

17 |     1.  I am the president of West Bay Corporation, the managing

18 | member of the debtor.  I am also the President of 21st Century

19 | Corporation, also a member of the debtor.  These entities hold a

20 | combined 87% equity interest in the debtor.  I have personal

21 | knowledge of the facts in this declaration and can testify to

22 | them competently if called as a witness.

23 |     2. The Debtor operates a parking garage at 401 Main

24 | Street/38 Bryant St., San Francisco, CA.  The garage provides

25 | licensed monthly parking to the Portside Condominium complex and

26 | neighboring office and residential buildings.  The Debtor's

27 | financial distress stems from limitations on the debtor's ability

28 | to raise parking fees over time contained in perpetual license

1 agreements recorded in the 1980's and 1990's, while no such
2 limits apply to the Debtor's expenses. The debtor filed this
3 case to reject the license agreements, raise rates to near
4 market, and thereby restore financial viability to the garage.

5     3. 100% of the debtor's operating revenue comes from
6 monthly fees charged to patrons of the garage, who are nearby
7 residents and office workers. The debtor needs access to these
8 funds to pay its normal operating expenses, which include its
9 mortgage with Bank of Hawaii, condominium dues to the Portside
10 Master Owners Association (the garage is a unit in a mixed use
11 condominium project), insurance, property tax, repairs,
12 management fees to the garage operator, and other ordinary
13 business expenses, during the pendency of the case.

14     4. The garage revenues are subject to cash collateral
15 rights of four of the debtor's creditors, in order of priority:

16     (1) Bank of Hawaii - the bank has a first deed of trust
17 on the garage, which contains a standard rents and profits
18 provision. Exhibit 1 is a true and correct copy of its deed of
19 trust. The bank has stipulated to the use of its cash collateral
20 in accordance with the terms of the accompanying stipulation.

21     (2) US Small Business Administration - the SBA has a
22 second position lien securing the debtor's SBA loan. Exhibit 2
23 is a copy of SBA's loan agreement with the debtor. The debtor
24 proposes to give the SBA a replacement lien on newly generated
25 cash collateral as adequate protection, and will maintain current
26 payments on the loan during the case.

27     (3) 21st Century Corporation - 21st has a third priority
28 lien on cash collateral based on its second priority deed of

trust on the garage, recorded April 11, 2025. This deed of
trust also has a standard rents and profits clause. Exhibit 3 is
a true and correct copy of its deed of trust. 21st is my
family's company, and has consented to use of its cash collateral
without adequate protection. Exhibit 4 is a copy of the letter I
executed on its behalf, giving that consent.

(4) Continental Casualty Insurance - CCI has a fourth
priority interest in the cash collateral by virtue of a personal
property judgment lien it filed with the Secretary of State on
June 27, 2025. This lien was created to enforce a judgment
obtained by its assignor, Portside Homeowners' Association, on
September 24, 2024. The debtor intends to avoid this lien as a
preferential transfer, and requests that the court grant this
motion without ordering adequate protection.

5. The debtor's monthly revenues for 2025 have averaged
about $44,500 per month. The debtor's monthly expenses average
about $63,000 per month, including monthly payments to Bank of
Hawaii ($26,700), the SBA ($731) and dues to the Portside Master
Owner's Association ($29,000, disputed). Without access to our
cash collateral, SFOB has no way to meet its monthly expenses.

6. The debtor's current bank balances total about $50,000,
in one account in Bank of Hawaii and three at JP Morgan Chase
(all pending transfer to a debtor in possession account). The
debtor requests that the court grant interim approval to use
existing cash balances pending a final hearing, so that we can
cover our first month's expenses.

1    Executed August 19, 2025 in Tamuning, GU.  I declare under
2    penalty of perjury that the foregoing is true and correct.

                                            Joseph Chua

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

Prepared By/Return To:

Bank of Hawaii
c/o Buchalter Nemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017
Attention: Joe Vargas

FIRST AMERICAN TITLE COMPANY
HEREBY CERTIFIES THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT

BY: _____ (ST)
RECORDED: __11-2-16__
SERIES NO.: 2016 - K353402-00

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

by

SF Oakland Bay, LLC,
a California Limited liability Company,
as Grantor,

to

First American Title Company
as Trustee,

in favor of

Bank of Hawaii,
as Beneficiary

This document serves as a Fixture Filing under the California Uniform Commercial Code.

Grantor's Organizational Identification Number is 201111210180.

**Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing**

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is made as of the 19th day of September, 2016, by SF Oakland Bay, LLC, a California limited liability company (herein referred to as "Grantor"), whose address is 1088 W. Marine Dr., Suite 214, Dededo, Guam 96929, to First American Title Company ("Initial Trustee"), whose address is 1440 Chapin Avenue, Suite 350A, Burlingame, California 94010, for the benefit of Bank of Hawaii ("Lender"), whose address is P.O. Box BH, Hagatna, Guam 96932.

Recitals

Grantor has requested that Lender make the Loan (as hereinafter defined) to Grantor. As a condition precedent to making the Loan, Lender has required that Grantor execute and deliver this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing to Trustee for the benefit of Lender.

Grants and Agreements

Now, therefore, in order to induce Lender to make the Loan to Grantor, Grantor agrees as follows:

Article I
Definitions.

As used in this Deed of Trust, the terms defined in the Preamble hereto shall have the respective meanings specified therein, and the following additional terms shall have the meanings specified:

"Accessories" means all fixtures, fittings, apparatus, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies and other articles of personal property and replacements thereof, of every kind and character, tangible and intangible (including software embedded therein), now owned or hereafter acquired by Grantor, which are now or hereafter attached to, affixed to, placed upon or situated in, on or about the Land or Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or Improvements, and all Additions to the foregoing, all of which are hereby declared to be permanent accessions to the Land.

"Accounts" means all accounts of Grantor, within the meaning of the Uniform Commercial Code of the State, derived from or arising out of the use, occupancy or enjoyment of the Property or for services rendered therein or thereon.

"Additions" means any and all alterations, additions, accessions and improvements to property, substitutions therefor, and renewals and replacements thereof.

"Beneficiary" means Lender and its successors, participants, and assigns.

"Claim" means any liability, suit, action, claim, demand, loss, expense, penalty, fine, judgment or other cost of any kind or nature whatsoever, including fees, costs and expenses of attorneys, consultants, contractors and experts.

"Condemnation" means any taking of title to, use of, or any other interest in the Property under the exercise of the power of condemnation or eminent domain, whether temporarily or permanently, by any Governmental Authority or by any other Person acting under or for the benefit of a Governmental Authority.

"Condemnation Awards" means any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

"Contract of Sale" means any contract for the sale of all or any part of the Property or any interest therein, whether now in existence or hereafter executed.

"Deed of Trust" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Default" means an event or circumstance which, with the giving of Notice or lapse of time, or both, would constitute an Event of Default under the provisions of this Deed of Trust.

"Design and Construction Documents" means, collectively, (a) all contracts for services to be rendered, work to be performed or materials to be supplied in the development of the Land or the construction or repair of Improvements, including all agreements with architects, engineers or contractors for such services, work or materials; (b) all plans, drawings and specifications for the development of the Land or the construction or repair of Improvements; (c) all permits, licenses, variances and other rights or approvals issued by or obtained from any Governmental Authority or other Person in connection with the development of the Land or the construction or repair of Improvements; and (d) all amendments of or supplements to any of the foregoing.

"Encumbrance" means any Lien, easement, right of way, roadway (public or private), declaration, condition, covenant or restriction (including any declaration, condition, covenant or restriction imposed in connection with any condominium development or cooperative housing development), Lease or other matter of any nature that would affect title to the Property.

"Environmental Agreement" means the Environmental Indemnification and Release Agreement of even date herewith by and between Grantor, Guarantor, and Lender pertaining to the Property, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified. The Environmental Agreement is one of the Loan Documents, but this Deed of Trust does not secure the obligations of Grantor under the Environmental Agreement.

"Event of Default" means an event or circumstance specified in Article VI and the continuance of such event or circumstance beyond the applicable grace and/or cure periods therefor, if any, set forth in Article VI.

"Expenses" means all fees, charges, costs and expenses of any nature whatsoever incurred at any time and from time to time (whether before or after an Event of Default) by Beneficiary or Trustee in making, funding, administering or modifying the Loan, in protecting the security of this Deed of Trust, in negotiating or entering into any "workout" of the Loan, or in exercising or enforcing any rights, powers and remedies provided in this Deed of Trust or any of the other Loan Documents, including attorneys'

B0672.0002 BN 21587452v3
2

fees, court costs, receiver's fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of, or selling, the Property.

"Governmental Authority" means any governmental or quasi-governmental entity, including any court, department, commission, board, bureau, agency, administration, service, district or other instrumentality of any governmental entity.

"Guarantor" has the meaning set forth in the Loan Agreement.

"Guaranty" has the meaning set forth in the Loan Agreement.

"Hedge Agreement" means any agreement, whether or not in writing, relating to any transaction that is a rate swap, basis swap transaction, forward rate transaction, commodity swap, commodity option, equity or equity index swap or option, bond option, note or bill option, interest rate option, forward foreign exchange transaction, cap transaction, spot or floor transaction, collar transaction, currency swap transaction, cross-currency rate swap transaction, swap option, currency option, credit swap or default transaction, T-lock, or any other similar transaction (including any option to enter into any of the foregoing) or any combination of the foregoing, and, unless the context otherwise clearly requires, any agreement or contract that constitutes a "swap" within the meaning of Section 1a(47) of the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute, and CFTC Regulation 1.3(xxx), any form of master agreement published by the International Swaps and Derivatives Association, Inc., and any other master agreement, entered into by Grantor, together with any related schedules and confirmations, as the same may be amended, restated, replaced, supplemented, superseded or otherwise modified from time to time in accordance with its terms, relating to or governing any or all of the foregoing.

"Improvements" means all buildings, structures and replacements thereof and other improvements now or hereafter existing, erected or placed on the Land, including all plant, equipment, apparatus, machinery and fixtures of every kind and nature whatsoever forming part of said structures and/or buildings together with any on-site improvements and off-site improvements owned by Grantor in any way used or to be used in connection with the use, enjoyment, occupancy or operation of the Land.

"Insurance Proceeds" means the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to such Property, in each case whether now or hereafter existing or arising.

"Land" means the real property described in Exhibit A attached hereto and made a part hereof.

"Laws" means all federal, state and local laws, statutes, rules, ordinances, regulations, codes, licenses, authorizations, decisions, injunctions, interpretations, orders or decrees of any court or other Governmental Authority having jurisdiction as may be in effect from time to time.

"Leases" means all leases, license agreements and other occupancy or use agreements (whether oral or written), now or hereafter existing, which cover or relate to the Property or any part thereof, together with all options therefor, amendments thereto and renewals, modifications and guaranties thereof, including any cash or security deposited under the Leases to secure performance by the tenants of their obligations under the Leases, whether such cash or security is to be held until the expiration of the terms of the Leases or applied to one or more of the installments of rent coming due thereunder.

B0672.0002 BN 21587452v3
3

"Letter of Credit" means any letter of credit issued by Beneficiary for the account of Grantor or its nominee in connection with the development of the Land or the construction of the Improvements, together with any and all extensions, renewals or modifications thereof, substitutions therefor or replacements thereof.

"Lien" means any mortgage, deed of trust, pledge, security interest, assignment, judgment, lien or charge of any kind, including any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction.

"Loan" means the loan from Beneficiary to Grantor, the repayment obligations in connection with which are evidenced by the Note.

"Loan Agreement" means the Term Loan Agreement of even date herewith between Grantor and Lender which sets forth, among other things, the terms and conditions upon which the proceeds of the Loan will be disbursed, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Loan Documents" means this Deed of Trust, the Note, the Guaranty, the Environmental Agreement, the Loan Agreement, any Hedge Agreement, any application or reimbursement agreement executed in connection with any Letter of Credit, and any and all other documents which Grantor, Guarantor or any other party or parties have executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Note" means the Promissory Note of even date herewith in the original principal amount of Five Million Five Hundred Fifty Thousand and No/100 Dollars ($5,550,000.00) made by Grantor to the order of Lender, as the same may from time to time be extended, renewed, amended, restated, supplemented or otherwise modified.

"Notice" means a notice, request, consent, demand or other communication given in accordance with the provisions of Section 9.8 of this Deed of Trust.

"Obligations" means all present and future debts, advances, obligations and liabilities of Grantor to Beneficiary and/or Trustee arising pursuant to, and/or on account of, the provisions of this Deed of Trust, the Note or any of the other Loan Documents, including the obligations: (a) to pay all principal, interest, late charges, prepayment premiums (if any) and other amounts due at any time under the Note; (b) to pay all Expenses, indemnification payments, fees and other amounts due at any time under this Deed of Trust or any of the other Loan Documents, together with interest thereon as herein or therein provided; (c) to pay and perform all obligations of Grantor under any Hedge Agreement between Grantor and Beneficiary (or its affiliate); (d) to perform, observe and comply with all of the other terms, covenants and conditions, expressed or implied, which Grantor is required to perform, observe or comply with pursuant to this Deed of Trust or any of the other Loan Documents; and (e) to pay and perform all future advances and other obligations that Grantor or any successor in ownership of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Beneficiary, when a writing evidences the parties' agreement that the advance or obligation be secured by this Deed of Trust; excluding, however, the debts, obligations and liabilities of Grantor under the Environmental Agreement. This Deed of Trust does not secure the Environmental Agreement, the Guaranty or any other Loan Document that is expressly stated to be unsecured.

"Permitted Encumbrances" means (a) any matters set forth in any policy of title insurance issued to Beneficiary and insuring Beneficiary's interest in the Property which are acceptable to Beneficiary as of the date hereof, (b) the Liens and interests of this Deed of Trust, and (c) any other Encumbrance that Beneficiary shall expressly approve in writing in its sole and absolute discretion.

"Person" means an individual, a corporation, a partnership, a joint venture, a limited liability company, a trust, an unincorporated association, any Governmental Authority or any other entity.

"Personalty" means all personal property of any kind or nature whatsoever, whether tangible or intangible and whether now owned or hereafter acquired, in which Grantor now has or hereafter acquires an interest and which is used in the construction of, or is placed upon, or is derived from or used in connection with the maintenance, use, occupancy or enjoyment of, the Property, including (a) the Accessories; (b) the Accounts; (c) all franchise, license, management or other agreements with respect to the operation of the Real Property or the business conducted therein (provided all of such agreements shall be subordinate to this Deed of Trust, and Beneficiary shall have no responsibility for the performance of Grantor's obligations thereunder) and all general intangibles (including payment intangibles, trademarks, trade names, goodwill, software and symbols) related to the Real Property or the operation thereof; (d) all sewer and water taps, appurtenant water stock or water rights, allocations and agreements for utilities, bonds, letters of credit, letter-of-credit rights, permits, certificates, licenses, guaranties, warranties, causes of action, judgments, Claims, profits, security deposits, utility deposits, deposits or escrows for taxes, insurance or other matters, and all rebates or refunds of fees, Taxes, assessments, charges or deposits paid to any Governmental Authority related to the Real Property or the operation thereof; (e) all of Grantor's rights and interests under all Hedge Agreements, including all rights to the payment of money from Beneficiary (or its affiliate) under any Hedge Agreement and all accounts, deposit accounts and general intangibles, including payment intangibles, described in any Hedge Agreement; (f) all insurance policies held by Grantor with respect to the Property or Grantor's operation thereof; and (g) all money, instruments, chattel paper, or mortgages and documents (whether tangible or electronic) arising from or by virtue of any transactions related to the Property, and all deposits and deposit accounts of Grantor with Beneficiary related to the Property, including any such deposit account from which Grantor may from time to time authorize Beneficiary to debit and/or credit payments due with respect to the Loan; together with all Additions to and Proceeds of all of the foregoing.

"Proceeds," when used with respect to any of the Property, means all proceeds of such Property, including all Insurance Proceeds and all other proceeds within the meaning of that term as defined in the Uniform Commercial Code of the State.

"Property" means the Real Property and the Personalty and all other rights, interests and benefits of every kind and character which Grantor now has or hereafter acquires in, to or for the benefit of the Real Property and/or the Personalty and all other property and rights used or useful in connection therewith, including all Leases, all Rents, all Condemnation Awards, all Proceeds, and all of Grantor's right, title and interest in and to all Design and Construction Documents, all Contracts of Sale and all Refinancing Commitments.

"Property Assessments" means all Taxes, payments in lieu of taxes, water rents, sewer rents, assessments, condominium and owner's association assessments and charges, maintenance charges and other governmental or municipal or public or private dues, charges and levies and any Liens (including federal tax liens) which are or may be levied, imposed or assessed upon the Property or any part thereof, or upon any Leases or any Rents, whether levied directly or indirectly or as excise taxes, as income taxes, or otherwise.

5

"Real Property" means the Land and Improvements, together with (a) all estates, title interests, title reversion rights, remainders, increases, issues, profits, rights of way or uses, additions, accretions, servitudes, strips, gaps, gores, liberties, privileges, water rights, water courses, alleys, passages, ways, vaults, licenses, tenements, franchises, hereditaments, royalties, appurtenances, air space, easements, rights-of-way, rights of ingress or egress, parking rights, timber, crops, mineral interests and other rights, now or hereafter owned by Grantor and belonging or appertaining to the Land or Improvements; (b) all Claims whatsoever of Grantor with respect to the Land or Improvements, either in law or in equity, in possession or in expectancy; (c) all estate, right, title and interest of Grantor in and to all streets, roads and public places, opened or proposed, now or hereafter adjoining or appertaining to the Land or Improvements; and (d) all options to purchase the Land or Improvements, or any portion thereof or interest therein, and any greater estate in the Land or Improvements, and all Additions to and Proceeds of the foregoing.

"Refinancing Commitment" means any commitment from or other agreement with any Person providing for the financing of the Property, some or all of the proceeds of which are intended to be used for the repayment of all or a portion of the Loan.

"Rents" means all of the rents, royalties, issues, profits, revenues, earnings, income and other benefits of the Property, or arising from the use or enjoyment of the Property, including all such amounts paid under or arising from any of the Leases and all fees, charges, accounts or other payments for the use or occupancy of rooms or other public facilities within the Real Property.

"State" means the state in which the Land is located.

"Taxes" means all taxes and assessments, whether general or special, ordinary or extraordinary, or foreseen or unforeseen, which at any time may be assessed, levied, confirmed or imposed by any Governmental Authority or any community facilities or other private district on Grantor or on any of its properties or assets or any part thereof or in respect of any of its franchises, businesses, income or profits.

"Transfer" means any direct or indirect sale, assignment, conveyance or transfer, including any Contract of Sale and any other contract or agreement to sell, assign, convey or transfer, whether made voluntarily or by operation of Law or otherwise, and whether made with or without consideration.

"Trustee" means the Initial Trustee or its successor in trust who may be acting under and pursuant to this Deed of Trust from time to time.

## Article II
### Granting Clauses; Condition of Grant.

Section 2.1    Conveyances and Security Interests.

In order to secure the prompt payment and performance of the Obligations, Grantor (a) irrevocably and unconditionally grants, conveys, transfers and assigns to Trustee, in trust, for the benefit of Beneficiary, with power of sale and right of entry and possession, all estate, right, title and interest that Grantor now has or may later acquire in and to the Real Property; (b) grants to Beneficiary a security interest in the Personalty; (c) assigns to Beneficiary, and grants to Beneficiary a security interest in, all Condemnation Awards and all Insurance Proceeds; and (d) assigns to Beneficiary, and grants to Beneficiary a security interest in, all of Grantor's right, title and interest in, but not any of Grantor's obligations or liabilities under, all Design and Construction Documents, all Contracts of Sale and all Refinancing Commitments. All Persons who may have or acquire an interest in all or any part of the Property will be deemed to have notice of, and will be bound by, the terms of the Obligations and each

other agreement or instrument made or entered into in connection with each of the Obligations. Such terms include any provisions in the Note, the Loan Agreement or any Hedge Agreement between Grantor and Beneficiary (or its affiliate) which provide that the interest rate on one or more of the Obligations may vary from time to time.

Section 2.2     Absolute Assignment of Leases and Rents.

In consideration of the making of the Loan by Beneficiary to Grantor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor absolutely and unconditionally assigns the Leases and Rents to Beneficiary. This assignment is, and is intended to be, an unconditional, absolute and present assignment from Grantor to Beneficiary of all of Grantor's right, title and interest in and to the Leases and the Rents and not an assignment in the nature of a pledge of the Leases and Rents or the mere grant of a security interest therein. So long as no Event of Default shall exist, however, and so long as Grantor is not in default in the performance of any obligation, covenant or agreement contained in the Leases, Grantor shall have a license (which license shall terminate automatically and without notice upon the occurrence of an Event of Default or a default by Grantor under the Leases) to collect, but not prior to accrual, all Rents. Grantor agrees to collect and hold all Rents in trust for Beneficiary and to use the Rents for the payment of the cost of operating and maintaining the Property and for the payment of the other Obligations before using the Rents for any other purpose.

Section 2.3     Security Agreement, Fixture Filing and Financing Statement.

This Deed of Trust creates a security interest in the Personalty, and, to the extent the Personalty is not real property, this Deed of Trust constitutes a security agreement from Grantor to Beneficiary under the Uniform Commercial Code of the State. In addition to all of its other rights under this Deed of Trust and otherwise, Beneficiary shall have all of the rights of a secured party under the Uniform Commercial Code of the State, as in effect from time to time, or under the Uniform Commercial Code in force from time to time in any other state to the extent the same is applicable Law. This Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real estate records of each county where any part of the Property (including such fixtures) is situated. This Deed of Trust shall also be effective as a financing statement with respect to any other Property as to which a security interest may be perfected by the filing of a financing statement and may be filed as such in any appropriate filing or recording office. The respective mailing addresses of Grantor and Beneficiary are set forth in the opening paragraph of this Deed of Trust. A carbon, photographic or other reproduction of this Deed of Trust or any other financing statement relating to this Deed of Trust shall be sufficient as a financing statement for any of the purposes referred to in this Section. Grantor hereby irrevocably authorizes Beneficiary at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements as authorized by applicable Law, reasonably required by Beneficiary to establish or maintain the validity, perfection and priority of the security interests granted in this Deed of Trust.

Section 2.4     Reconveyance of Deed of Trust and Termination of Assignments and Financing Statements.

If and when Grantor has paid and performed all of the Obligations, and no further advances are to be made under the Loan Agreement, Trustee, upon request by Beneficiary, will provide a reconveyance of the Property from the lien of this Deed of Trust and termination statements for filed financing statements, if any, to Grantor. Grantor shall be responsible for the recordation of such reconveyance and the payment of any recording and filing costs. Upon the recording of such reconveyance and the filing of such

Case: 25-30699   Doc# 6   Filed: 09/03/25   Entered: 09/03/25 15:49:04   Page 13 of 50
B0672.0002 BN 21587452v3

termination statements, the absolute assignments set forth in <u>Section 2.2</u> shall automatically terminate and become null and void.

Article III
<u>Representations and Warranties.</u>

Grantor makes the following representations and warranties to Beneficiary:

Section 3.1     <u>Title to Real Property</u>.

Grantor (a) owns good and marketable fee simple title to the Real Property, (b) owns all of the beneficial and equitable interest in and to the Real Property, and (c) is lawfully seized and possessed of the Real Property.  Grantor has the right and authority to convey the Real Property and does hereby convey the Real Property with general warranty.  The Real Property is subject to no Encumbrances other than the Permitted Encumbrances.

Section 3.2     <u>Title to Other Property</u>.

Grantor has good title to the Personalty, and the Personalty is not subject to any Encumbrance other than the Permitted Encumbrances.  None of the Leases, Rents, Design and Construction Documents, Contracts of Sale or Refinancing Commitments are subject to any Encumbrance other than the Permitted Encumbrances.

Section 3.3     <u>Property Assessments</u>.

The Real Property is assessed for purposes of Property Assessments as a separate and distinct parcel from any other property, such that the Real Property shall never become subject to the Lien of any Property Assessments levied or assessed against any property other than the Real Property.

Section 3.4     <u>Independence of the Real Property</u>.

No buildings or other improvements on property not covered by this Deed of Trust rely on the Real Property or any interest therein to fulfill any requirement of any Governmental Authority for the existence of such property, building or improvements; and none of the Real Property relies, or will rely, on any property not covered by this Deed of Trust or any interest therein to fulfill any requirement of any Governmental Authority.  The Real Property has been properly subdivided from all other property in accordance with the requirements of any applicable Governmental Authorities.

Section 3.5     <u>Existing Improvements</u>.

The existing Improvements, if any, were constructed, and are being used and maintained, in accordance with all applicable Laws, including zoning Laws.

Section 3.6     <u>Leases and Tenants</u>.

The Leases are valid and are in full force and effect, and Grantor is not in default under any of the terms thereof.  Except as expressly permitted in the Loan Agreement, Grantor has not accepted any Rents in advance of the time the same became due under the Leases and has not forgiven, compromised or discounted any of the Rents.  Grantor has title to and the right to assign the Leases and Rents to Beneficiary, and no other assignment of the Leases or Rents has been granted.  To the best of Grantor's knowledge and belief, no tenant or tenants occupying, individually or in the aggregate, more than five

B0672.0002 BN 21587452v3

8

percent (5%) of the net rentable area of the Improvements are in default under their Lease(s) or are the subject of any bankruptcy, insolvency or similar proceeding.

Article IV
Affirmative Covenants.

Section 4.1    Obligations.

Grantor agrees to promptly pay and perform all of the Obligations, time being of the essence in each case.

Section 4.2    Property Assessments; Documentary Taxes.

Grantor (a) will promptly pay in full and discharge all Property Assessments, and (b) will furnish to Beneficiary, upon demand, the receipted bills for such Property Assessments prior to the day upon which the same shall become delinquent. Property Assessments shall be considered delinquent as of the first day any interest or penalty commences to accrue thereon. Grantor will promptly pay all stamp, documentary, recordation, transfer and intangible taxes and all other taxes that may from time to time be required to be paid with respect to the Loan, the Note, this Deed of Trust or any of the other Loan Documents.

Section 4.3    Permitted Contests.

Grantor shall not be required to pay any of the Property Assessments, or to comply with any Law, so long as Grantor shall in good faith, and at its cost and expense, contest the amount or validity thereof, or take other appropriate action with respect thereto, in good faith and in an appropriate manner or by appropriate proceedings; provided that (a) such proceedings operate to prevent the collection of, or other realization upon, such Property Assessments or enforcement of the Law so contested, (b) there will be no sale, forfeiture or loss of the Property during the contest, (c) neither Beneficiary nor Trustee is subjected to any Claim as a result of such contest, and (d) Grantor provides assurances satisfactory to Beneficiary (including the establishment of an appropriate reserve account with Beneficiary) of its ability to pay such Property Assessments or comply with such Law in the event Grantor is unsuccessful in its contest. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Grantor shall indemnify and save Beneficiary and Trustee harmless against all Claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Grantor shall comply with such Law and/or pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

Section 4.4    Compliance with Laws.

Grantor will comply with and not violate, and cause to be complied with and not violated, all present and future Laws applicable to the Property and its use and operation.

Section 4.5    Maintenance and Repair of the Property.

Grantor, at Grantor's sole expense, will (a) keep and maintain Improvements and Accessories in good condition, working order and repair, (b) make all necessary or appropriate repairs and Additions to Improvements and Accessories, so that each part of the Improvements and all of the Accessories shall at all times be in good condition and fit and proper for the respective purposes for which they were originally intended, erected, or installed, and (c) commit or permit no waste.

Section 4.6     Additions to Security.

All right, title and interest of Grantor in and to all Improvements and Additions hereafter constructed or placed on the Property and in and to any Accessories hereafter acquired shall, without any further mortgage, conveyance, assignment or other act by Grantor, become subject to the Lien of this Deed of Trust as fully and completely, and with the same effect, as though now owned by Grantor and specifically described in the granting clauses hereof. Grantor agrees, however, to execute and deliver to Trustee and/or Beneficiary such further documents as may be required by the terms of the Loan Agreement and the other Loan Documents.

Section 4.7     Subrogation.

To the extent permitted by Law, Beneficiary shall be subrogated, notwithstanding its release of record, to any Lien now or hereafter existing on the Property to the extent that such Lien is paid or discharged by Beneficiary whether or not from the proceeds of the Loan. This Section shall not be deemed or construed, however, to obligate Beneficiary to pay or discharge any Lien.

Section 4.8     Leases.

(a)     Except as expressly permitted in the Loan Agreement, Grantor shall not enter into any Lease with respect to all or any portion of the Property without the prior written consent of Beneficiary.

(b)     Neither Trustee nor Beneficiary shall be obligated to perform or discharge any obligation of Grantor under any Lease. The assignment of Leases provided for in this Deed of Trust in no manner places on Beneficiary or Trustee any responsibility for (i) the control, care, management or repair of the Property, (ii) the carrying out of any of the terms and conditions of the Leases, (iii) any waste committed on the Property, or (iv) any dangerous or defective condition on the Property (whether known or unknown).

(c)     No approval of any Lease by Beneficiary shall be for any purpose other than to protect Beneficiary's security and to preserve Beneficiary's rights under the Loan Documents, and no such approval shall result in a waiver of a Default or Event of Default.

Article V
Negative Covenants.

Section 5.1     Encumbrances.

Grantor will not permit any of the Property to become subject to any Encumbrance other than the Permitted Encumbrances. Within thirty (30) days after the filing of any mechanic's lien or other Lien or Encumbrance against the Property, Grantor will promptly discharge the same by payment or filing a bond or otherwise as permitted by Law. So long as Beneficiary's security has been protected by the filing of a bond or otherwise in a manner satisfactory to Beneficiary in its sole and absolute discretion, Grantor shall have the right to contest in good faith any Claim, Lien or Encumbrance, provided that Grantor does so diligently and without prejudice to Beneficiary or delay in completing construction of the Improvements. Grantor shall give Beneficiary Notice of any default under any Lien and Notice of any foreclosure or threat of foreclosure with respect to any of the Property. Grantor agrees that it shall indemnify and hold Beneficiary harmless against any loss or liability, cost or expense, including any judgments, attorneys' fees and costs, costs of appeal bonds and printing costs, arising out of or relating to any proceeding instituted by any claimant alleging priority over the lien of this Deed of Trust.

Section 5.2    Transfer of the Property.

Grantor will not Transfer, or contract to Transfer, all or any part of the Property or any legal or beneficial interest therein (except for certain Transfers of the Accessories expressly permitted in this Deed of Trust). The Transfer of any of the general partnership interest in Grantor, if Grantor is a general partnership, or the Transfer of more than ten (10%) of the membership interest in Grantor (whether in one or more transactions during the term of the Loan) shall be deemed to be a prohibited Transfer of the Property.

Section 5.3    Removal, Demolition or Alteration of Accessories and Improvements.

Except to the extent permitted by the following sentence, no Improvements or Accessories shall be removed, demolished or materially altered without the prior written consent of Beneficiary. Grantor may remove and dispose of, free from the Lien of this Deed of Trust, such Accessories as from time to time become worn out or obsolete, provided that, either (a) at the time of, or prior to, such removal, any such Accessories are replaced with other Accessories which are free from Liens other than Permitted Encumbrances and have a value at least equal to that of the replaced Accessories (and by such removal and replacement Grantor shall be deemed to have subjected such replacement Accessories to the Lien of this Deed of Trust), or (b) so long as a prepayment may be made without the imposition of any premium pursuant to the Note, such Accessories are sold at fair market value for cash and the net cash proceeds received from such disposition are paid over promptly to Beneficiary to be applied to the prepayment of the principal of the Loan.

Section 5.4    Additional Improvements.

Grantor will not construct any Improvements other than those presently on the Land and those described in the Loan Agreement without the prior written consent of Beneficiary. Grantor will complete and pay for, within a reasonable time, any Improvements which Grantor is permitted to construct on the Land. Grantor will construct and erect any permitted Improvements (a) strictly in accordance with all applicable Laws and any private restrictive covenants, (b) entirely on lots or parcels of the Land, (c) so as not to encroach upon any easement or right-of-way or upon the land of others, and (d) wholly within any building restriction and setback lines applicable to the Land.

Section 5.5    Restrictive Covenants, Zoning, etc.

Without the prior written consent of Beneficiary, Grantor will not initiate, join in, or consent to any change in, any restrictive covenant, easement, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Property. Grantor (a) will promptly perform and observe, and cause to be performed and observed, all of the terms and conditions of all agreements affecting the Property, and (b) will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor of, or constituting any portion of, the Property.

Article VI
Events of Default.

The occurrence or happening, from time to time, of any one or more of the following shall constitute an Event of Default under this Deed of Trust:

B0672.0002 BN 21587452v3

Section 6.1    Payment Obligations.

Grantor fails to pay any of the Obligations when due, whether on the scheduled due date or upon acceleration, maturity or otherwise.

Section 6.2    Transfers.

Grantor Transfers, or contracts to Transfer, all or any part of the Property or any legal or beneficial interest therein (except for Transfers of the Accessories expressly permitted under this Deed of Trust). The Transfer of the general partnership interest in Grantor, if Grantor is a general partnership, or the Transfer of more than ten (10%) of the membership interests in Grantor (whether in one or more transactions during the term of the Loan) shall be deemed to be a prohibited Transfer of the Property constituting an Event of Default.

Section 6.3    Other Obligations.

Grantor fails to promptly perform or comply with any of the Obligations set forth in this Deed of Trust (other than those expressly described in other Sections of this Article VI), and such failure continues uncured for a period of thirty (30) days.

Section 6.4    Event of Default Under Other Loan Documents.

An Event of Default (as defined therein) occurs under the Note or the Loan Agreement, or Grantor or Guarantor fails to promptly pay, perform, observe or comply with any obligation or agreement contained in any of the other Loan Documents (within any applicable grace or cure period).

Section 6.5    Change in Zoning or Public Restriction.

Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Loan Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

Section 6.6    Default Under Leases.

Grantor fails duly to perform its obligations under any Lease, and such failure is not cured within the grace period, if any, provided in the Lease.

Section 6.7    Default Under Other Lien Documents.

A default occurs under any other mortgage, deed of trust or security agreement covering the Property, including any Permitted Encumbrances.

Section 6.8    Execution; Attachment.

Any execution or attachment is levied against any of the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Article VII
Rights and Remedies.

Upon the happening of any Event of Default, Beneficiary, or Trustee at the direction of Beneficiary, shall have the right, in addition to any other rights or remedies available to Beneficiary under any of the Loan Documents or applicable Law, to exercise any one or more of the following rights, powers or remedies:

Section 7.1    Acceleration.

Beneficiary may accelerate any or all (as determined by Beneficiary in its sole discretion) of the Obligations, whereupon such Obligations shall become immediately due and payable, without notice of default, notice of acceleration or intention to accelerate, presentment or demand for payment, protest, notice of protest, notice of nonpayment or dishonor, or notices or demands of any kind or character (all of which are hereby waived by Grantor).

Section 7.2    Foreclosure; Power of Sale.

Trustee, if and as directed by Beneficiary, shall have all of the rights and may exercise all of the powers set forth in applicable Law of the State, including those powers set forth in Sections 2924 et seq. and Section 2938 of the California Civil Code or any successor provision of Law. Trustee may sell the Property in its entirety or in parcels, and by one or by several sales, as deemed appropriate by Trustee in its sole and absolute discretion. If Trustee chooses to have more than one foreclosure sale, Trustee may cause the foreclosure sales to be held simultaneously or successively, on the same day, or on such different days and at such different times as Trustee may elect. Trustee shall receive and apply the proceeds from the sale of the Property, or any portion thereof, in accordance with Section 2924k of the California Civil Code or any successor provision of Law. Before any foreclosure sale, Beneficiary or Trustee shall give such notice of default and election to sell as may be required by Law. After the lapse of such time as may then be required by Law following the recordation of such notice of default, and notice of sale having been given as then required by Law, Trustee shall sell the property being sold at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary shall have any obligation to make demand on Grantor before any foreclosure sale. From time to time in accordance with then-applicable Law, Trustee may, and in any event at Beneficiary's request shall, postpone any foreclosure sale by public announcement at the time and place noticed for that sale. At any foreclosure sale, Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States (or cash equivalents acceptable to Trustee to the extent permitted by applicable Law), payable at the time of sale. Trustee shall execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, expressed or implied. The recitals in any such deed of any matters of fact, including any facts bearing upon the regularity or validity of any foreclosure sale, shall be conclusive proof of their truthfulness. Any such deed shall be conclusive against all Persons as to the facts recited therein. Any Person, including Trustee or Beneficiary, may purchase at such sale, and any bid by Beneficiary may be, in whole or in part, in the form of cancellation of all or any part of the Obligations.

Section 7.3    Judicial Action.

Beneficiary and Trustee, if and as directed by Beneficiary, shall have the right to bring an action in any court of competent jurisdiction for foreclosure of this Deed of Trust and a deficiency judgment as provided by Law, or for specific enforcement of any of the covenants or agreements of this Deed of Trust.

Section 7.4    Collection of Rents.

Upon the occurrence of an Event of Default, the license granted to Grantor to collect the Rents shall be automatically and immediately revoked, without further notice to or demand upon Grantor. Beneficiary may, but shall not be obligated to, exercise any or all of the rights and remedies provided in Section 2938 of the California Civil Code and perform any or all obligations of the landlord under any or all of the Leases, and Beneficiary may, but shall not be obligated to, exercise and enforce any or all of Grantor's rights under the Leases. Without limiting the generality of the foregoing, Beneficiary may notify the tenants under the Leases that all Rents are to be paid to Beneficiary, and following such notice all Rents shall be paid directly to Beneficiary and not to Grantor or any other Person other than as directed by Beneficiary, it being understood that a demand by Beneficiary on any tenant under the Leases for the payment of Rent shall be sufficient to warrant payment by such tenant of Rent to Beneficiary without the necessity of further consent by Grantor. Grantor hereby irrevocably authorizes and directs the tenants under the Leases to pay all Rents to Beneficiary instead of to Grantor, upon receipt of written notice from Beneficiary, without the necessity of any inquiry of Grantor and without the necessity of determining the existence or non-existence of an Event of Default. Grantor hereby appoints Beneficiary as Grantor's attorney-in-fact with full power of substitution, which appointment shall take effect upon the occurrence of an Event of Default and is coupled with an interest and is irrevocable prior to the full and final payment and performance of the Obligations, in Grantor's name or in Beneficiary's name: (a) to endorse all checks and other instruments received in payment of Rents and to deposit the same in any account selected by Beneficiary; (b) to give receipts and releases in relation thereto; (c) to institute, prosecute and/or settle actions for the recovery of Rents; (d) to modify the terms of any Leases including terms relating to the Rents payable thereunder; (e) to cancel any Leases; (f) to enter into new Leases; and (g) to do all other acts and things with respect to the Leases and Rents which Beneficiary may deem necessary or desirable to protect the security for the Obligations. Any Rents received shall be applied first to pay all Expenses and next in reduction of the other Obligations. Grantor shall pay, on demand, to Beneficiary, the amount of any deficiency between (i) the Rents received by Beneficiary, and (ii) all Expenses incurred together with interest thereon as provided in the Loan Agreement and the other Loan Documents.

Section 7.5    Taking Possession or Control of the Property.

As a matter of right without bond and without regard to the adequacy of the security, and to the extent permitted by Law without notice to Grantor, Beneficiary shall be entitled, upon application to a court of competent jurisdiction, to the immediate appointment of a receiver for all or any part of the Property and the Rents, whether such receivership may be incidental to a proposed sale of the Property or otherwise, and Grantor hereby consents to the appointment of such a receiver and agrees that such receiver shall have all of the rights and powers granted to Beneficiary pursuant to Section 7.4. In addition, to the extent permitted by Law, and with or without the appointment of a receiver, or an application therefor, Beneficiary may (a) enter upon, and take possession of (and Grantor shall surrender actual possession of), the Property or any part thereof, without notice to Grantor and without bringing any legal action or proceeding, or, if necessary by force, legal proceedings, ejectment or otherwise, and (b) remove and exclude Grantor and its agents and employees therefrom.

Section 7.6    Management of the Property.

Upon obtaining possession of the Property or upon the appointment of a receiver as described in Section 7.5, Beneficiary, Trustee or the receiver, as the case may be, may, at its sole option, (a) make all necessary or proper repairs and Additions to or upon the Property, (b) operate, maintain, control, make secure and preserve the Property, and (c) complete the construction of any unfinished Improvements on the Property and, in connection therewith, continue any and all outstanding contracts for the erection and

completion of such Improvements and make and enter into any further contracts which may be necessary, either in their or its own name or in the name of Grantor (the costs of completing such Improvements shall be Expenses secured by this Deed of Trust and shall accrue interest as provided in the Loan Agreement and the other Loan Documents). Beneficiary, Trustee or such receiver shall be under no liability for, or by reason of, any such taking of possession, entry, holding, removal, maintaining, operation or management, except for gross negligence or willful misconduct. The exercise of the remedies provided in this Section shall not cure or waive any Event of Default, and the enforcement of such remedies, once commenced, shall continue for so long as Beneficiary shall elect, notwithstanding the fact that the exercise of such remedies may have, for a time, cured the original Event of Default.

Section 7.7    Uniform Commercial Code.

Beneficiary may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. Upon the occurrence of any Event of Default, Grantor shall assemble all of the Accessories and make the same available within the Improvements. Any notification required by the Uniform Commercial Code shall be deemed reasonably and properly given if sent in accordance with the Notice provisions of this Deed of Trust at least ten (10) days before any sale or other disposition of the Personalty. Disposition of the Personalty shall be deemed commercially reasonable if made pursuant to a public sale advertised at least twice in a newspaper of general circulation in the community where the Property is located. It shall be deemed commercially reasonable for the Trustee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties. Alternatively, Beneficiary may choose to dispose of some or all of the Property, in any combination consisting of both Personalty and Real Property, in one sale to be held in accordance with the Law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Grantor agrees that such a sale of Personalty together with Real Property constitutes a commercially reasonable sale of the Personalty.

Section 7.8    Application of Proceeds.

Unless otherwise provided by applicable Law, all proceeds from the sale of the Property or any part thereof pursuant to the rights and remedies set forth in this Article VII and any other proceeds received by Beneficiary from the exercise of any of its other rights and remedies hereunder or under the other Loan Documents shall be applied first to pay all Expenses and next in reduction of the other Obligations, in such manner and order as Beneficiary may elect.

Section 7.9    Other Remedies.

Beneficiary shall have the right from time to time to protect, exercise and enforce any legal or equitable remedy against Grantor provided under the Loan Documents or by applicable Laws.

Article VIII
Trustee.

Section 8.1    Liability of Trustee.

Trustee shall have no liability or responsibility for, and make no warranties in connection with, the validity or enforceability of any of the Loan Documents or the description, value or status of title to the Property. Trustee shall be protected in acting upon any notice, request, consent, demand, statement, note or other paper or document believed by Trustee to be genuine and to have been signed by the party or parties purporting to sign the same. Trustee shall not be liable for any error of judgment, nor for any

B0672.0002 BN 21587452v3

act done or step taken or omitted, nor for any mistakes of law or fact, nor for anything which Trustee may do or refrain from doing in good faith, nor generally shall Trustee have any accountability hereunder except for willful misconduct or gross negligence. The powers and duties of Trustee hereunder may be exercised through such attorneys, agents or servants as Trustee may appoint, and Trustee shall have no liability or responsibility for any act, failure to act, negligence or willful conduct of such attorney, agent or servant, so long as the selection was made with reasonable care. In addition, Trustee may consult with legal counsel selected by Trustee, and Trustee shall have no liability or responsibility by reason of any act or failure to act in accordance with the opinions of such counsel. Trustee may act hereunder and may sell or otherwise dispose of the Property or any part thereof as herein provided, although Trustee has been, may now be or may hereafter be, an attorney, officer, agent or employee of Beneficiary, in respect of any matter or business whatsoever. Trustee, however, shall have no obligation to sell all or any part of the Property following an Event of Default or to take any other action authorized to be taken by Trustee hereunder except upon the demand of Beneficiary.

Section 8.2    Indemnification of Trustee.

Grantor agrees to indemnify Trustee and to hold Trustee harmless from and against any and all Claims and Expenses directly or indirectly arising out of or resulting from any transaction, act, omission, event or circumstance in any way connected with the Property or the Loan, including but not limited to any Claim arising out of or resulting from any assertion or allegation that Trustee is liable for any act or omission of Grantor or any other Person in connection with the ownership, development, financing, operation or sale of the Property; provided, however, that Grantor shall not be obligated to indemnify Trustee with respect to any Claim arising solely from the gross negligence or willful misconduct of Trustee. The agreements and indemnifications contained in this Section shall apply to Claims arising both before and after the repayment of the Loan and shall survive the repayment of the Loan, any foreclosure or deed, conveyance or assignment in lieu thereof and any other action by Trustee to enforce the rights and remedies of Beneficiary or Trustee hereunder or under the other Loan Documents.

Section 8.3    Substitution of Trustee; Multiple Trustees.

Beneficiary shall have, and is hereby granted with warranty of further assurances, the irrevocable power to appoint a new or replacement or substitute Trustee. Such power may be exercised at any time without notice, without cause and without specifying any reason therefor, by filing for record in the office where this Deed of Trust is recorded a Substitution of Trustee. The power of appointment of a successor Trustee may be exercised as often as and whenever Beneficiary may choose, and the exercise of the power of appointment, no matter how often, shall not be an exhaustion thereof. Upon the recordation of such Substitution of Trustee, the Trustee so appointed shall thereupon, without any further act or deed of conveyance, become fully vested with identically the same title and estate in and to the Property and with all the rights, powers, trusts and duties of its predecessor in the trust hereunder with like effect as if originally named as Trustee hereunder. Whenever in this Deed of Trust reference is made to Trustee, it shall be construed to mean each Person appointed as Trustee for the time being, whether original or successor in trust. All title, estate, rights, powers, trusts and duties granted to Trustee shall be in each Person appointed as Trustee so that any action hereunder by any Person appointed as Trustee shall for all purposes be deemed to be, and as effective as, the action of all Trustees.

## Article IX
## Miscellaneous.

Section 9.1    Rights, Powers and Remedies Cumulative.

Each right, power and remedy of Beneficiary or Trustee as provided for in this Deed of Trust, or in any of the other Loan Documents or now or hereafter existing by Law, shall be cumulative and concurrent and shall be in addition to every other right, power or remedy provided for in this Deed of Trust, or in any of the other Loan Documents or now or hereafter existing by Law, and the exercise or beginning of the exercise by Beneficiary or Trustee of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Beneficiary or Trustee of any or all such other rights, powers or remedies.

Section 9.2    No Waiver by Beneficiary or Trustee.

No course of dealing or conduct by or among Beneficiary, Trustee and Grantor shall be effective to amend, modify or change any provisions of this Deed of Trust or the other Loan Documents. No failure or delay by Beneficiary or Trustee to insist upon the strict performance of any term, covenant or agreement of this Deed of Trust or of any of the other Loan Documents, or to exercise any right, power or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, covenant or agreement or of any such breach, or preclude Beneficiary or Trustee from exercising any such right, power or remedy at any later time or times. By accepting payment after the due date of any of the Obligations, neither Beneficiary nor Trustee shall be deemed to waive the right either to require prompt payment when due of all other Obligations, or to declare an Event of Default for failure to make prompt payment of any such other Obligations. Neither Grantor nor any other Person now or hereafter obligated for the payment of the whole or any part of the Obligations shall be relieved of such liability by reason of (a) the failure of Beneficiary to comply with any request of Grantor or of any other Person to take action to foreclose this Deed of Trust or otherwise enforce any of the provisions of this Deed of Trust, or (b) any agreement or stipulation between any subsequent owner or owners of the Property and Beneficiary, or (c) Beneficiary's extending the time of payment or modifying the terms of this Deed of Trust or any of the other Loan Documents without first having obtained the consent of Grantor or such other Person. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate Lien on the Property, Beneficiary may release any Person at any time liable for any of the Obligations or any part of the security for the Obligations and may extend the time of payment or otherwise modify the terms of this Deed of Trust or any of the other Loan Documents without in any way impairing or affecting the Lien of this Deed of Trust or the priority of this Deed of Trust over any subordinate Lien. The holder of any subordinate Lien shall have no right to terminate any Lease regardless of whether or not such Lease is subordinate to this Deed of Trust. Beneficiary may resort to the security or collateral described in this Deed of Trust or any of the other Loan Documents in such order and manner as Beneficiary may elect in its sole discretion.

Section 9.3    Waivers and Agreements Regarding Remedies.

To the fullest extent Grantor may do so, Grantor hereby voluntarily and knowingly:

(a)    agrees that it will not at any time plead, claim or take advantage of any Laws now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and waives and releases all rights of redemption, valuation, appraisement, stay of execution, extension and notice of election to accelerate the Obligations;

B0672.0002 BN 21587452v3

(b)    waives all rights to a marshaling of the assets of Grantor, including the Property, or to a sale in the inverse order of alienation in the event of a foreclosure of the Property, and agrees not to assert any right under any Law pertaining to the marshaling of assets, the sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatsoever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Property without any prior or different resort for collection, or the right of Beneficiary to the payment of the Obligations out of the proceeds of sale of the Property in preference to every other claimant whatsoever;

(c)    waives any right to bring or utilize any defense, counterclaim or setoff, other than one which denies the existence or sufficiency of the facts upon which any foreclosure action is grounded. If any defense, counterclaim or setoff, other than one permitted by the preceding clause, is timely raised in a foreclosure action, such defense, counterclaim or setoff shall be dismissed. If such defense, counterclaim or setoff is based on a Claim which could be tried in an action for money damages, such Claim may be brought in a separate action which shall not thereafter be consolidated with the foreclosure action. The bringing of such separate action for money damages shall not be deemed to afford any grounds for staying the foreclosure action; and

(d)    waives and relinquishes any and all rights and remedies which Grantor may have or be able to assert by reason of the provisions of any Laws pertaining to the rights and remedies of sureties.

Section 9.4    Successors and Assigns.

All of the grants, covenants, terms, provisions and conditions of this Deed of Trust shall run with the Land and shall apply to and bind the successors and assigns of Grantor (including any permitted subsequent owner of the Property), and inure to the benefit of Beneficiary, its successors and assigns and to the successors in trust of Trustee.

Section 9.5    No Warranty by Beneficiary or Trustee.

By inspecting the Property or by accepting or approving anything required to be observed, performed or fulfilled by Grantor or to be given to Beneficiary or Trustee pursuant to this Deed of Trust or any of the other Loan Documents, Beneficiary and Trustee shall not be deemed to have warranted or represented the condition, sufficiency, legality, effectiveness or legal effect of the same, and such acceptance or approval shall not constitute any warranty or representation with respect thereto by Beneficiary or Trustee.

Section 9.6    Amendments.

This Deed of Trust may not be modified or amended except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

Section 9.7    Severability.

In the event any one or more of the provisions of this Deed of Trust or any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any other respect, or in the event any one or more of the provisions of the Loan Documents operates or would prospectively operate to invalidate this Deed of Trust or any of the other Loan Documents, then and in either of those events, at the option of Beneficiary, such provision or provisions only shall be deemed null and void and shall not affect the validity of the remaining Obligations, and the remaining

B0672.0002 BN 21587452v3

provisions of the Loan Documents shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

Section 9.8    Notices.

All Notices required or which any party desires to give hereunder or under any other Loan Document shall be in writing and, unless otherwise specifically provided in such other Loan Document, shall be deemed sufficiently given or furnished if delivered by personal delivery, by nationally recognized overnight courier service or by certified United States mail, postage prepaid, addressed to the party to whom directed at the applicable address specified in the Preamble to this Deed of Trust (unless changed by similar notice in writing given by the particular party whose address is to be changed) or by facsimile. Any Notice shall be deemed to have been given either at the time of personal delivery or, in the case of courier or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile, upon receipt; provided that service of a Notice required by any applicable statute shall be considered complete when the requirements of that statute are met. Notwithstanding the foregoing, no notice of change of address shall be effective except upon actual receipt. This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in this Deed of Trust or in any other Loan Document or to require giving of notice or demand to or upon any Person in any situation or for any reason.

Section 9.9    Joint and Several Liability.

If Grantor consists of two (2) or more Persons, the term "Grantor" shall also refer to all Persons signing this Deed of Trust as Grantor, and to each of them, and all of them are jointly and severally bound, obligated and liable hereunder. Trustee or Beneficiary may release, compromise, modify or settle with any of Grantor, in whole or in part, without impairing, lessening or affecting the obligations and liabilities of the others of Grantor hereunder or under the Note. Any of the acts mentioned aforesaid may be done without the approval or consent of, or notice to, any of Grantor.

Section 9.10    Rules of Construction.

The words "hereof," "herein," "hereunder," "hereto," and other words of similar import refer to this Deed of Trust in its entirety. The terms "agree" and "agreements" mean and include "covenant" and "covenants." The words "include" and "including" shall be interpreted as if followed by the words "without limitation." The headings of this Deed of Trust are for convenience of reference only and shall not be considered a part hereof and are not in any way intended to define, limit or enlarge the terms hereof. All references (a) made in the neuter, masculine or feminine gender shall be deemed to have been made in all such genders, (b) made in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well, (c) to the Loan Documents are to the same as extended, amended, restated, supplemented or otherwise modified from time to time unless expressly indicated otherwise, (d) to the Land, Improvements, Personalty, Real Property or Property shall mean all or any portion of each of the foregoing, respectively, and (e) to Articles or Sections are to the respective Articles or Sections contained in this Deed of Trust unless expressly indicated otherwise. Any term used or defined in the Uniform Commercial Code of the State, as in effect from time to time, which is not defined in this Deed of Trust shall have the meaning ascribed to that term in the Uniform Commercial Code of the State. If a term is defined in Article 9 of the Uniform Commercial Code of the State differently than in another Article of the Uniform Commercial Code of the State, the term shall have the meaning specified in Article 9.

B0672.0002 BN 21587452v3                    19

Section 9.11    <u>Governing Law</u>.

This Deed of Trust shall be construed, governed and enforced in accordance with the Laws in effect from time to time in the State (without regard to its conflicts of law principles).

Section 9.12    <u>Entire Agreement</u>.

The Loan Documents constitute the entire understanding and agreement between Grantor and Beneficiary with respect to the transactions arising in connection with the Loan, and supersede all prior written or oral understandings and agreements between Grantor and Beneficiary with respect to the matters addressed in the Loan Documents. In particular, and without limitation, the terms of any commitment by Beneficiary to make the Loan are merged into the Loan Documents. Except as incorporated in writing into the Loan Documents, there are no representations, understandings, stipulations, agreements or promises, oral or written, with respect to the matters addressed in the Loan Documents.

*[Signature(s) to follow]*

B0672.0002 BN 21587452v3

IN WITNESS WHEREOF, Grantor has caused this Deed of Trust to be executed as of the day and year first written above.

GRANTOR:

SF Oakland Bay, LLC,
a California limited liability company

By:     21st Century Corporation,
        a Guam corporation
        Its Manager

By:     _____
        Name: Joseph T. Chua
        Title: President

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ~~CALIFORNIA~~ *Guam*               )
                                             ) SS.
COUNTY OF _*Hagatna*_                         )


On _*Sept. 19, 2016*_, before me, _*Mary Joy D. De Guzman, Notary Public*_
      Date                                      Name And Title Of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _*Joseph Tan Chua*_,
                                   Name of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Signature (Seal)

```
MARY JOY D. DE GUZMAN
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Nov. 10, 2018
P.O. Box BH, Hagatna, Guam  96932
Commission Number NP  14-0109P
```

<u>Exhibit A</u>

<u>Legal Description</u>

Real property in the City of San Francisco, County of San Francisco, State of California, described as follows:

PARCEL A: (APN'S: LOT 21 AND BLOCK 3768 (AFFECTS: PARCEL 1, LOT 21); LOT 029 AND BLOCK 3768 (AFFECTS: PARCEL 2, LOT 22)

PARCEL 1, LOT 21 AND PARCEL 2, LOT 22 AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP OF PORTSIDE SUBDIVISION, BEING AN AIRSPACE SUBDIVISION OF LOTS 18 AND 19, BEING A PORTION OF ASSESSOR'S BLOCK NO. 3768, ALSO BEING A PORTION OF 100 VARA BLOCK NO. 328, "WHICH MAP WAS FILED JANUARY 19, 1994 IN BOOK 42 OF PARCEL MAPS AT PAGES 15 TO 19, INCLUSIVE.

EXCEPTING THEREFROM, ALL MINERALS, INCLUDING, WITHOUT LIMITING THE GENERALITY THEREOF, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AS WELL AS METALLIC OR OTHER SOLID MINERALS, AS RESERVED BY THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, A DELAWARE CORPORATION, IN THAT CERTAIN GRANT DEED RECORDED AUGUST 19, 1985 IN BOOK D902, AT PAGE 768 OF OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO.

PARCEL B: (APN'S: LOT 136 AND BLOCK 3768 (AFFECTS: PARCEL ONE, LOT 136); LOT 137 AND BLOCK 3768 (AFFECTS: PARCEL TWO, LOT 137)

PARCEL ONE, LOT 136 AND PARCEL TWO, LOT 137 AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP OF PORTSIDE PHASE II SUBDIVISION, BEING AN AIRSPACE SUBDIVISION OF LOT 20, AS SHOWN ON THAT CERTAIN PARCEL MAP FILED JANUARY 29, 1992 IN BOOK 41 OF PARCEL MAPS AT PAGES 7 AND 8, BEING A PORTION OF ASSESSOR'S BLOCK 3768, ALSO BEING A PORTION OF 100 VARA BLOCK NO. 328", WHICH MAP WAS FILED OCTOBER 2, 1997 IN BOOK 43 OF PARCEL MAPS AT PAGES 117 TO 120, INCLUSIVE.

EXCEPTING THEREFROM, ALL MINERALS, INCLUDING, WITHOUT LIMITING THE GENERALITY THEREOF, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AS WELL AS METALLIC OR OTHER SOLID MINERALS, AS RESERVED BY THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, A DELAWARE CORPORATION, IN THAT CERTAIN GRANT DEED RECORDED AUGUST 19, 1985 IN BOOK D902, AT PAGE 768 OF OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO.

PARCEL C:

A NON-EXCLUSIVE EASEMENT FOR UNOBSTRUCTED INGRESS AND EGRESS AS CREATED AND GRANTED BY THE DOCUMENT ENTITLED "GRANT OF EASEMENT AND LICENSE AGREEMENT" RECORDED DECEMBER 15, 1988 IN BOOK/REEL E765 AT PAGE/IMAGE 440 OF OFFICIAL RECORDS, AND AS AMENDED BY DOCUMENT RECORDED OCTOBER 29, 1992 IN BOOK/REEL F744 AT PAGE/IMAGE 406 OF OFFICIAL RECORDS, OVER THAT CERTAIN REAL PROPERTY MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHEASTERLY LINE OF HARRISON STREET AND THE SOUTHWESTERLY LINE OF SPEAR STREET; THENCE SOUTHEASTERLY

ALONG THE SOUTHWESTERLY LINE OF SPEAR STREET 188.00 FEET TO THE NORTHERLY LINE OF LOT 15; THENCE CONTINUING SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SPEAR STREET 1.00 FEET TO THE TRUE POINT OF BEGINNING: THENCE AT A RIGHT ANGLE NORTHWESTERLY PARALLEL WITH AND DISTANT 1.00 FEET FROM THE NORTHERLY LINE OF SAID LOT 15 157.50 FEET TO A POINT ON THE WESTERLY LINE OF SAID LOT 15; THENCE AT A RIGHT ANGLE SOUTHEASTERLY ALONG THE WESTERLY LINE OF SAID LOT 15 22.00 FEET; THENCE AT A RIGHT ANGLE NORTHEASTERLY LEAVING SAID WESTERLY LINE PARALLEL WITH AND DISTANT 23.00 FEET FROM THE NORTHERLY LINE OF SAID LOT 15 157.50 FEET TO THE SOUTHWESTERLY LINE OF SPEAR STREET; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE 22.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL D:

A NON-EXCLUSIVE EASEMENT TO CONSTRUCT AND MAINTAIN THE RAMP AND SATELLITE LOT AND FOR UNOBSTRUCTED INGRESS AND EGRESS AS CREATED AND GRANTED BY THE DOCUMENT RECORDED OCTOBER 29, 1992 IN BOOK/REEL F744 AT PAGE/IMAGE 406 OF OFFICIAL RECORDS, OVER THAT CERTAIN REAL PROPERTY MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHEASTERLY LINE OF HARRISON STREET AND THE SOUTHWESTERLY LINE OF SPEAR STREET; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SPEAR STREET 188.00 FEET TO THE NORTHERLY LINE OF LOT 15; THENCE AT A RIGHT ANGLE NORTHWESTERLY ALONG SAID NORTHERLY LINE 157.50 FEET TO THE NORTHWESTERLY CORNER OF SAID LOT 15; THENCE AT A RIGHT ANGLE SOUTHEASTERLY ALONG THE WESTERLY LINE OF SAID LOT 15 23.00 FEET TO THE TRUE POINT OF BEGINNING: THENCE CONTINUING SOUTHEASTERLY ALONG SAID WESTERLY LINE 200.857 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT 15; THENCE AT A RIGHT ANGLE SOUTHEASTERLY ALONG THE SOUTHERLY LINE OF SAID LOT 15 20.00 FEET; THENCE AT A RIGHT ANGLE NORTHWESTERLY PARALLEL WITH AND DISTANT 20.00 FEET FROM THE WESTERLY LINE OF SAID LOT 15 200.857 FEET; THENCE AT A RIGHT ANGLE NORTHWESTERLY 20.00 FEET TO THE TRUE POINT OF BEGINNING.

EXHIBIT   2

## U.S. Small Business Administration

Economic Injury Disaster Loan

## LOAN AUTHORIZATION AND AGREEMENT

Date: 06.15.2020 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan (SBA Loan #5644927901) to SF Oakland Bay, LLC (Borrower) of 401 Main Street San Francisco California 94105 in the amount of one hundred and fifty thousand and 00/100 Dollars ($150,000.00), upon the following conditions:

PAYMENT

- Installment payments, including principal and interest, of $731.00 Monthly, will begin Twelve (12) months from the date of the promissory Note. The balance of principal and interest will be payable Thirty (30) years from the date of the promissory Note.

INTEREST

- Interest will accrue at the rate of 3.75% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

Case: 25-30699    Doc# 6    Filed: 09/03/25    Entered: 09/03/25 15:49:04    Page 32 of 50

SBA Loan #5644927901

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

- Borrower will neither seek nor accept future advances under any superior liens on the collateral securing this Loan without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

Case: 25-30699   Doc# 6   Filed: 09/03/25   Entered: 09/03/25 15:49:04   Page 33 of 50

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- Within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

## LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

## EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

## DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

## BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application. All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

SBA Loan #5644927901

Application #3601172063

## PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

## RESOLUTION OF BOARD OF DIRECTORS

- Borrower shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**SF Oakland Bay, LLC**

*Joseph Tan Chua*
0D8450E108254EC...

Date:    06.15.2020

Joseph Tan Chua , Owner/Officer

<u>Note:</u> Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

# CERTIFICATION REGARDING LOBBYING

For loans over $150,000, Congress requires recipients to agree to the following:

1. Appropriated funds may NOT be used for lobbying.

2. Payment of non-federal funds for lobbying must be reported on Form SF-LLL.

3. Language of this certification must be incorporated into all contracts and subcontracts exceeding $100,000.

4. All contractors and subcontractors with contracts exceeding $100,000 are required to certify and disclose accordingly.

SBA Form 1391 (5-00)

# CERTIFICATION REGARDING LOBBYING

*Certification for Contracts, Grants, Loans, and Cooperative Agreements*

Borrower and all Guarantors (if any) certify, to the best of its, his or her knowledge and belief, that:

(1)    No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)    If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal loan, the undersigned shall complete and submit Standard Form LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3)    The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and co-operative agreements) and that all sub-recipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000.00 and not more than $100,000.00 for each such failure.

SBA Form 1391 (5-00)



This Statement of Policy is Posted

In Accordance with Regulations of the

# Small Business Administration

This Organization Practices

## Equal Employment Opportunity

**We do not discriminate on the ground of race, color, religion, sex, age, disability or national origin in the hiring, retention, or promotion of employees; nor in determining their rank, or the compensation or fringe benefits paid them.**

This Organization Practices

## Equal Treatment of Clients

**We do not discriminate on the basis of race, color, religion, sex, marital status, disability, age or national origin in services or accommodations offered or provided to our employees, clients or guests.**

**These policies and this notice comply with regulations of the United States Government.**

**Please report violations of this policy to:**

**Administrator
Small Business Administration
Washington, D.C. 20416**

In order for the public and your employees to know their rights under 13 C.F.R Parts 112, 113, and 117, Small Business Administration Regulations, and to conform with the directions of the Administrator of SBA, this poster must be displayed where it is clearly visible to employees, applicants for employment, and the public.

Failure to display the poster as required in accordance with SBA Regulations may be considered evidence of noncompliance and subject you to the penalties contained in those Regulations.

SBA FORM 722 (10-02) REF: SOP 9030     PREVIOUS EDITIONS ARE OBSOLETE     **U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346**

This form was produced using PDF technology by Delta Federal Inc.

Federal Recycling Program     Printed on Recycled Paper



**Esta Declaración De Principios Se Publica**

**De Acuerdo Con Los Reglamentos De La**

Agencia Federal Para el Desarrollo de la Pequeña Empresa

**Esta Organización Practica**

# Igual Oportunidad De Empleo

**No discriminamos por razón de raza, color, religión, sexo, edad, discapacidad o nacionalidad en el empleo, retención o ascenso de personal ni en la determinación de sus posiciones, salarios o beneficios marginales.**

**Esta Organización Practica**

# Igualdad En El Trato A Su Clientela

**No discriminamos por razón de raza, color, religión, sexo, estado civil, edad, discapacidad o nacionalidad en los servicios o facilidades provistos para nuestros empleados, clientes o visitantes.**

**Estos principios y este aviso cumplen con los reglamentos del Gobierno de los Estados Unidos de América.**

**Favor de informar violaciones a lo aquí indicado a:**

**Administrador**
**Agencia Federal Para el Desarrollo de la**
**Pequeña Empresa**
**Washington, D.C. 20416**

 A fin de que el público y sus empleados conozcan sus derechos según lo expresado en las Secciones 112, 113 y 117 del Código de Regulaciaones Federales No. 13,  de los  Reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa  y de acuerdo con las instrucciones del Administrador de dicha agencia,
esta notificación debe fijarse en un lugar claramente visible para los empleados, solicitantes de empleo y público en general. No fijar esta notificación según lo requerido por los reglamentos de  la Agencia Federal Para el Desarrollo de la Pequeña Empresa, puede ser interpretado como evidencia de falta de cumplimiento de los mismos y conllevará la ejecución de los castigos impuestos en estos reglamentos.

SBA FORM 722 (10-02) REF: SOP 9030     PREVIOUS EDITIONS ARE OBSOLETE     **U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346**

This form was produced electronically by Elite Federal Inc.

Federal Recycling Program        Printed on Recycled Paper

EXHIBIT   3

RECORDING
REQUESTED BY AND
WHEN RECORDED,
RETURN TO:

Habib Bentaleb, ESQ
1101 fifth avenue, suite
100
San Rafael, CA 94901



Doc # **2025026609**

**City and County of San Francisco**
**Joaquin Torres, Assessor – Recorder**

| 4/11/2025 | 7:12:49 AM | Fees | $46.00 |
| Pages | 6 Title 002 ES | Taxes | $0.00 |
| Customer | 002 | Other | $0.00 |
| | | SB2 Fees | $225.00 |
| | | Paid | $271.00 |

Address: 38 Bryant Street and
401-403 Main Street
San Francisco, CA 94015
APN: Lot: 021, Block: 3768
Lot: 022, Block: 3768
Lot: 136, Block: 3768
Lot: 137, Block 3768

---

### SECOND DEED OF TRUST AND ASSIGNMENT OF RENTS

This Second Deed of Trust, made as of January 13, 2025, between:

Trustor: SF Oakland Bay, LLC, a California limited liability company, LOCATED AT 401 MAIN STREET SAN FRANCISCO, CA 94105

Trustee: First American Title Company, a California corporation

And Beneficiary: 21st CENTURY CORP, a corporation formed in the Guam, with a business address of 401 Main Street, San Francisco, CA 94105.

WITNESSETH: That Trustor grants, transfers and assigns to Trustee in trust, with power of sale, that property in the City of San Francisco, County of San Francisco, State of California, described as:

PARCEL A:

PARCEL 1, LOT 21 AND PARCEL 2, LOT 22 AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP OF PORTSIDE SUBDIVISION, BEING AN AIRSPACE SUBDIVISION OF LOTS 18 AND 19, BEING A PORTION OF ASSESSOR'S BLOCK NO. 3768, ALSO BEING A PORTION OF
100 VARA BLOCK NO. 328, "WHICH MAP WAS FILED JANUARY 19, 1994 IN BOOK 42 OF PARCEL MAPS AT PAGES 15 TO 19, INCLUSIVE.

Page 1 of 2

Case: 25-30699    Doc# 6    Filed: 09/03/25    Entered: 09/03/25 15:49:04    Page 43 of 50

EXCEPTING THEREFROM, ALL MINERALS, INCLUDING, WITHOUT LIMITING THE GENERALITY THEREOF, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AS WELL AS METALLIC OR OTHER SOLID MINERALS, AS RESERVED BY THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, A DELAWARE CORPORATION, IN THAT CERTAIN GRANT DEED RECORDED AUGUST 19, 1985 IN BOOK D902, AT PAGE 768 OF OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO,

PARCEL B:

PARCEL ONE, LOT 136 AND PARCEL TWO, LOT 137 AS SHOWN ON THAT CERTAIN MAP ENTITLED "PARCEL MAP OF PORTSIDE PHASE II SUBDIVISION, BEING AN AIRSPACE SUBDIVISION OF LOT 20, AS SHOWN ON THAT CERTAIN PARCEL MAP FILED JANUARY 29, 1992 IN BOOK 41 OF PARCEL MAPS AT PAGES 7 AND 8, BEING A PORTION OF ASSESSOR'S BLOCK 3768, ALSO BEING A PORTION OF 100 VARA BLOCK NO. 328", WHICH MAP WAS FILED OCTOBER 2, 1997 IN BOOK 43 OF PARCEL MAPS AT PAGES 117 TO 120, INCLUSIVE.

EXCEPTING THEREFROM, ALL MINERALS, INCLUDING, WITHOUT UMITING THE GENERALITY THEREOF, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AS WELL AS METALUC OR OTHER SOUD MINERALS, AS RESERVED BY THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, A DELAWARE CORPORATION, IN THAT CERTAIN GRANT DEED RECORDED AUGUST 19, 1985 IN BOOK D902, AT PAGE 768 OF OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO.

PARCEL C:

A NON-EXCLUSIVE EASEMENT FOR UNOBSTRUCTED INGRESS AND EGRESS AS CREATED AND GRANTED BY THE DOCUMENT ENTITLED "GRANT OF EASEMENT AND LICENSE AGREEMENT" RECORDED DECEMBER 15, 1988 IN BOOK/REEL E765 AT PAGE/IMAGE 440 OF OFFICIAL RECORDS, AND AS AMENDED BY DOCUMENT RECORDED OCTOBER 29, 1992 IN BOOK/REEL F744 AT PAGE/IMAGE 406 OF OFFICIAL RECORDS, OVER THAT CERTAIN REAL PROPERTY MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Case: 25-30699   Doc# 6   Filed: 09/03/25   Entered: 09/03/25 15:49:04   Page 44 of 50

BEGINNING AT THE INTERSECTION OF THE SOUTHEASTERLY LINE OF HARRISON STREET AND THE SOUTHWESTERLY LINE OF SPEAR STREET; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SPEAR STREET 188.00 FEET TO THE NORTHERLY LINE OF LOT 15; THENCE CONTINUING SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SPEAR STREET 1.00 FEET TO THE TRUE POINT OF BEGINNING: THENCE AT A RIGHT ANGLE NORTHWESTERLY PARALLEL WITH AND DISTANT 1.00 FEET FROM THE NORTHERLY LINE OF SAID LOT 15 157.50 FEET TO A POINT ON THE WESTERLY LINE OF SAID LOT 15; THENCE AT A RIGHT ANGLE SOUTHEASTERLY ALONG THE WESTERLY LINE OF SAID LOT 15 22.00 FEET; THENCE AT A RIGHT ANGLE NORTHEASTERLY LEAVING SAID WESTERLY LINE PARALLEL WITH AND DISTANT 23.00 FEET FROM THE NORTHERLY LINE OF SAID LOT 15 157.50 FEET TO THE SOUTHWESTERLY LINE OF SPEAR STREET; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE 22.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL D:

A NON-EXCLUSIVE EASEMENT TO CONSTRUCT AND MAINTAIN THE RAMP AND SATELLITE LOT AND FOR UNOBSTRUCTED INGRESS AND EGRESS AS CREATED AND GRANTED BY THE DOCUMENT RECORDED OCTOBER 29, 1992 IN BOOK/REEL F744 AT PAGE/IMAGE 406 OF OFFICIAL RECORDS, OVER THAT CERTAIN REAL PROPERTY MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHEASTERLY LINE OF HARRISON STREET AND THE SOUTHWESTERLY LINE OF SPEAR STREET; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SPEAR STREET 188.00 FEET TO THE NORTHERLY LINE OF LOT 15; THENCE AT A RIGHT ANGLE NORTHWESTERLY ALONG SAID NORTHERLY LINE 157.50 FEET TO THE NORTHWESTERLY CORNER OF SAID LOT 15; THENCE AT A RIGHT ANGLE SOUTHEASTERLY ALONG THE WESTERLY LINE OF SAID LOT 15 23.00 FEET TO THE TRUE POINT OF BEGINNING: THENCE CONTINUING SOUTHEASTERLY ALONG SAID WESTERLY LINE 200.857 FEET TO THE SOUTHWESTERLY CORNER OF

Case: 25-30699    Doc# 6    Filed: 09/03/25    Entered: 09/03/25 15:49:04    Page 45 of 50

SAID LOT 15; THENCE AT A RIGHT ANGLE SOUTHEASTERLY ALONG THE SOUTHERLY LINE OF SAID LOT 15 20.00 FEET; THENCE AT A RIGHT ANGLE NORTHWESTERLY PARALLEL WITH AND DISTANT 20.00 FEET FROM THE WESTERLY LINE OF SAID LOT 15 200.857 FEET; THENCE AT A RIGHT ANGLE NORTHWESTERLY 20.00 FEET TO THE TRUE POINT OF BEGINNING.

TOGETHER WITH the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $1,594,201.30, with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Second Deed of Trust.

To Protect the Security of This Second Deed of Trust, Trustor Agrees:

1.    To keep said property in good condition and repair, not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.    To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

Case: 25-30699   Doc# 6   Filed: 09/03/25   Entered: 09/03/25 15:49:04   Page 46 of 50

4.     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

It is mutually agreed:

1.     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require payment when due of all other sums so secured or to declare default for failure so to pay.

2.     That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Second Deed of Trust and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easements thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

3.     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right; prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collecting of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

4.     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Second Deed of Trust, said note and all documents evidencing expenditures secured hereby.

Case: 25-30699   Doc# 6   Filed: 09/03/25   Entered: 09/03/25 15:49:04   Page 47 of 50

5. Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Second Deed of Trust is recorded and the name and address of the new Trustee.

**TRUSTOR:**

SF Oakland Bay, LLC,
a California limited liability company

By: 21ˢᵗ CENTURY CORP, its Manager

By: _____
**JOSEPH CHUA**
*Its Manager*

**ACKNOWLEDGEMENT**

~~GUAM, U.S.A.~~ )
~~VILLAGE OF~~ ) ss:

Republic of the Philippines)
City of Manila) SS
Embassy of the United States of America)

On this ___ day of FEB 0 6 2025 , 2025, before me, a Notary ~~Public~~ in and for Guam, personally appeared **JOSEPH CHUA**, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same as his free and voluntary act and deed, and for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.

_____
Notary ~~Public~~

Rubylyn Almonte
Notarizing Officer

INDEFINITE COMMISSION

Case: 25-30699    Doc# 6    Filed: 09/03/25    Entered: 09/03/25 15:49:04    Page 48 of 50

EXHIBIT   4

# 21ST CENTURY CORPORATION

P.O. Box 8308, Tamuning, Guam 96931

August 15, 2025

Peter N. Hadiaris, Esq.
peter@hadiaris.com

Re: In Re SFOB

 Dear Mr. Hadiaris:

Please be advised that 21st Century Corp., holder of a third priority lien on the SFOB's revenues from its parking garage, consents to the use of its cash collateral for payment of ordinary expenses of business operations and payment of administrative expenses of the bankruptcy. This consent lasts until revoked in writing.

Thank you very much.

Sincerely yours,

Joseph Chua
President