1 PETER N. HADIARIS, ESQ.
State Bar No. 122590
2 100 E. St. Ste 210
Santa Rosa, CA 95404
3 415/694-0052
peter@hadiaris.com
4 Attorney for debtor

5

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 In Re:                          )
                                   )
11 SF OAKLAND BAY LLC              )        No. 25-30699 HLB
                                   )
12                    Debtor(s)    )        Chapter 11
                                   )
13                    TIN: 5836    )        DECLARATION OF JOSEPH
   _____)        CHUA SUPPORTING
14                                          MOTION FOR ORDER
                                            REJECTING LICENSE
15                                          AGREEMENTS_____

16                                          October 16, 2025
                                            10:00 a.m.
17                                          Videoconference/Ctrm 19

18        I, Joseph Chua, declare:

19        1.  I am the president of West Bay Corporation, the managing

20 member of the debtor.  I am also the President of 21st Century

21 Corporation, also a member of the debtor.  These entities hold a

22 combined 87% equity interest in the debtor.  The garage is

23 operated by a local operator, and I have executive and strategic

24 control of the debtor's operations.  I have personal knowledge of

25 the facts in this declaration and can testify to them competently

26 if called as a witness.

27        2. The Debtor operates a parking garage at 401 Main

28 Street/38 Bryant St., San Francisco, CA.  The garage provides

licensed monthly parking to the Portside Condominium complex and neighboring office and residential buildings. The Debtor's financial distress stems from limitations on the debtor's ability to raise parking fees over time contained in perpetual license agreements recorded in the 1990's, while no such limits apply to the Debtor's expenses. The debtor filed this case to reject the license agreements, raise rates to near market, and thereby restore financial viability to the garage.

3. 100% of the debtor's operating revenue comes from monthly fees charged to patrons of the garage, who are nearby residents and office workers. The majority of the monthly parkers live in the Portside condominium project, where the garage is located.

4. The debtor's monthly revenues for 2025 have averaged about $44,500 per month. The debtor's monthly expenses average about $63,000 per month, including monthly payments to first mortgage holder Bank of Hawaii ($26,700) and dues to the Portside Master Owner's Association ($29,000). The debtor's monthly revenues are less than the mortgage payments and the HOA dues.

5. SFOB purchased the garage in 2011. The debtor's current mortgage with Bank of Hawaii has a $4.07 million balance, and an interest rate of 3.07%. The rate is low because it stems from a 2016 refinance when rates were much lower than today. Even with this favorable mortgage, however, these license agreements prevent profitable operation of the garage.

6. When it was purchased, the garage operated a valet parking service open to the public, and was reasonably profitable. In 2019, however, the garage began losing money at

an increasing rate due to two factors. First, valet parking became unprofitable; the revenues dropped below the extra expenses generated by the service, mostly labor costs for attendants, and we ended the service.

7. Second, and more importantly, in 2019 Portside Homeowners Association ("PHOA") began passing large expenses through to the debtor through its sister HOA, the Portside Master Owner's Association ("PMOA"). The Portside is a mixed condominium project in which the PHOA is the HOA for the residential units, and the PMOA is the HOA for the entire project. The PHOA and SFOB are each members of the PMOA, but the PHOA controls the PMOA Board, holding three of the five Board seats. The PHOA has used this control to pass many of its operating expenses to the PMOA, where SFOB is required to pay 20-28% of the expenses through its monthly dues. For example, the HOAs allocated a disproportionate share of the cost of building maintenance and a building manager to the PMOA, and hired an expensive security firm that, as cost of "security," passed through to the PMOA, provided provides concierge service to Portside residents.

8. Because of these passthroughs, the dues to PMOA skyrocketed, increasing from about $12,000 in 2011 to over $29,000 per month, while keeping the dues the residents pay to the PHOA artificially low. At the same time, the license agreements limited increases in the parking rates to well below increases in the market. The monthly rate for a Portside resident is currently about $180; the monthly market rate in our area for parking about $450. About 180 residents park cars in

the garage, and if their rate went to market it would generate
$48,600 per month in additional revenue, restore the garage to
modest profitability, and allow a significant payout to unsecured
creditors.

9. We (the other individuals involved in managing the
garage and me) have, of course, taken other steps to try to
address our financial issues. In 2023, we applied for (and
received) a reduction in the assessed value of the garage for
property tax purposes, because of these deleterious license
agreements. We litigated with the PMOA over the appropriateness
of some of the charges under the CC&Rs, losing on procedural
grounds. We have re-evaluated the possibility of re-establishing
valet parking, and determined that the commuter market has not
rebounded to the extent that it would be profitable. We are
considering offering pubic parking for home baseball games, as
the garage is located near the baseball stadium, but that by
itself will not solve this problem. We also have other
disadvantageous license agreements with nearby facilities, which
we will also probably reject. However, they involve smaller
amounts of money. Even combined, these other potential solutions
will not eliminate the need to reject these license agreements.

10. We are aware that the rejection of the license
agreements may generate additional unsecured claims in this case.
We have discussed the likely scope of these claims, and their
impact on our reorganization, with our counsel. SFOB has also
hired a financial consulting firm to analyze the garage's past
and potential cash flow, and we have considered the results of
its analysis. It is clear that the litigation risks of rejection

1  simply must be taken.

2   11.  The two license agreements we are asking to reject are

3  attached as exhibits 1 & 2 respectively.  Under the terms of the

4  licenses, SFOB has an ongoing duty to provide parking to PHOA and

5  its PHOA members. 1994 License, ¶1; 1997 License, ¶1.  PHOA is

6  responsible for assigning parking spaces to owners.  1994

7  License, ¶1; 1997 License, ¶1.  Each owner signs an addendum

8  agreeing to pay for his spot.  A sample addendum from each

9  license is attached to each license agreement.

10   12.  PHOA and the owners are obligated to pay for the

11  parking spaces assigned to them, 1994 License, ¶3; 1997 License,

12  ¶3, and the PHOA has an ongoing obligation to cooperate in

13  enforcement of SFOB's rules and regulations for the use of the

14  garage.  1994 License, ¶6; 1997 License, ¶6.

15   13.  For the past few years, I have been advancing funds to

16  cover the cash shortfall for the garage, totaling more than $2

17  million to date.  This is not a sustainable way for the business

18  to run.  The garage needs to pay its own way.

19   Executed September 15, 2025 in Tamuning, GU.  I declare

20  under penalty of perjury that the foregoing is true and correct.

21

22                          _____

23                          Joseph Chua

24

25

26

27

28

EXHIBIT   1

#18

This is to certify that this is a
true and correct copy of the
original document recorded
on MAR - 1 1994 at 9:00 am
as No. F 558 033 in the
City & County of San Francisco
OLD REPUBLIC TITLE COMPANY
By _____

Recording Requested by and
When Recorded Return To:

Browning, Wholey & Lenvin
1388 Sutter Street, Suite 900
San Francisco, CA  94109
Attn:  Jack Wholey, Esq.

APN:  Block 3768  Lot 22
      Block 3768  Lots 25 through 86, inclusive

## LICENSE AGREEMENT

THIS LICENSE AGREEMENT is made and entered into as of the 25th day of February, 1994, by and between HUM BABY ASSOCIATES, a CALIFORNIA LIMITED PARTNERSHIP ("Licensor"), and PORTSIDE HOMEOWNERS' ASSOCIATION, a California nonprofit mutual benefit corporation ("Licensee").

## R E C I T A L S:

A.   Licensor is the owner of that certain parcel of real property situated in the City and County of San Francisco, State of California and more particularly described as follows ("Licensor Property"):

Lot 22, Parcel 2, as shown on that certain Parcel Map of Portside Subdivision, Showing the Subdivision of Airspace, being a resubdivision of Lots 18 and 19, a portion of Assessor's Block No. 3768, also being a portion of 100 Vara Block No. 328, San

-1-

Francisco, California, recorded on January 19, 1994, in Book 42 of Parcel Map at Page 15 and following, Official Records of the City and County of San Francisco, State of California.

B.   Licensee is responsible for governing, maintaining and managing that certain residential real estate project known as Portside, a Condominium Project (the "Project"), pursuant to that certain "Declaration of Conditions, Covenants and Restrictions of Portside, a Condominium Project," recorded on February 11, 1994, in Book G67, pages 584 and following, Official Records of the City and County of San Francisco, State of California (the "Declaration").

C.   The Project consists of sixty-two (62) residential Condominiums (as such term is defined in the Declaration), more particularly described as follows (collectively, the "Licensee Property"):

Lots 25 through 86, inclusive, on that certain condominium map entitled "Map of Portside, a Condominium Project being a resubdivision of Lot 24, a portion of Assessor's Block No. 3768, also being a portion of 100 Vara Block No. 328, San Francisco, California.", filed on February 11, 1994, in Condominium Map Book 42, pages 161 through 170, inclusive, Official Records of the City and County of San Francisco, State of California.

-2-

D.    Licensor and Licensee desire that Licensor grant to Licensee, for the benefit of the Licensee Property and the owners of the Condominiums (the "Owners"), the right to park passenger cars, including standard size pick-up trucks and vans ("Motor Vehicles"), on the Licensor Property.

NOW, THEREFORE, the parties hereto agree as follows:

1.  Grant of License.  Licensor hereby grants to Licensee, for the benefit of the Owners, an irrevocable license (the "License") to park sixty-two (62) Motor Vehicles in the garage (the "Garage") located on the Licensor Property in designated spaces assigned to Licensee ("Designated Spaces"), on the terms and conditions contained in this Agreement.    Only one Motor Vehicle will be permitted in each Designated Space.  The License shall include the right of pedestrian and vehicular ingress to and egress from the Garage and the Licensor Property in connection with such parking in accordance with this Agreement.  The License may be used or exercised by Licensee, the Owners, and the occupants and tenants of the Condominiums constituting the Licensee Property.  In accordance with the Declaration, Licensee shall assign to any Owner wishing to park a motor vehicle in the Garage the right to use a Designated Space pursuant to the License and in accordance with the terms and conditions of this Agreement and the Declaration.  Upon such assignment, such Owner shall enter into an addendum (an

-3-

"Addendum") to this Agreement (in the form attached hereto as Exhibit A and incorporated herein by reference) whereby such Owner shall agree to be bound by the terms and conditions of this Agreement, and to pay the parking charge specified in Paragraph 3 hereof directly to Licensor.

2.  Location of Parking Spaces.  The location of the Designated Spaces shall be reasonably assigned by Licensor.  Such assignment may be changed from time to time by Licensor if necessary for the operation of the Garage upon thirty (30) days prior written notice to Licensee; provided, however, that Licensor shall make every good faith reasonable effort to assure that the Designated Spaces shall be made available to Licensee at all times when valet parking is not available as more specifically provided below.

Licensor and Licensee, for the benefit of Licensee and the Owners, agree that the Designated Spaces shall be made available pursuant to a valet parking arrangement every day from 7:00 a.m. to 7:00 p.m., with a key card lock box arrangement providing parking access to the Designated Spaces during all other hours; provided, however, that Licensor shall have the right to change the hours during which the valet parking arrangement is in effect upon thirty (30) days prior notice to Licensee; and provided, further, that in the event such valet parking is or at any time becomes infeasible or impracticable or otherwise materially adversely affects the operation of the Garage, such service may be terminated by Licensor without any liability or additional obligation to

-4-

Licensee upon thirty (30) days prior notice to Licensee and upon such termination, a reasonably satisfactory key and lock box arrangement accessible at all times shall be provided for the benefit of Licensee, the Owners and the Licensee Property. Notwithstanding the foregoing, Licensee hereby acknowledges that any mortgage lender with respect to the Licensor Property, which acquires title to the Licensor Property as a result of a foreclosure proceeding or a deed-in-lieu of foreclosure, shall not be required to provide valet parking during the period of time during which such mortgage lender holds fee title to the Licensor Property.

3. <u>Parking Charges</u>. Each Owner to whom a Designated Space has been assigned pursuant to Paragraph 1 shall pay to Licensor monthly, on or before the first (1st) day of each month the following amounts:

(a) During the five year period commencing on the first day of the month immediately following the close of escrow for the sale of the first Condominium located in the Licensee Property (the "Commencement Date"): $75.00 per space per month.

(b) Thereafter, during each year, the amount payable shall be increased effective on the anniversary of the Commencement Date, by an amount which reflects the percentage increase in the Consumer Price Index calculated as follows:

(1) The amount payable in the immediately preceding year shall be multiplied by a fraction, the numerator of which is the Consumer Price Index published in the second month preceding

-5-

the anniversary of the Commencement Date and the denominator of which is the Consumer Price Index published in such month in the prior year. For example, if the Commencement Date is June 1, 1994, the numerator for the first adjustment will be the Consumer Price Index published in the month of April, 1999, and the denominator will be the Consumer Price Index published in the month of April, 1994. The Consumer Price Index utilized for this purpose shall be that Index provided by the Bureau of Labor Statistics of the United States Department of Labor (the "Bureau") for the San Francisco-Oakland-San Jose Metropolitan Area, All Urban Consumers (Base Period 1982-84=100).

(2) The following is an example of the application of the above formula, using hypothetical increases in the Consumer Price Index: If the Commencement Date is June 1, 1994, and the Consumer Price Index published in April, 1999, is 140 and the Consumer Price Index published in April, 1994, is 135, the payment of $75.00 per parking space per month would be increased by multiplying $75.00 times 140 divided by 135 for a new payment of $77.78.

(3) If the Consumer Price Index is changed so that the base year differs from that in effect at the Commencement Date the Index shall be converted in accordance with the conversion factor published by the Bureau. If the Consumer Price Index is discontinued or revised during the term of this Agreement, or any extension thereof, such other government index or computation with which it is replaced shall be used in order to obtain substantially

-6-

the same result as would be obtained if the Index had not been discontinued or revised.

(4) Licensor shall notify each Owner that is using a Designated Space pursuant to an Addendum, with a copy to Licensee, of the amount of the new payment established pursuant to this subparagraph. No delay in Licensor's notification shall relieve such Owners of the obligation of such Owners to pay the payment retroactive to the beginning of each year.

Payment for the Designated Spaces shall be made in advance on or before the first (1st) day of each month. In the event any Owner fails to make the payments required above with respect to the Designated Spaces for any month, then in addition to all other rights and remedies Licensor may have under this Agreement and the laws of the State of California, Licensor shall have a right to preclude such Owner from utilizing the Designated Spaces in the Garage until such time as all such arrearages in the payment of such sums are made current, including all costs of collection incurred by Licensor, including attorneys' fees.

4. Licensor's Rights. Licensor shall have the right to designate portions of the Garage for the exclusive use of parties other than Licensee and the Owners, provided that Licensor shall make available sufficient parking spaces to enable Licensee to exercise its rights under the License. Notwithstanding Licensor's grant of the License to Licensee, Licensor shall have the right to eject from the Licensor Property any persons not authorized to use such Property, and Licensor shall have the right to close off

-7-

agents, or third persons; that Licensee and each Owner executing an Addendum agree to hold Licensor and its agents harmless and to forever waive all claims for liability against Licensor and its agents for any injury to persons or property arising out of the Licensee's or the Owners' use of or presence in the Garage, whether caused by Licensor, its agents, or third persons; and that Licensee and each Owner executing an Addendum do specifically assume any and all risk for injury to persons or property.

6. _Rules and Regulations_. Licensor by itself or through its authorized agent may establish from time to time operating rules and regulations for the Garage and the Designated Spaces, which rules shall deal with the health, safety and comfort of the user of the Garage. Such rules may include, by way of example only, prohibitions on speeding, reckless driving or the use of parking spaces for anything other than the parking of a vehicle. Licensee and the Owners shall comply with, and Licensor and Licensee and the Owners shall cooperate to enforce compliance by the occupants and tenants of the Licensee Property with, such rules and regulations for the use of the Designated Spaces which Licensor shall promulgate from time to time. Licensor shall erect parking control signs as required by the California Motor Vehicle Code and the ordinances of the City and County of San Francisco to permit citation or towing of unauthorized motor vehicles parked in the Designated Spaces.

7. _Duration of License_. Subject to each Owner's payment of the amounts described in Paragraph 3 and other compliance by

-9-

Licensee and the Owners with the terms of this Agreement, the License shall remain in full force and effect in perpetuity.

8. <u>No Dedication</u>. Nothing herein contained shall be deemed a gift or dedication of any portion of any of the Licensor Property or of the Garage or other improvements at any time located on any portion thereof to the general public or for any public purpose whatsoever, it being the intention of this Agreement that the License shall be strictly limited to and for the purposes herein expressed.

9. <u>Remedies and Enforcement</u>.

(a) <u>Remedies</u>. In the event that either party shall fail to perform its obligations under this Agreement, the other party may exercise any and all remedies available to such party at law or in equity, for any such failure of performance. Without limiting the foregoing, the event of any material breach by Licensee of its obligations under this Agreement, Licensor shall have the right to terminate the License; provided that prior to such termination, Licensor shall give thirty (30) days prior written notice of its intent to terminate the License to Licensee, any Lender under a first mortgage or deed of trust on the Licensee Property, and to all Owners of the Licensee Property. The Lender or any Owner or Owners shall have the right to cure such material default within such thirty (30) days, and upon such cure the Licensee shall continue in full force and effect.

(b) <u>Cumulative Remedies</u>. The remedies herein provided shall be cumulative and in addition to and not a substitution for

-10-

portions of the Licensor Property to perform maintenance and repair work on such Property and to prevent the acquisition of prescriptive rights in such areas, provided that such closure shall not unreasonably disturb or interfere with Licensee's use or exercise of the License and temporary parking within a reasonable distance of the Licensee Property shall be provided if the Designated Spaces are temporarily closed off or in process of relocation. Licensor shall have the right to designate an agent to operate and manage the Garage.

5. <u>Waiver</u>. Licensor shall have no obligation under this License to police the Licensor Property and otherwise to provide security on the Licensor Property in connection with the parking of Motor Vehicles on the Licensor Property under the License or otherwise.

Licensee acknowledges that the Garage is part of a real estate project commonly known as Portside, which contains a commercial area designed to attract members of the general public, that in addition to Licensee, other parties, including the general public, shall have the right to use the Garage, and that it is impossible for Licensor to supervise all the activities of Licensee, other licensees, such third parties and the general public. By executing below, Licensee acknowledges, and by executing an Addendum, each Owner acknowledges, that only a license of space is granted hereby; that no bailment is created; that Licensor declares itself not responsible for and assumes no liability for injury to persons or property from fire, theft or acts of omission of Licensor, its

Case: 25-30699   Doc# 24-1   Filed: 09/17/25   Entered: 09/17/25 12:24:39   Page 16 of 40

any other right or remedy which Licensor may have hereunder or by law or in equity in the event of a default hereunder.

(c)  Arbitration.  Any dispute regarding this Agreement or the License shall be settled by binding arbitration.  The dispute shall be submitted to the American Arbitration Association, San Francisco Office, or such similar organization existing from time to time, for arbitration.  Licensor and Licensee, on its own behalf and on behalf of the Owners, hereby agree to be bound by the determination of the arbitration.

10.  Miscellaneous.

(a)  Licensor shall cooperate with Licensee or the Owners to monitor the use or exercise of the License by Licensee and the Owners, so that parties making use of the License shall not park in excess of the maximum number of motor vehicles permitted under the terms of the License.

(b)  The License shall be appurtenant to the Licensee Property, shall inure to the benefit of Licensee, the Owners and the owner or owners of the Licensee Property from time to time and shall burden and be binding upon the Licensor Property and the successive owners of the Licensor Property.  The License shall not be assigned except in connection with the conveyance of, and to the purchaser or transferee of the fee title interest in the Licensee Property or the Condominiums.  Upon any such conveyance of the fee title interest in the Licensee Property or the Condominiums, the assignee, purchaser or transferee, as the case may be, shall be deemed to have assumed Licensee's or the Owners', as the case may

-11-

be, obligations hereunder by acceptance of the deed or other instrument of conveyance. In the event the Project ceases to exist as a condominum project and in connection therewith the legal existence of Licensee is terminated, this License shall inure to the benefit of the purchaser or transferee of the fee title interest in the Licensee Property, and the then occupants of residential units located in the Licensee Property.

(c) No breach of any of the covenants and restrictions herein contained shall render invalid the lien of any first mortgage or deed of trust on the Licensor Property made in good faith and for value, but said covenants and restrictions shall be binding upon and effective against any owner whose title is derived through foreclosure or trustee's sale, or otherwise.

(d) All notices to be given under this Agreement shall be in writing and shall be given either by facsimile, personal delivery or depositing the notice in the U.S. mail, registered or certified mail, postage prepaid, addressed to the parties as follows, or such other address as a party may designate in writing in accordance with this Paragraph:

If to Licensor:

Hum Baby Associates, a California Limited Partnership
501 Second Street, Suite 422
San Francisco, CA 94107

Facsimile Number: (415) 777-1317

-12-

If to Licensee:

Portside Homeowners' Association
38 Bryant Street
San Francisco, CA 94105

Facsimile Number:

If mailed, notice will be deemed given five (5) days after deposit in the mail.

(e)  This Agreement shall be subject to the Declaration and the Master Declaration of Conditions, Covenants and Restrictions Establishing Reciprocal Easements and a Plan of Ownership for Portside, San Francisco, California, recorded on February 11, 1994, in Book G67 at Page 583 and following, Official Records of the City and County of San Francisco, State of California.

(f)  If legal action is brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.  The "prevailing party" shall be the party who obtains substantially the relief sought by it in the action.

-13-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the year and date first set forth.

LICENSOR:

HUM BABY ASSOCIATES,
A CALIFORNIA LIMITED PARTNERSHIP

By: Emerald Fund, Inc., a California
corporation, Its General Partner

By: _____
S. Osborn Erickson
President

LICENSEE:

PORTSIDE HOMEOWNERS' ASSOCIATION

By: _____
(Printed Name) S. O. OSBORN ERICKSON
President

EMEF10\A-LICENS.283

-14-

STATE OF CALIFORNIA          )
                             )          ss.
COUNTY OF SAN FRANCISCO )

On _25 February 1994_ before me, the undersigned, a Notary Public in and for said State, personally appeared _S. Osbren Erickson_ personally known to me (or ~~proved to me on the basis of satisfactory evidence~~) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/her/~~their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Mary C Turow_

Name _Mary C Turowski_
     (typed or printed)



MARY C. TUROWSKI
COMM. #959994
Notary Public-California
SAN FRANCISCO COUNTY
My comm. expires MAR 11,1996

(This area for official notarial seal)

---

STATE OF CALIFORNIA          )
                             )          ss.
COUNTY OF SAN FRANCISCO )

On _25 February 1994_ before me, the undersigned, a Notary Public in and for said State, personally appeared _S. Osbren Erickson_ personally known to me (or ~~proved to me on the basis of satisfactory evidence~~) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~) and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Mary C Turow_

Name _Mary C Turowski_
     (typed or printed)

MARY C. TUROWSKI
COMM. #959994
Notary Public-California
SAN FRANCISCO COUNTY
My comm. expires MAR 11,1996

(This area for official notarial seal)

EXHIBIT  2

## EXHIBIT A

## ADDENDUM TO LICENSE AGREEMENT

This Addendum to that certain License Agreement, dated as of _____, 199_ (the "License Agreement"), between Hum Baby Associates, a California Limited Partnership ("Licensor"), and Portside Homeowners' Association, a California nonprofit mutual benefit corporation ("Licensee"), recorded on _ _____, 199____, in Book ____, Page ____ and following, in the Official Records of the Recorder of the City and County of San Francisco, State of California, is made and entered into as of the ___ day of _____, 199__, by _____

_____

("Owner"), as required by Paragraph 1 of the License Agreement.

Owner is the owner of a Condominium (all capitalized terms used in this Addendum and not otherwise defined shall have the meaning specified in the License Agreement) in the Project. Owner acknowledges that he/she has received, read and approved the License Agreement in connection with his/her purchase of the Condominium. Pursuant to the License Agreement and the Declaration, Licensee has assigned the right to park a Motor Vehicle in the Garage to Owner. In consideration of such assignment, Owner hereby agrees to be bound by the terms and conditions of the License Agreement and Section 2.2(d) of the Declaration, and any rules and regulations adopted pursuant to either thereof, and to pay to Licensor, on or before the first (1st) day of each month the parking charge specified in Paragraph 3 of the License Agreement.

OWNER:

_____

_____

## ADDENDUM TO LICENSE AGREEMENT

This Addendum to that certain License Agreement, dated as of _____, 199__ (the "License Agreement"), between Hum Baby Associates, a California Limited Partnership ("Licensor"), and Portside Homeowners' Association, a California nonprofit mutual benefit corporation ("Licensee"), recorded on __ _____, 199____, in Book ____, Page ____ and following, in the Official Records of the Recorder of the City and County of San Francisco, State of California, is made and entered into as of the ____ day of _____, 199__, by _____

_____

("Owner"), as required by Paragraph 1 of the License Agreement.

Owner is the owner of a Condominium (all capitalized terms used in this Addendum and not otherwise defined shall have the meaning specified in the License Agreement) in the Project. Owner acknowledges that he/she has received, read and approved the License Agreement in connection with his/her purchase of the Condominium. Pursuant to the License Agreement and the Declaration, Licensee has assigned the right to park a Motor Vehicle in the Garage to Owner. In consideration of such assignment, Owner hereby agrees to be bound by the terms and conditions of the License Agreement and Section 2.2(d) of the Declaration, and any rules and regulations adopted pursuant to either thereof, and to pay to Licensor, on or before the first (1st) day of each month the parking charge specified in Paragraph 3 of the License Agreement.

OWNER:

_____

_____

#20

This is to certify that this is a
true and correct copy of the
original document recorded
on 11/21/97 8am
as No. G261343 in the
County of SF
Old Republic Title Company
By

Recording Requested by and
When Recorded Return To:

Browning, Wholey & Lenvin
1388 Sutter Street, Suite 900
San Francisco, CA 94109
Attn: Jack Wholey, Esq.

     APN:  Block 3768  Lot 20
             Block 3768  Lots 89 through 296, inclusive

## LICENSE AGREEMENT

    THIS LICENSE AGREEMENT is made and entered into as of the 9th
day of October , 199 7 , by and between PORTSIDE II, LLC, a
California Limited Liability Company ("Licensor"), and PORTSIDE
HOMEOWNERS' ASSOCIATION, a California nonprofit mutual benefit
corporation ("Licensee").

## R E C I T A L S:

    A.   Licensor is the owner of that certain parcel of real
property situated in the City and County of San Francisco, State
of California and more particularly described as follows ("Licensor
Property"):

> Lot 20, Parcel 2, as shown on that certain
> parcel map entitled "Parcel Map of a Portion
> of 100 Vara Block No. 328, also being a
> portion of Assessor's Block 3768, Lot 17, San
> Francisco, California", recorded January 29,
> 1992, in Book 41 of Parcel Maps, at Page 7 and
> following, as amended by that certain parcel
> map (the "Phase II Map") entitled "Parcel Map
> of Portside Phase II Subdivision, being an
> airspace subdivision of Lot 20", recorded
> October 2 , 1997, in Book 43 of Parcel
> Maps, at Page 117 and following, Official
> Records of the City and County of San
> Francisco.

-1-

(PHASE II)

B. Licensee is responsible for governing, maintaining and managing that certain residential real estate project known as Portside, a Condominium Project (the "Project"), pursuant to that certain "Declaration of Conditions, Covenants and Restrictions of Portside, a Condominium Project," recorded on February 11, 1994, in Book G67, pages 584 and following, Official Records of the City and County of San Francisco, State of California (the "Declaration").

C. Pursuant to that certain "Amended and Restated Declaration of Annexation," recorded on _Nov. 21_, 199_7_, in Book ___, _Series #G2613_, pages ___ and following, Official Records of the City and County of San Francisco, State of CaliforniaLicensee (the "Annexation Declaration"), Phase II has been annexed to the Project, consisting of one hundred fifty-eight (158) residential Condominiums (as such term is defined in the Declaration), more particularly described as follows (collectively, the "Licensee Property"):

> Lots _139_ through _296_, inclusive, on that certain subdivision map and condominium plan entitled "Map of Portside II, a Condominium Project," recorded the _13th_ day of _November_, 1997, in Book _54_ of Condominium Maps, pages _216_ through _227_, Official Records of the City and County of San Francisco.

D. Licensor and Licensee desire that Licensor grant to Licensee, for the benefit of the Licensee Property and the owners of the Condominiums (the "Owners"), the right to park passenger cars, including standard size pick-up trucks and vans ("Motor Vehicles"), on the Licensor Property.

-2-

(PHASE II)

Case: 25-30699   Doc# 24-1   Filed: 09/17/25   Entered: 09/17/25 12:24:39   Page 26 of 40

NOW, THEREFORE, the parties hereto agree as follows:

1. <u>Grant of License</u>. Licensor hereby grants to Licensee, for the benefit of the Owners, an irrevocable license (the "License") to park one hundred fifty-eight (158) Motor Vehicles on the Licensor Property or within the garage (the "Garage") located on the Licensor Property in designated spaces assigned to Licensee ("Designated Spaces"), on the terms and conditions contained in this Agreement. Only one Motor Vehicle will be permitted in each Designated Space. The License shall include the right of pedestrian and vehicular ingress to and egress from the Garage and the Licensor Property in connection with such parking in accordance with this Agreement. The License may be used or exercised by Licensee, the Owners, and the occupants and tenants of the Condominiums constituting the Licensee Property. In accordance with the Declaration, Licensee shall assign to any Owner wishing to park a motor vehicle in the Garage the right to use a Designated Space pursuant to the License and in accordance with the terms and conditions of this Agreement and the Declaration. Upon such assignment, such Owner shall enter into an addendum (an "Addendum") to this Agreement (in the form attached hereto as Exhibit A and incorporated herein by reference) whereby such Owner shall agree to be bound by the terms and conditions of this Agreement, and to pay the parking charge specified in Paragraph 3 hereof directly to Licensor.

2. <u>Location of Parking Spaces</u>. The location of the Designated Spaces shall be reasonably assigned by Licensor. Such assignment may be changed from time to time by Licensor if

-3-

(PHASE II)

necessary for the operation of the Garage upon thirty (30) days prior written notice to Licensee; provided, however, that Licensor shall make every good faith reasonable effort to assure that the Designated Spaces shall be made available to Licensee at all times when valet parking is not available as more specifically provided below.

Licensor and Licensee, for the benefit of Licensee and the Owners, agree that parking on the Licensor Property or on or within the garage building located adjacent to the Project at 401 Main Street shall be made available pursuant to a valet parking arrangement Monday through Friday from 7:00 a.m. to 7:00 p.m., and during such hours on Saturday and Sunday at Licensor's discretion, with a key card lock box arrangement providing parking access to the Designated Spaces in the Garage during all other hours; provided, however, that Licensor shall have the right to change the hours during which the valet parking arrangement is in effect upon thirty (30) days prior notice to Licensee; and provided, further, that in the event such valet parking is or at any time becomes infeasible or impracticable or otherwise materially adversely affects the operation of the Garage, such service may be terminated by Licensor without any liability or additional obligation to Licensee upon thirty (30) days prior notice to Licensee and upon such termination, a reasonably satisfactory key and lock box arrangement accessible at all times shall be provided for the benefit of Licensee, the Owners and the Licensee Property. Notwithstanding the foregoing, Licensee hereby acknowledges that any mortgage lender with respect to the Licensor Property, which

-4-

Case: 25-30699    Doc# 24-1    Filed: 09/17/25    Entered: 09/17/25 12:24:39    Page 28 of 40

acquires title to the Licensor Property as a result of a foreclosure proceeding or a deed-in-lieu of foreclosure, shall not be required to provide valet parking during the period of time during which such mortgage lender holds fee title to the Licensor Property.

3. <u>Parking Charges</u>. Each Owner to whom a Designated Space has been assigned pursuant to Paragraph 1 shall pay to Licensor monthly, on or before the first (1st) day of each month the following amounts:

(a) During the five year period commencing on the first day of the month immediately following the close of escrow for the sale of the first Condominium located in the Licensee Property (the "Commencement Date"): $90.00 per space per month.

(b) Thereafter, during each year, the amount payable shall be increased effective on the anniversary of the Commencement Date, by an amount which reflects the percentage increase in the Consumer Price Index calculated as follows:

(1) The amount payable in the immediately preceding year shall be multiplied by a fraction, the numerator of which is the Consumer Price Index published in the second month preceding the anniversary of the Commencement Date and the denominator of which is the Consumer Price Index published in such month in the prior year. For example, if the Commencement Date is November 1, 1997, the numerator for the first adjustment will be the Consumer Price Index published in the month of September, 2002, and the denominator will be the Consumer Price Index published in the month of September, 1998. The Consumer Price Index utilized for this

-5-

purpose shall be that Index provided by the Bureau of Labor Statistics of the United States Department of Labor (the "Bureau") for the San Francisco-Oakland-San Jose Metropolitan Area, All Urban Consumers (Base Period 1982-84=100).

(2) The following is an example of the application of the above formula, using hypothetical increases in the Consumer Price Index: If the Commencement Date is November 1, 1997, and the Consumer Price Index published in September, 2002, is 140 and the Consumer Price Index published in September, 1997, is 135, the payment of $90.00 per parking space per month would be increased by multiplying $90.00 times 140 divided by 135 for a new payment of $93.33.

(3) If the Consumer Price Index is changed so that the base year differs from that in effect at the Commencement Date the Index shall be converted in accordance with the conversion factor published by the Bureau. If the Consumer Price Index is discontinued or revised during the term of this Agreement, or any extension thereof, such other government index or computation with which it is replaced shall be used in order to obtain substantially the same result as would be obtained if the Index had not been discontinued or revised.

(4) Licensor shall notify each Owner that is using a Designated Space pursuant to an Addendum, with a copy to Licensee, of the amount of the new payment established pursuant to this subparagraph. No delay in Licensor's notification shall relieve such Owners of the obligation of such Owners to pay the payment retroactive to the beginning of each year.

-6-

(PHASE II)

Payment for the Designated Spaces shall be made in advance on or before the first (1st) day of each month. In the event any Owner fails to make the payments required above with respect to the Designated Spaces for any month, then in addition to all other rights and remedies Licensor may have under this Agreement and the laws of the State of California, Licensor shall have a right to preclude such Owner from utilizing the Designated Spaces in the Garage until such time as all such arrearages in the payment of such sums are made current, including all costs of collection incurred by Licensor, including attorneys' fees.

4. <u>Licensor's Rights.</u> Licensor shall have the right to designate portions of the Garage for the exclusive use of parties other than Licensee and the Owners, provided that Licensor shall make available sufficient parking spaces to enable Licensee to exercise its rights under the License. Notwithstanding Licensor's grant of the License to Licensee, Licensor shall have the right to eject from the Licensor Property any persons not authorized to use such Property, and Licensor shall have the right to close off portions of the Licensor Property to perform maintenance and repair work on such Property and to prevent the acquisition of prescriptive rights in such areas, provided that such closure shall not unreasonably disturb or interfere with Licensee's use or exercise of the License and temporary parking within a reasonable distance of the Licensee Property shall be provided if the Designated Spaces are temporarily closed off or in process of relocation. Licensor shall have the right to designate an agent to operate and manage the Garage.

-7-

(PHASE II)

5.  Waiver.  Licensor shall have no obligation under this License to police the Licensor Property and otherwise to provide security on the Licensor Property in connection with the parking of Motor Vehicles on the Licensor Property under the License or otherwise.

Licensee acknowledges that the Garage is part of a real estate project commonly known as Portside, which contains a commercial area designed to attract members of the general public, that in addition to Licensee, other parties, including the general public, shall have the right to use the Garage, and that it is impossible for Licensor to supervise all the activities of Licensee, other licensees, such third parties and the general public.  By executing below, Licensee acknowledges, and by executing an Addendum, each Owner acknowledges, that only a license of space is granted hereby; that no bailment is created; that Licensor declares itself not responsible for and assumes no liability for injury to persons or property from fire, theft or acts of omission of Licensor, its agents, or third persons; that Licensee and each Owner executing an Addendum agree to hold Licensor and its agents harmless and to forever waive all claims for liability against Licensor and its agents for any injury to persons or property arising out of the Licensee's or the Owners' use of or presence in the Garage, whether caused by Licensor, its agents, or third persons; and that Licensee and each Owner executing an Addendum do specifically assume any and all risk for injury to persons or property.

6.  Rules and Regulations.  Licensor by itself or through its authorized agent may establish from time to time operating rules

-8-

and regulations for the Garage and the Designated Spaces, which rules shall deal with the health, safety and comfort of the user of the Garage.  Such rules may include, by way of example only, prohibitions on speeding, reckless driving or the use of parking spaces for anything other than the parking of a vehicle.  Licensee and the Owners shall comply with, and Licensor and Licensee and the Owners shall cooperate to enforce compliance by the occupants and tenants of the Licensee Property with, such rules and regulations for the use of the Designated Spaces which Licensor shall promulgate from time to time.  Licensor shall erect parking control signs as required by the California Motor Vehicle Code and the ordinances of the City and County of San Francisco to permit citation or towing of unauthorized motor vehicles parked in the Designated Spaces.

7.  <u>Duration of License</u>.  Subject to each Owner's payment of the amounts described in Paragraph 3 and other compliance by Licensee and the Owners with the terms of this Agreement, the License shall remain in full force and effect in perpetuity.

8.  <u>No Dedication</u>.  Nothing herein contained shall be deemed a gift or dedication of any portion of any of the Licensor Property or of the Garage or other improvements at any time located on any portion thereof to the general public or for any public purpose whatsoever, it being the intention of this Agreement that the License shall be strictly limited to and for the purposes herein expressed.

9.  <u>Remedies and Enforcement</u>.

(a)  <u>Remedies</u>.  In the event that either party shall fail

(PHASE II)

to perform its obligations under this Agreement, the other party may exercise any and all remedies available to such party at law or in equity, for any such failure of performance. Without limiting the foregoing, the event of any material breach by Licensee of its obligations under this Agreement, Licensor shall have the right to terminate the License; provided that prior to such termination, Licensor shall give thirty (30) days prior written notice of its intent to terminate the License to Licensee, any Lender under a first mortgage or deed of trust on the Licensee Property, and to all Owners of the Licensee Property. The Lender or any Owner or Owners shall have the right to cure such material default within such thirty (30) days, and upon such cure the Licensee shall continue in full force and effect.

(b) <u>Cumulative Remedies</u>. The remedies herein provided shall be cumulative and in addition to and not a substitution for any other right or remedy which Licensor may have hereunder or by law or in equity in the event of a default hereunder.

(c) <u>Arbitration</u>. Any dispute regarding this Agreement or the License shall be settled by binding arbitration. The dispute shall be submitted to the American Arbitration Association, San Francisco Office, or such similar organization existing from time to time, for arbitration. Licensor and Licensee, on its own behalf and on behalf of the Owners, hereby agree to be bound by the determination of the arbitration.

10. <u>Miscellaneous</u>.

(a) Licensor shall cooperate with Licensee or the Owners to monitor the use or exercise of the License by Licensee and the

-10-

Case: 25-30699   Doc# 24-1   Filed: 09/17/25   Entered: 09/17/25 12:24:39   Page 34 of 40

Owners, so that parties making use of the License shall not park in excess of the maximum number of motor vehicles permitted under the terms of the License.

(b)   The License shall be appurtenant to the Licensee Property, shall inure to the benefit of Licensee, the Owners and the owner or owners of the Licensee Property from time to time and shall burden and be binding upon the Licensor Property and the successive owners of the Licensor Property.  The License shall not be assigned except in connection with the conveyance of, and to the purchaser or transferee of the fee title interest in the Licensee Property or the Condominiums.  Upon any such conveyance of the fee title interest in the Licensee Property or the Condominiums, the assignee, purchaser or transferee, as the case may be, shall be deemed to have assumed Licensee's or the Owners', as the case may be, obligations hereunder by acceptance of the deed or other instrument of conveyance.  In the event the Project ceases to exist as a condominium project and in connection therewith the legal existence of Licensee is terminated, this License shall inure to the benefit of the purchaser or transferee of the fee title interest in the Licensee Property, and the then occupants of residential units located in the Licensee Property.

(c)   No breach of any of the covenants and restrictions herein contained shall render invalid the lien of any first mortgage or deed of trust on the Licensor Property made in good faith and for value, but said covenants and restrictions shall be binding upon and effective against any owner whose title is derived through foreclosure or trustee's sale, or otherwise.

-11-

(PHASE II)

Case: 25-30699   Doc# 24-1   Filed: 09/17/25   Entered: 09/17/25 12:24:39   Page 35 of 40

(d)   All notices to be given under this Agreement shall be in writing and shall be given either by facsimile, personal delivery or depositing the notice in the U.S. mail, registered or certified mail, postage prepaid, addressed to the parties as follows, or such other address as a party may designate in writing in accordance with this Paragraph:

If to Licensor:

Portside   II,   LLC,   a   California   Limited Liability Company
501 Second Street, Suite 422
San Francisco, CA 94107

Facsimile Number: (415) 777-1317

If to Licensee:

Portside Homeowners' Association
38 Bryant Street
San Francisco, CA 94105

Facsimile Number: (415) ___637-1670_____

If mailed, notice will be deemed given five (5) days after deposit in the mail.

(e)   This Agreement shall be subject to the Declaration and the Master Declaration of Conditions, Covenants and Restrictions Establishing Reciprocal Easements and a Plan of Ownership for Portside, San Francisco, California, recorded on February 11, 1994, in Book G67 at Page 583 and following, Official Records of the City and County of San Francisco, State of California.

(f)   If legal action is brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs. The "prevailing

-12-

party" shall be the party who obtains substantially the relief sought by it in the action.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the year and date first set forth.

LICENSOR:

PORTSIDE II, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: EGB, LLC, a California Limited Liability Company

By: _____
S. Osborn Erickson
Manager

LICENSEE:

PORTSIDE HOMEOWNERS' ASSOCIATION

By: _____ BRIAN P. CLANCY
(Printed Name)
President

DOCS\10\A-LIC-II.7872H3

STATE OF CALIFORNIA )
)  ss.
COUNTY OF SAN FRANCISCO )

On _October 9, 1997_ before me, the undersigned, a Notary Public in and for said State, personally appeared _S Osborn Erickson_

~~personally known to me (or proved to me on the basis of satisfactory evidence)~~ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Marnie Y. Moore_

Name _MARNIE Y. MOORE_
(typed or printed)

MARNIE Y. MOORE
Comm. # 1083541
NOTARY PUBLIC - CALIFORNIA
City and County of San Francisco
My Comm. Expires Jan. 18, 2000

(This area for official notarial seal)


STATE OF CALIFORNIA )
)  ss.
COUNTY OF SAN FRANCISCO )

On _October 15, 1997_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Brian P. Clancy_

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Marnie Y. Moore_

Name _MARNIE Y. MOORE_
(typed or printed)

MARNIE Y. MOORE
Comm. # 1083541
NOTARY PUBLIC - CALIFORNIA
City and County of San Francisco
My Comm. Expires Jan. 18, 2000

(This area for official notarial seal)

## EXHIBIT A

## ADDENDUM TO LICENSE AGREEMENT

This Addendum to that certain License Agreement, dated as of _____, 199_ (the "License Agreement"), between Portside II, LLc, a California Limited Liability Company ("Licensor"), and Portside Homeowners' Association, a California nonprofit mutual benefit corporation ("Licensee"), recorded on _ _____, 199___, in Book ____, Page ____ and following, in the Official Records of the Recorder of the City and County of San Francisco, State of California, is made and entered into as of the ___ day of _____, 199__, by _____

_____

("Owner"), as required by Paragraph 1 of the License Agreement.

Owner is the owner of a Condominium (all capitalized terms used in this Addendum and not otherwise defined shall have the meaning specified in the License Agreement) in the Project. Owner acknowledges that he/she has received, read and approved the License Agreement in connection with his/her purchase of the Condominium. Pursuant to the License Agreement and the Declaration, Licensee has assigned the right to park a Motor Vehicle in the Garage to Owner. In consideration of such assignment, Owner hereby agrees to be bound by the terms and conditions of the License Agreement and Section 2.2(d) of the Declaration, and any rules and regulations adopted pursuant to either thereof, and to pay to Licensor, on or before the first (1st) day of each month the parking charge specified in Paragraph 3 of the License Agreement.

OWNER:

_____

_____



## ADDENDUM TO LICENSE AGREEMENT

This Addendum to that certain License Agreement, dated as of February 25, 1994 (the "License Agreement"), between Hum Baby Associates, a California Limited Partnership ("Licensor") and Portside Homeowners' Association, a California non-profit mutual benefit corporation ("Licensee"), recorded on March 1, 1994, in Book G78, Page 314 and following, in the Official Records of the Recorder of the City and County of San Francisco, State of California, is made and entered into as of the day of _____, 199__, by _____ _____("Owner"), purchaser, as required by Paragraph 1 of the License Agreement.

Owner is the owner of a Condominium (all capitalized terms used in this Addendum and not otherwise defined shall have the meaning specified in the License Agreement) in the Project. Owner acknowledges that he/she has received, read and approved the License Agreement in connection with his/her purchase of the Condominium. Pursuant to the License Agreement and the Declaration, Licensee has assigned the right to park a Motor Vehicle in the Garage to Owner. In consideration of such assignment, Owner hereby agrees to be bound by the terms and conditions of the License Agreement and Section 2.2(d) of the Declaration, and any rules and regulations adopted pursuant to either thereof, and to pay to Licensor, on or before the first (1st) day of each month the parking charge specified in Paragraph 3 of the License Agreement.

Owner (Purchaser):

Condominium Unit #_____        _____

                                  _____

Thirty-Eight Bryant Street, San Francisco, California 94105
T: 415 512-8800  F: 415 512-8801