Donald H. Cram (State Bar Number 160004)
don.cram@stinson.com
Duane M. Geck (State Bar Number 114823)
duane.geck@stinson.com
STINSON LLP
595 Market Street
Suite 2600
San Francisco, California 94105
Telephone: 415.398.3344
Facsimile: 415.956.0439

Secured Creditor
PORTSIDE MASTER OWNERS' ASSOCIATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 25-30699 HLB |
| SF OAKLAND BAY LLC, | Chapter: 11 |
| Debtor. | **PORTSIDE MASTER OWNERS' ASSOCIATION'S OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL** |
| | Date: September 24, 2025<br>Time: 1:00 p.m.<br>Dept.: Ctrm. 19/Videoconference<br>Judge: Hon. Hannah L. BLumenstiel |

STINSON LLP
595 Market Street
Suite 2600
San Francisco,
California 94105
415.398.3344

PORTSIDE HOMEOWNERS' ASSOCIATION'S OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL

Case: 25-30699    Doc# 41    Filed: 09/23/25    Entered: 09/23/25 11:51:48    Page 1 of 9
CORE/3543394.0001/231862402.1

Portside Master Owners' Association ("Portside MOA"), a secured creditor with a recorded assessment lien against the Debtor's condominium garage unit and a foreclosing lienholder as of the petition date, objects to the Debtor's Amended Motion for Authority to Use Cash Collateral and the related ex parte application. The Motion should be denied, or alternatively conditioned, because the Debtor has not met its burden under 11 U.S.C. §§ 361, 363(c)(2), 363(e), and 363(p) to show a feasible, adequately protected use of cash collateral. See *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) (the debtor bears the burden of proof on adequate protection); *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (adequate protection must be based on more than speculative projections).

## I. SUMMARY OF GROUNDS

Portside MOA raises several problematic issues with Debtor's Motion as follows:

- The Debtor's budget is inadequate, speculative and is neither feasible nor sufficiently detailed.
- Debtor fails to offer adequate protection to Portside MOA as a secured creditor with a statutory assessment lien.
- Debtor's budget improperly relies on unapproved DIP financing and speculative revenue increases.
- Debtor improperly proposes to pay insiders and professional fees from cash collateral absent consent and without proper carve-outs and/or budget controls.
- Debtor fails to establish that the non-consenting lienholders (including SBA and the Portside MOA) are adequately protected; there is no equity cushion shown or replacement-lien package tied to identifiable collateral and customary protections.
- The relief sought in the Motion is for the "entire duration of the case" with no reporting, variance, or termination triggers.
- The Motion suffers from procedural deficiencies as to notice and proof of "immediate and irreparable harm" for expedited relief.

## II. PERTINENT FACTS

1. Debtor's business consists of owning and operating a condominium garage unit serving Portside residents and others. Debtor acknowledges Portside MOA dues of approximately $29,000 per month and an active Portside MOA lien foreclosure at filing.

2. Debtor's projected cash flow shows: (1) heavy reliance on a DIP loan ($75,000) that has not been noticed or approved; (2) a triple jump in "License Fees" from $37,774/month to $114,800/month beginning January 2026 without court approval of contract rejections or evidence of market acceptance; (3) negative or razor-thin liquidity in initial months; (4) material expenses missing or underfunded (e.g., insurance, routine repairs, reserves, security, janitorial, merchant processing, reserve for real property taxes beyond a single lump, contingency).

3. An insider 21st Century Corporation ("21st Century") has "consented" and Debtor ostensibly proposes to pay 21st Century and professional fees from cash collateral, yet SBA has not consented, and the Portside MOA has not consented.

## III. OBJECTIONS

**A. The budget is inadequate and speculative; Debtor has not shown a reasonable likelihood of successful reorganization or that cash collateral use will preserve collateral value.**

Debtor is obligated to provide creditors with adequate protection and propose a credible budget. See *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) (requiring the debtor to provide evidence sufficient to demonstrate that the secured creditor's interest is adequately protected). The 6-month "projection" is not a 13-week line-item budget with weekly cash receipts/disbursements, as is customary for interim cash collateral. It lacks detail on insurance premiums, utilities by category, maintenance, security, janitorial, elevator/service contracts, point-of-sale/merchant fees, reserve for capital expenditures, ordinary course legal/accounting, and Portside MOA lien cure/escrow. It also omits any reserve for contingency.

Further, the budget assumes a threefold revenue increase starting January 2026 predicated on future rejection of "perpetual license agreements" and price hikes that have not been approved, documented, or shown to be achievable. Debtor filed the instant case for the sole purpose of rejecting certain license agreements between Debtor and Portside Homeowners'

3
PORTSIDE HOMEOWNERS' ASSOCIATION'S OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL
Case: 25-30699    Doc# 41    Filed: 09/23/25    Entered: 09/23/25 11:51:48    Page 3 of 9
CORE/3543394.0001/231862402.1

Association, a California nonprofit mutual benefit corporation (PHOA)[1] and others. To the extent that the success of Debtor's case hinges on the rejection of these license agreements, Debtor's case is dead on arrival.[2] This is speculative and cannot support interim relief.

Debtor's budget also relies on $75,000 in "DIP Loan Proceeds" (Sept/Oct) with no credible DIP financing motion. Cash collateral orders cannot be premised on unfunded, unapproved DIP proceeds.

**B.  The Portside MOA is a secured creditor entitled to adequate protection; Debtor's proposal is insufficient.**

The Ninth Circuit has made clear that the debtor bears the burden of proving that a secured creditor is adequately protected before cash collateral may be used over objection. *In re Mellor*, 734 F.2d at 1400; see also *In re Las Vegas Monorail Co.*, 429 B.R. 317, 340 (Bankr. D. Nev. 2010) ("The concept of adequate protection is grounded in the requirement that the secured creditor receive the indubitable equivalent of its interest in the collateral."). Apart from the Continental Casualty personal property judgment filing, the Portside MOA holds a recorded statutory assessment lien against the condominium garage unit that was in foreclosure at filing. Debtor concedes this. The Portside MOA's lien encumbers real property and the enterprise value of continued access/amenities for residents; preserving that value requires timely ongoing assessments, reimbursing the Portside MOA for security and utility expenses, and an appropriate cure/escrow mechanism for prepetition arrears.

Debtor's offer of "the remainder to start making an adequate protection payment of the monthly HOA dues (~$29,000)" is vague, discretionary, and contingent on liquidity that the budget does not actually generate in early months. It provides no: (i) fixed monthly adequate

---

[1] PHOA governs the Residential Condominium Parcel (consisting of Portside Phase I and Portside Phase II).

[2] As will be discussed in greater detail in PHOA's opposition to Debtor's motions to reject the license agreements due October 2, 2025, the license agreements in question are not executory contracts, but covenants running with the land (the license agreements are made part of the Master Declaration of Conditions, Covenants and Restrictions Establishing Reciprocal Easements and a Plan of Ownership for Portside, San Francisco, California recorded February 11, 1994, in Book G67, Page 584 of the Official Records of the City and County of San Francisco ("CCRs")).

protection payment; (ii) reimbursement of Portside MOA for security expenses and utility expenses; (ii) escrow for prepetition arrears; (iii) replacement lien package for the Portside MOA to the extent proceeds are cash collateral; (iv) reporting; or (v) default/termination triggers. Further, there is no showing of an equity cushion protecting the Portside MOA's collateral position; none is quantified. Without either an equity cushion or firm adequate protection terms, cash collateral use cannot be approved over Portside MOA's objection.

### C. Debtor has not shown adequate protection for non-consenting lienholders, including the SBA; replacement liens are undefined and overbroad.

Debtor has not specifically identified what collateral it can offer a replacement lien on. See *In re Mellor*, 734 F.2d at 1400 (debtor must provide specific evidence of adequate protection, not mere assurances). The SBA has not consented. Debtor offers only generic "replacement liens on newly generated cash collateral" and current debt service. There is no 13-week budget, cash flow covenant, reporting, or variance to ensure replacement liens are meaningful. The Court cannot approve replacement liens on postpetition proceeds without specific identification of collateral, exclusions (e.g., avoidance actions and their proceeds), and appropriate monitoring and variance controls.

### D. Improper use of cash collateral for professional fees and insiders absent consent and a proper carve-out.

Debtor seeks authority to pay professional fees from cash collateral without either (i) the consent of all cash collateral holders; or (ii) a narrowly tailored professional-fee carve-out with waterfall, budget, variance, and termination triggers. No such carve-out is presented. Debtor also favors an insider (21st Century) and proposes to maintain "secured debt service" globally (Dkt. 30-1, Ex. 7) while leaving the Portside MOA's foreclosure-driven secured lien inadequately protected. Cash collateral should not be used to prefer insiders or junior interests.

### E. Overbroad duration and lack of protections.

Debtor asks to use cash collateral "for the entire duration of the case" with no reporting, default, or milestones, contrary to § 363(e). Interim relief, if any, must be tightly conditioned, short-term, and monitored.

**F. Procedural concerns with expedited relief.**

• The ex parte application does not establish immediate and irreparable harm justifying the breadth of relief requested, particularly given Debtor's admission of having cash on hand, ongoing receipts, and the operator remaining in place.[3]

## IV. REQUESTED RELIEF/CONDITIONS

The Court should deny the Motion. Alternatively, any interim order should be limited to four weeks and include, at minimum, the following conditions:

- 13-Week Budget and Reporting:
    - A detailed 13-week budget with weekly receipts and disbursements, including line items for insurance, utilities (by category), maintenance/repairs, security, janitorial, operator fees, merchant/processing fees, taxes, HOA assessments, legal/accounting, and a reasonable contingency.
    - Weekly cash reports (actuals vs. budget) delivered to all secured creditors and the UST within 3 business days of each week's end.
    - A cumulative variance cap of 10% per line item and 5% on aggregate disbursements; variances beyond caps require consent of affected secured creditors or further order.
- Adequate Protection to Portside MOA:
    - Monthly adequate protection payments to Portside MOA equal to full postpetition assessments at the contract rate, paid on the first business day of each month.
    - Monthly reimbursements to Portside MOA for Debtor's share of security expenses and utility expenses.

---

[3] Debtor's Bankruptcy Schedules lists cash and cash equivalents held at the Bank of Hawaii in the amount of $226,741.86.

- Establishment of a segregated escrow adequate to cure prepetition arrears over no more than 12 months, with the first escrow funding on the first interim period.
- Maintenance of insurance, compliance with CC&Rs, and performance of maintenance necessary to preserve common area access/operations tied to the garage unit.
- Replacement liens (if applicable) solely on the same categories of collateral in which the Portside MOA holds valid, perfected interests, junior only to existing valid, perfected senior liens, and expressly excluding chapter 5 causes of action and their proceeds.

- Adequate Protection to Other Non-Consenting Secured Creditors:
  - Replacement liens narrowly tailored to prepetition collateral scope; no liens on avoidance actions or surcharge recoveries; no priming.
  - No payments to insiders or on insider-secured debt absent separate noticed motion and order.
  - No use of cash collateral to pay professional fees except pursuant to a professional-fee carve-out not to exceed amounts budgeted and subject to allowance, with a customary waterfall.

- Covenants/Controls:
  - Maintain all insurance (property, liability, business interruption), pay taxes as they come due (with proof to secured creditors), and comply with all applicable laws and condominium documents.
  - Prohibit DIP financing, new liens, extraordinary expenditures, or material contract modifications without further order.

- Termination Events:
  - Any material budget variance breach; failure to make HOA/AP payments; default under the Bank of Hawaii stipulation; lapse of insurance; or

7
PORTSIDE HOMEOWNERS' ASSOCIATION'S OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL
Case: 25-30699  Doc# 41  Filed: 09/23/25  Entered: 09/23/25 11:51:48  Page 7 of 9
CORE/3543394.0001/231862402.1

unauthorized use of cash collateral, after a short cure period (3 business days).

### V. CONCLUSION

Debtor's budget is inadequate and speculative; adequate protection is not shown, particularly for the Portside MOA's secured lien. The Motion should be denied. If the Court grants any interim relief, it should be strictly conditioned as set forth above to protect Portside MOA and other non-consenting secured creditors.

Dated: September 23, 2025　　　　　　　　　　　STINSON LLP

By: */s/Donald H.Cram*
　　　DONALD H. CRAM

Secured Creditor
PORTSIDE MASTER OWNERS' ASSOCIATION

# CERTIFICATE OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen and not a party to the within action.

On September 23, 2025, I served the following documents in the manner described below:

**PORTSIDE MASTER OWNERS' ASSOCIATION'S OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

☒ (BY U.S. MAIL) I am personally and readily familiar with the business practice of Stinson LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☒ BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through Stinson LLP's electronic mail system from katrina.adkins@stinson.com to the email addresses set forth below.

☒ (BY CM/ECF): I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Peter Hadiaris<br>100 E. Street, Suite 210<br>Santa Rosa, CA 95404 | *Attorney for Debtor*<br><br>415.694.0052<br>peter@hadiaris.com |
| Matthew G. Bouslog<br>Allen Matkins Leck Gamble Mallory &<br>Natsis LLP<br>2010 Main Street, 8th Floor<br>Irvine, CA 92614-7214 | *Attorney for Two Bryant Investors, LLC*<br><br>949.851.5553<br>mbouslog@allenmatkins.com |
| Rachael Tamiko Gonzales<br>Allen Matkins<br>865 S. Figueroa Street, Ste 2800<br>Los Angeles, CA 90017 | 213.955.5615<br>rgonzales@allenmatkins.com |
| Paul Gregory Leahy<br>Office of the United States Trustee<br>280 South First Street, Suite 268<br>San Jose, CA 9511 | *Attorney for Office of the United States Trustee*<br><br>408.535.5535<br>Paul.Leahy@usdoj.gov |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 23, 2025, at San Francisco, California.

*Katrina D. Adkins*
Katrina D. Adkins