1  Donald H. Cram (State Bar Number 160004)
   don.cram@stinson.com
2  Duane M. Geck (State Bar Number 114823)
   duane.geck@stinson.com
3  STINSON LLP
   595 Market Street
4  Suite 2600
   San Francisco, California 94105
5  Telephone:   415.398.3344
   Facsimile:   415.956.0439
6
   Respondent
7  PORTSIDE HOMEOWNERS' ASSOCIATION

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | In re | Case No. 25-30699 HLB |

12 | SF OAKLAND BAY LLC, | Chapter: 11 |

13 | Debtor. | **PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUSS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS** |

| | Date:    October 16, 2025
Time:   10:00 a.m.
Dept.:   Ctrm. 19/Videoconference
Judge:  Hon. Hannah L. Blumenstiel |

STINSON LLP
595 Market Street
Suite 2600
San Francisco,
California 94105
415.398.3344

PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUSS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS

Case: 25-30699    Doc# 53    Filed: 10/02/25    Entered: 10/02/25 11:57:48    Page 1 of 17

CORE/3543394.0001/231755545.1

# Table of Contents

I.  INTRODUCTION ...................................................................................................1

II. PERTINENT FACTS ..............................................................................................1

III. STANDARD............................................................................................................2

IV. ARGUMENT............................................................................................................4

    A.    The License Agreements satisfy California's requirements for covenants running with the land. ...........................................................................4

    B.    As a real property covenant/servitude, the License is not an executory contract under § 365...........................................................................................6

    C.    Section 363(f) cannot sever these covenants; economic hardship is not a basis to extinguish them. ................................................................................7

    D.    Debtor cannot satisfy its burden of showing changed circumstance. .....................8

    E.    Even if the License Agreements can be rejected as executory contracts, PHOA and the homeowners cannot be deprived of their property interests under the License Agreements. ...............................................................9

V. CONCLUSION.........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 523 E. Fifth St. Hous. Pres. Dev. Fund Corp.*,
  79 B.R. 568 (Bankr. S.D.N.Y. 1987) ................................................................. 3, 6

*Anthony v. Brea Glenbrook Club*,
  58 Cal.App.3d 506 (1976) ........................................................................................ 4

*B.C.E. Dev., Inc. v. Smith*,
  215 Cal. App. 3d 1142 (1989) ............................................................................ 3, 5, 7

*Biagini v. Hyde*,
  3 Cal.App.3d 877 (1970) ......................................................................................... 8

*In re Case*,
  91 B.R. 102 (Bankr. D. Colo. 1988) ..................................................................... 3, 6

*Citizens for Covenant Compliance v. Anderson*,
  12 Cal. 4th 345 (1995) ........................................................................................ 3, 5

*County of Butte v. Bach*,
  172 Cal. App. 3d 848 (1985) ............................................................................... 4, 8

*In re Dundee Equity Corp.*,
  1992 Bankr. LEXIS 436 (Bankr. S.D.N.Y. Mar. 6, 1992) ..................................... 3, 7

*In re Energytec, Inc.*,
  739 F.3d at 222–25 ................................................................................................. 7

*Ezer v. Fuchsloch*,
  99 Cal.App.3d 849 (1979) ....................................................................................... 8

*Hayes v. Water Ski Mania Estates Homeowners Ass'n (In re Hayes)*,
  2008 Bankr. LEXIS 4668 (9th Cir. BAP Mar. 31, 2008) ...................................... 3, 6

*In re Heatherwood Holdings, LLC*,
  454 B.R. 495 (Bankr. N.D. Ala. 2011) ................................................................. 3, 8

*In re Inwood Heights Hous. Dev. Fund Corp.*,
  2011 Bankr. LEXIS 3251 (Bankr. S.D.N.Y. Aug. 25, 2011) ..................................... 7

*Lincoln Sav. & Loan Ass'n v. Riviera Estates Ass'n*,
  7 Cal. App. 3d 449 (1970) ................................................................................... 4, 8

*Mancuso v. Meadowbrook Mall Co. Ltd. P'ship*,
  2007 U.S. Dist. LEXIS 23308 (N.D.W. Va. Mar. 28, 2007) ................................. 3, 7

*Mid-City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club)*,
   636 F.3d 467 (8th Cir. 2011) ..................................................................................3, 8

*Mission Prod. Holdings v. Tempnology, LLC*,
   587 U.S. ___, 139 S. Ct. 1652, 203 L. Ed. 2d 876 (2019) .......................................10

*Murphey v. Gray*,
   84 Ariz. 299, 327 P.2d 751 (1958) ..............................................................................8

*Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*,
   739 F.3d 215 (5th Cir. 2013) .................................................................................3, 7

*NLRB v. Bildisco & Bildisco*,
   465 U.S. 513 (1984) ....................................................................................................6

*Oceanside Cmty. Ass'n v. Oceanside Land Co.*,
   147 Cal. App. 3d 166 (1983) ...................................................................................3, 5

*In re Pintlar Corp.*,
   187 B.R. 680 (Bankr. D. Idaho 1995) ........................................................................8

*Relovich v. Stuart*,
   211 Cal. 422 (1931) ..........................................................................................5, 6, 7

*In re Robert L. Helms Constr. & Dev. Co.*,
   139 F.3d 702 (9th Cir. 1998) ......................................................................................2

*Shalimar Ass'n v. D.O.C. Enters., Ltd.*,
   142 Ariz. 36, 688 P.2d 682 (1984) ..........................................................................4, 9

*Strong v. Shatto*,
   45 Cal.App. 29 (1919) ................................................................................................8

*Terry v. James*,
   72 Cal.App.3d 438 (1977) ..........................................................................................8

*Upland/Euclid, Ltd. v. Grace Rest. Co. (In re Upland/Euclid, Ltd.)*,
   56 B.R. 250 (9th Cir. BAP 1985) .............................................................................10

*Welshire, Inc. v. Harbison*,
   33 Del.Ch. 199, 91 A.2d 404 (1952) ..........................................................................8

**Statutes**

Bankruptcy Code § 365 ............................................................................................. *passim*

California Civil Code § 1461 ..............................................................................................4

California Civil Code § 1462 ..............................................................................................4

California Civil Code §§ 1462, 1468 ............................................................................................. 3, 6

California Civil Code § 1468 ........................................................................................................ 4

San Francisco Municipal Code § 174 ........................................................................................... 9

San Francisco Municipal Code § 176 ........................................................................................... 9

## I. INTRODUCTION

Portside Homeowners' Association, a California nonprofit mutual benefit corporation ("PHOA"), opposes SF Oakland Bay LLC's motions to reject the February 25, 1994 License Agreement and the October 9, 1997 License Agreement (together, the "License Agreements") under § 365 [*Docket Nos. 24 and 25*].[1] The License Agreements are not executory contracts; they are recorded, perpetual, appurtenant property covenants that runs with the land and burdens the parking parcel for the benefit of specifically identified residential parcels. As such, the License Agreements are not subject to rejection under § 365.[2] The motions should be denied. Even if the License Agreements were an executory contracts that could be rejected, PHOA and the homeowners cannot be deprived of their property interests under the License Agreements – namely their possessory interest in the garage premises for the duration of the term of the license (which is perpetual) under applicable nonbankruptcy law.

## II. PERTINENT FACTS

1. PHOA governs the Residential Condominium Parcel (consisting of Portside Phase I and Portside Phase II) and entered into two irrevocable License Agreements with Debtor's predecessor, the owner of the Garage Parcel:

    a. The License Agreement between Hum Baby Associates, a California Limited Partnership and HOA dated February 24, 1994, which benefits the condominium owners at 38 Bryant Street ("Portside Phase I"); and

    b. The License Agreement between Hum Baby Associates, a California Limited Partnership and HOA dated October 9, 1997, which benefits the condominium owners at 403 Main Street ("Portside Phase II").

2. The 1994 License "grants to [PHOA], for the benefit of the owners of the condominiums in Portside Phase I, an irrevocable license to park sixty-two (62) Motor Vehicles in the garage located on the [parking] property in designated spaces assigned to Licensee," together with ingress/egress. (See Decl. of John Cornwell ¶ 4, Exhibit 1 - 1994 License ¶ 1).

---

[1] PHOA submits this omnibus opposition to both motions as the arguments as to why both motions should be denied are identical.

[2] Or for that matter, are not subject to a sale free and clear under § 363(f).

1

PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS
Case: 25-30699    Doc# 53    Filed: 10/02/25    Entered: 10/02/25 11:57:48    Page 6 of 17
CORE/3543394.0001/231755545.1

3. The 1997 License "grants to [PHOA], for the benefit of the owners of the condominiums in Portside Phase II, an irrevocable license to park one hundred fifty-eight (158) Motor Vehicles in the garage located on the [parking] property in designated spaces assigned to Licensee," together with ingress/egress. (See Decl. of John Cornwell ¶ 5, Exhibit 2 - 1997 License ¶ 1).

4. The License Agreements are appurtenant, perpetual, and binding on successors. The License Agreements specifically state that they, "shall be appurtenant to the [PHOA condominium] property," "shall inure to the benefit of [PHOA], the Owners and the owner or owners of the [condominium] property from time to time," "shall burden and be binding upon the [parking] property and the successive owners," and "shall remain in full force and effect in perpetuity," subject to compliance. (See Decl. of John Cornwell, Exhibits 1 and 2 - 1994 License ¶¶ 7, 10(b); 1997 License ¶¶ 1, 7, 10(b)).

5. The License Agreements are recorded and incorporated into the Portside Master CC&Rs and are noted on the recorded condominium map. (See Decl. of John Cornwell ¶¶ 6 and 7, Exhibits 1, 2, 3 and 4 - 1994 License preface; 1997 License preface).

5. The PHOA assigns rights to individual unit owners via recorded addenda; each owner agrees to be bound and pay the specified parking charge as governed by the terms of the License Agreements. (See Decl. of John Cornwell ¶¶ 8 and 9, Exhibits 1, 2, 5,6,7 and 8).

6. Debtor incorrectly asserts the License is an executory contract because both sides owe ongoing duties (provide parking; pay monthly charges; enforce rules). Mot. at 2–3. Debtor seeks rejection to raise rates to "near market." Mot. at 1–4; Chua Decl. ¶¶ 2–9.

### III. STANDARD

Under Ninth Circuit law, a contract is executory only if "the obligations of both parties are so far unperformed that the failure of either to complete performance would constitute a material breach and thus excuse the performance of the other." *In re Robert L. Helms Constr. & Dev. Co.*, 139 F.3d 702, 705 (9th Cir. 1998) (quoting Countryman[3]). Whether an agreement is

---

[3] The "Countryman test" derives from law professor Vern Countryman, author of Executory Contracts in Bankruptcy: Part I, 57 MINN. L. REV. 439, 460 (1973).

executory is a matter of federal law; the nature of the underlying rights (contract vs. property covenant) is governed by state law.

Under California Civil Code §§ 1462, 1468, a covenant runs with the land when: (1) the benefited and burdened lands are particularly described; (2) successors are expressly bound for the benefit of the covenantee's land; (3) the covenant concerns the use, repair, maintenance, improvement of property, or payment of assessments; and (4) the agreement is recorded. *Oceanside Cmty. Ass'n v. Oceanside Land Co.*, 147 Cal. App. 3d 166, 174 n.4 (1983), disapproved on other grounds by *Citizens for Covenant Compliance v. Anderson*, 12 Cal. 4th 345 (1995). If any statutory element is lacking, the obligation may be enforced as an equitable servitude. *B.C.E. Dev., Inc. v. Smith*, 215 Cal. App. 3d 1142, 1146 (1989).

Courts consistently hold restrictive covenants/easements running with land are not executory contracts subject to § 365 rejection and are not removable under § 363(f) absent specific law severing the covenant. See, e.g., *Hayes v. Water Ski Mania Estates Homeowners Ass'n (In re Hayes)*, 2008 Bankr. LEXIS 4668, at *22–28 (9th Cir. BAP Mar. 31, 2008) (affirming that community restrictive covenants are not § 365 executory contracts, notwithstanding mutual obligations); *In re 523 E. Fifth St. Hous. Pres. Dev. Fund Corp.*, 79 B.R. 568, 575–77 (Bankr. S.D.N.Y. 1987) (deed restriction for low-income use runs with land; not rejectable); *In re Case*, 91 B.R. 102, 105–06 (Bankr. D. Colo. 1988) (condominium declarations run with land; not rejectable); *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 222–25 (5th Cir. 2013) (pipeline transportation fee and consent right run with land; not strippable under § 363(f)); *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436 (Bankr. S.D.N.Y. Mar. 6, 1992) (tenant settlement rights run with land; not strippable); *Mancuso v. Meadowbrook Mall Co. Ltd. P'ship,* 2007 U.S. Dist. LEXIS 23308 (N.D.W. Va. Mar. 28, 2007) (use restrictions run with land; § 363(f) unavailable); *In re Heatherwood Holdings, LLC*, 454 B.R. 495, 502–11 (Bankr. N.D. Ala. 2011) (implied golf-course covenant not strippable); *Mid-City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club)*, 636 F.3d 467, 472–73 (8th Cir. 2011) (similar).

/ / /

Economic hardship alone is insufficient to extinguish covenants. *Shalimar Ass'n v. D.O.C. Enters., Ltd.*, 142 Ariz. 36, 43, 688 P.2d 682, 691 (1984); *Lincoln Sav. & Loan Ass'n v. Riviera Estates Ass'n,* 7 Cal. App. 3d 449, 460 (1970); *County of Butte v. Bach*, 172 Cal. App. 3d 848, 867 (1985).

## IV.  ARGUMENT

### A.  The License Agreements satisfy California's requirements for covenants running with the land.

A restrictive covenant is a property right that imposes limits upon the use of land so that the value and enjoyment of adjoining land will be preserved. These property right obligations are created by a set of covenants, conditions, and restrictions affecting real property and "run with the land." A covenant that runs with the land must touch and concern land, which means it must affect the parties as owners of the particular estates in land or relate to the use of land. *Anthony v. Brea Glenbrook Club*, 58 Cal.App.3d 506, 510 (1976). A covenant running with the land requires that both liability upon it, and enforceability of it, pass with the transfer of the estate and the benefits or burdens pass by implication of property law rather than under principles of contract law. *Id*.

California Civil Code § 1461 provides, "[t]he only covenants which run with the land are those specified in this title, and those which are incidental thereto." A covenant can run with the land under either § 1462 or § 1468. California Civil Code § 1462 states, "[e]very covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land."

California Civil Code § 1468 provides,

> [e]ach covenant, made by an owner of land with the owner of other land or made by a grantor of land with the grantee of land conveyed, or made by the grantee of land conveyed with the grantor thereof, to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, runs with both the land owned by or granted to the covenantor and the land owned by or granted to the covenantee and shall ... benefit or be binding upon each successive owner, during his ownership ....

For a determination that a restrictive covenant meets the statutory definition of "running with the land," § 1468 "requires: (1) the benefited and burdened lands must be particularly

described in the instrument creating the covenant, either a deed between the grantor and grantee or an agreement between landowners; (2) the covenantor's successors must be expressly bound for the benefit of the covenantee's land; (3) the covenant must concern the use, repair, maintenance, or improvement of the property or the payment of taxes and assessments and (4) the agreement must be recorded." *Oceanside Cmty. Ass'n v. Oceanside Land Co.*, 147 Cal.App.3d 166, 174, fn. 4, (1983), disapproved on other grounds, *Citizens for Covenant Compliance v. Anderson*, 12 Cal. 4th 345 (1995). If one of the statutory requirements is lacking, a covenant may alternatively be enforced as an equitable servitude. *B.C.E. Dev., Inc. v. Smith*, 215 Cal.App.3d 1142, 1146 (1989). An equitable servitude may be enforced as affirmative obligations as well as restrictions on the use of property. Relovich v. Stuart, 211 Cal. 422, 427 (1931).

The License Agreements at issue satisfy California's requirements for covenants running with the land. Each License identifies the parking parcel (burdened land) by lot and recorded map and identifies the residential condominium parcels (benefited lands) by lot and recorded condominium map. (See Decl. of John Cornwell ¶¶ 6 and 7, Exhibits 1, 2, 3 and 4 - 1994 License preface; 1997 License preface).

The License Agreements express an intent to bind successors and run with land. The License Agreements are "irrevocable," "appurtenant to the [residential] property," "shall inure to the benefit of [PHOA], the homeowners and the owner or owners of the [residential] property from time to time," and "shall burden and be binding upon the [parking] property and the successive owners." (See Decl. of John Cornwell, Exhibits 1, 2, 3 and 4 - 1994 License ¶ 10(b); 1997 License ¶ 10(b)). It remains "in perpetuity." (*Id.*, 1994 License ¶ 7; 1997 License ¶ 7).

The License Agreements touch and concern the land. The covenants concern core use rights—dedicated residential parking, ingress/egress, location/operation of spaces, and related rules—integral to the residential parcels' use and value, and corresponding burdens on the parking parcel. (*Id.*, 1994 License ¶¶ 1–6; 1997 License ¶¶ 1–6). Payment terms are tied to the land use (assigned space) and run to the operator as burden/benefit of the burdened/benefited parcels.

The License Agreements were recorded and incorporated by reference into the recorded Master CC&Rs and condominium map notes. (See Decl. of John Cornwell, Exhibits 1, 2, 3 and 4 - 1994 License preface; 1997 License preface).

These elements satisfy Civil Code §§ 1462 and 1468 and *Oceanside*'s four-part test. Even if viewed as a "license" in name, California courts look to substance; this is an appurtenant servitude/easement-like grant tied to identified parcels, not a mere personal contract. See *Relovich v. Stuart*, 211 Cal. 422, 427 (1931) (equitable servitudes enforceable as affirmative obligations).

### B. As a real property covenant/servitude, the License is not an executory contract under § 365.

The interpretation of a restrictive covenant is governed by state law. However, whether a contract is executory under the Bankruptcy Code is a question of federal law. Although the Bankruptcy Code does not define "executory contract," courts interpret an executory contract as one on which performance is due on both sides. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522, n.6 (1984). A contract is executory if the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.

Even though restrictive covenants may have certain hallmarks of an executory contract, courts have determined that such restrictive covenants are not executory contracts subject to rejection under § 365(a). The Ninth Circuit BAP held in *In re Hayes, supra*, that subdivision covenants are not executory, even with mutual obligations. 2008 Bankr. LEXIS 4668, at *22–28. Despite the existence of obligations imposed on both sides, a restrictive covenant may not be treated as an executory contract for purposes of § 365. *In re 523 E. Fifth St. Housing Pres. Dev. Fund Corp.*, 79 B.R. 568 (Bankr. S.D.N.Y. 1987) (restrictive covenant in deed requiring real property to be used for low-income housing was intended to run with the land and could not be rejected as executory contract under § 365); *In re Case*, 91 B.R. 102 (Bankr. D. Colo. 1988) (condominium declarations were covenants running with the land which could not be rejected as an executory contract).

Debtor's reliance on ongoing "duties" (provide spaces, enforce rules, pay fees) does not transform a recorded, appurtenant, perpetual servitude into a rejectable executory contract. Those duties arise from and define the property covenant. See *In re Energytec, Inc.*, 739 F.3d at 222–25 (ongoing fee and consent rights ran with pipeline; not rejectable/strippable). Although the License Agreements contemplate future performance by both Debtor and PHOA (and the homeowners), they meet the requirements under California law for restrictive covenants and meet the statutory definition of "running with the land." As such, they cannot be rejected as executory contracts.

Even if the Court finds any statutory element lacking, the License Agreements are enforceable as an equitable servitudes. At minimum, the recorded, appurtenant, perpetual, parcel-specific obligations are enforceable equitable servitudes binding successors. *B.C.E. Dev.*, 215 Cal. App. 3d at 1146; *Relovich*, 211 Cal. at 427. Bankruptcy does not eviscerate such property interests.

**C.  Section 363(f) cannot sever these covenants; economic hardship is not a basis to extinguish them.**

Debtor moves under § 365, however its briefing suggests a broader goal of cleansing the property to raise "market" rates. Courts overwhelmingly refuse to use § 363(f) to strip covenants/easements that run with land absent specific statutory authority severing the right.[4] Debtor identifies no such statute.

---

[4] *Mancuso v. Meadowbrook Mall Co. Ltd. P'ship*, 2007 U.S. Dist. LEXIS 23308, at *29-30 (Bankr. N.D.W. Va. Mar. 28, 2007) (holding that certain "use covenants" governing what type of restaurant and signage could be utilized on certain parcels of land were restrictions that ran with land, and debtor could not sell property free and clear of those covenants under § 363(f), even though purchaser attempted to show that covenants could be avoided under the law of eminent domain); *Fifth St. Housing, supra*, (deed restriction requiring that property be used for low-income housing was a covenant that ran with land, and property could not be sold free and clear of such restriction through § 363(f)); *In re Inwood Heights Hous. Dev. Fund Corp.*, 2011 Bankr. LEXIS 3251 (Bankr. S.D.N.Y. Aug. 25, 2011) (holding that debtor could not use § 363(f) to obviate compliance with any sale restrictions contained in deed, including restriction that property could not be sold for certain number of years without city's consent); *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436 (Bankr. S.D.N.Y. Mar. 6, 1992) (§ 363(f) did not allow sale of apartment building free and clear of tenants' rights under housing settlement agreement because such stipulations were property interests which ran with the land and were enforceable against subsequent purchasers); *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215 (5th Cir. 2013) (Debtor could not utilize § 363(f) to sell a natural gas pipeline system free and clear of a third party's right to transportation fees tied to the operation of the pipeline

### D. Debtor cannot satisfy its burden of showing changed circumstance.

To dispose of the burdensome terms of the License Agreements as restrictive covenants, Debtor must demonstrate that (i) a change of circumstances has occurred which has severely impacted the original intent of the restriction, or (ii) the covenant is an improper restraint on alienation. The established rule in California is that "[restrictive] covenants will be construed strictly against persons seeking to enforce them, and in favor of the unencumbered use of the property." *Biagini v. Hyde*, 3 Cal.App.3d 877, 880 (1970); *Ezer v. Fuchsloch*, 99 Cal.App.3d 849, 861 (1979); *Terry v. James*, 72 Cal.App.3d 438, 443 (1977); *Lincoln Sav. & Loan Ass'n v. Riviera Estates Ass'n*, 7 Cal.App.3d 449, 463 (1970). However, to demonstrate a change of circumstances, the property owner has the burden of showing the change is of such a dimension "that it is no longer possible to accomplish the original purpose intended by the restriction," or the enforcement of the restrictive covenant "would be inequitable, or unreasonable, or oppressive." *County of Butte v. Bach*, 172 Cal.App.3d 848, 867 (1985).

The fact that property has become more desirable or valuable for business purposes than for residence purposes, where the restriction, notwithstanding the change of conditions, still is of substantial advantage to the dominant property, will not necessarily defeat application for equitable relief. *Strong v. Shatto*, 45 Cal.App. 29, 37 (1919); *Lincoln Sav. & Loan Ass'n v. Riviera Estates Ass'n*, 7 Cal.App.3d 449, 460 (1970). There must be substantial evidence that the changed circumstances render the purpose of the covenant unattainable. *Welshire, Inc. v. Harbison*, 33 Del.Ch. 199, 204, 91 A.2d 404, 406-07 (1952); *Murphey v. Gray*, 84 Ariz. 299,

---

system and the requirement that a sale or assignment of the pipeline could only take place with the consent of the third party – the third party's rights were covenants that ran with the land under Texas law); *In re Pintlar Corp.*, 187 B.R. 680 (Bankr. D. Idaho 1995) (the Bankruptcy Court preserved ASARCO's right to deposit mining tailings into the rivers and waters of the Coeur d'Alene River Valley absent a showing by the EPA that a law existed that specifically severed such rights from the property); *MidCity Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club)*, 636 F.3d 467 (8th Cir. 2011) (easement rights and other similar covenants as so inviolable that a sale under § 363(f) cannot sever implied covenant between the owner of the property and neighboring residents that the property be maintained as a golf course); *Heatherwood Holdings, LLC v. First Commer. Bank (In re Heatherwood Holdings, LLC)*, 454 B.R. 495 (Bankr. N.D. Ala. 2011) (Bankruptcy Court denied the debtor's request to use § 363(f) to strip off the covenants, concluding that the property was, in fact, subject to an "implied restrictive covenant" limiting it to use as a golf course despite the property's unprofitability and inherent unsuitability for golf course use).

8
PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS
CORE/3543394.0001/231755545.1

Case: 25-30699 Doc# 53 Filed: 10/02/25 Entered: 10/02/25 11:57:48 Page 13 of 17

304, 327 P.2d 751, 754 (1958). Lack of profitability or a mere change in economic conditions does not, in and of itself, translate to a change of circumstances which will permit the evisceration of a restrictive covenant. *Shalimar Ass'n v. D.O.C. Enters, Ltd.*, 142 Ariz. 36, 43, 688 P.2d 682, 691 (1984).

Here, the covenants' purposes—stable residential parking integrated into a mixed-use project—remain entirely attainable and are of substantial benefit to the residential parcels. The Debtor purchased the parking parcel subject to these recorded burdens and cannot shed them merely to improve margins.

Further, if the License Agreements were rejected, it could spell disaster for the estate. The San Francisco Conditional Use Authorization to use the garage parcel for parking is predicated upon the existence of the License Agreements. If the License Agreements are rejected, Debtor will be in violation of the San Francisco Planning Code subjecting it to penalties and the inability to legally park vehicles in the garage until the violation is remedied. (See Decl. of John Cornwell, Exhibits 7 and 8).[5]

### E. Even if the License Agreements can be rejected as executory contracts, PHOA and the homeowners cannot be deprived of their property interests under the License Agreements.

Section 365(m) provides, "[F]or purposes of this section 365 and sections 541(b)(2) and 362(b)(10), leases of real property shall include any rental agreements to use real property." If the License Agreements are executory contracts, then they are agreements where Debtor rents use of its real property to Portside homeowners for a fee. So, to the extent the License Agreements are executory contracts, they are deemed leases of real property for purposes of § 365 where Debtor is the lessor and the PHOA and homeowners are the lessees.

Section 365(h)(1)(A)(ii) provides,

(h)(1)(A)If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—

---

[5] San Francisco Municipal Code (Planning Code) § 174 renders the conditions imposed upon conditional use permits requirements under the Planning Code and states that failure to comply with those conditions results in violations of the Planning Code. San Francisco Municipal Code § 176 delineates the extensive penalties for violations of the Planning Code which include penalties of $1000 per day.

9
PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS
Case: 25-30699    Doc# 53    Filed: 10/02/25    Entered: 10/02/25 11:57:48    Page 14 of 17
CORE/3543394.0001/231755545.1

(ii)if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

If the License Agreements are executory contracts, although Debtor may reject it and cease providing services, it cannot deprive the PHOA and homeowners of its interests in the garage premises for the duration of the perpetual term under the terms (including fee payment terms) of the License Agreements. *Upland/Euclid, Ltd. v. Grace Rest. Co. (In re Upland/Euclid, Ltd.)*, 56 B.R. 250 (9th Cir. BAP 1985).

This is consistent with § 365(g), which treats rejection as merely a breach of contract, and the Supreme Court's decision in *Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. ___, 139 S. Ct. 1652, 203 L. Ed. 2d 876 (2019). In this case, the Court addressed the issue of whether a debtor's rejection of an executory contract under § 365 of the Bankruptcy Code terminates the rights of the counterparty to the contract. The Court held that rejection of an executory contract under § 365 has the same effect as a breach of the contract outside bankruptcy. Specifically, the rejection does not rescind rights that the contract previously granted to the counterparty. The Court emphasized that rejection does not terminate rights that the counterparty has already received under the contract, ensures that the counterparty retains rights that would survive a breach under nonbankruptcy law and is not deprived of its bargained-for benefits simply because the debtor has filed for bankruptcy.

Even if the Court concludes that the License Agreements at issue are executory contracts that Debtor can reject, the rejection amounts to a breach of contract. Rejection may allow Debtor to stop performing under the License Agreements. However, rejection does not eliminate the rights of the PHOA and homeowners to utilize the garage space for parking at the stated rates in perpetuity. Rejection will not allow Debtor to demand higher rates for parking or otherwise modify the terms of the License Agreements.

/ / /

/ / /

10
PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS
CORE/3543394.0001/231755545.1

Case: 25-30699 Doc# 53 Filed: 10/02/25 Entered: 10/02/25 11:57:48 Page 15 of 17

## V.     CONCLUSION

The 1994 and 1997 Portside parking License Agreements are recorded, perpetual, appurtenant covenants/servitudes that run with the land, not executory contracts. They are not subject to rejection under § 365, nor can they be stripped under § 363(f). Even if they were considered executory contracts that could be rejected, such a rejection would merely amount to a breach of contract and not eviscerate the rights PHOA and the homeowners enjoy under the terms of the License Agreements.  The motion should be denied.

Alternatively, if the Court believes a factual hearing is necessary, PHOA requests an evidentiary hearing limited to the covenant elements under California law and the recorded documents, and reserves all rights.[6]

Dated: October 1, 2025                                        STINSON LLP


By:  */s/Donald H. Cram*
         DONALD H. CRAM

Respondent
PORTSIDE HOMEOWNERS' ASSOCIATION

---

[6] PHOA has propounded discovery upon Debtor in connection with this contested matter and the response deadlines to that discovery have not expired.

# CERTIFICATE OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen and not a party to the within action.

On October 2, 2025, I served the following documents in the manner described below:

**PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS**

| | |
|---|---|
| ☒ | (BY U.S. MAIL) I am personally and readily familiar with the business practice of Stinson LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California. |
| ☐ | BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through Stinson LLP's electronic mail system from katrina.adkins@stinson.com to the email addresses set forth below. |
| ☒ | (BY CM/ECF): I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: |

On the following part(ies) in this action:

Peter Hadiaris　　　　　　　　　　　　　*Attorney for Debtor*
100 E. Street, Suite 210
Santa Rosa, CA 95404　　　　　　　　　　415.694.0052
　　　　　　　　　　　　　　　　　　　　peter@hadiaris.com

Matthew G. Bouslog　　　　　　　　　　　*Attorney for Two Bryant Investors, LLC*
Allen Matkins Leck Gamble Mallory &
Natsis LLP　　　　　　　　　　　　　　　949.851.5553
2010 Main Street, 8th Floor　　　　　　　mbouslog@allenmatkins.com
Irvine, CA 92614-7214

Rachael Tamiko Gonzales　　　　　　　　213.955.5615
Allen Matkins　　　　　　　　　　　　　rgonzales@allenmatkins.com
865 S. Figueroa Street, Ste 2800
Los Angeles, CA 90017

Paul Gregory Leahy　　　　　　　　　　　*Attorney for Office of the United States Trustee*
Office of the United States Trustee
280 South First Street, Suite 268　　　　408.535.5535
San Jose, CA 9511　　　　　　　　　　　Paul.Leahy@usdoj.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2025, at San Francisco, California.

　　　　　　　　　　　　　　　　　　　　*Katrina D. Adkins* _____
　　　　　　　　　　　　　　　　　　　　Katrina D. Adkins

12
PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS

CORE/3543394.0001/231755545.1