EXHIBIT 3

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Book G-67, page 583

This is to certify that this is a
true and correct copy of the
original document recorded
on 2-11-94 at 2:05
as No. 94-F545010 in the
City & County of San Francisco
OLD REPUBLIC TITLE COMPANY
By

FEB 14 1994

# MASTER

## DECLARATION

### OF

**CONDITIONS, COVENANTS AND RESTRICTIONS**

**ESTABLISHING RECIPROCAL EASEMENTS AND A PLAN OF OWNERSHIP**

**FOR**

**PORTSIDE,**

**SAN FRANCISCO, CALIFORNIA**

# TABLE OF CONTENTS

## MASTER

## DECLARATION

## OF

## CONDITIONS, COVENANTS AND RESTRICTIONS

## ESTABLISHING RECIPROCAL EASEMENTS AND A PLAN OF OWNERSHIP

## FOR

## PORTSIDE,

## SAN FRANCISCO, CALIFORNIA

ARTICLE I - DEFINITIONS . . . . . . . . . . . . . . . . . . . 3

| | | |
|---|---|---|
| Section 1.1 | "Articles" . . . . . . . . . . . . . | 3 |
| Section 1.2 | "Assessment" . . . . . . . . . . . . | 3 |
| Section 1.3 | "Association" or "Master Association" . . . | 3 |
| Section 1.4 | "Association Documents" . . . . . . . | 3 |
| Section 1.5 | "Board" or "Board of Directors" . . . . . | 3 |
| Section 1.6 | "Building" . . . . . . . . . . . . . | 3 |
| Section 1.7 | "Bylaws" . . . . . . . . . . . . . . | 3 |
| Section 1.8 | "Condominium Plan or Plan" . . . . . . | 3 |
| Section 1.9 | "Declarant" . . . . . . . . . . . . . | 4 |
| Section 1.10 | "Declaration" . . . . . . . . . . . . | 4 |
| Section 1.11 | "Institutional Lender" . . . . . . . . | 4 |
| Section 1.12 | "Map" . . . . . . . . . . . . . . . | 4 |
| Section 1.13 | "Member" or "Members" . . . . . . . . | 4 |
| Section 1.14 | "Membership" . . . . . . . . . . . . | 4 |
| Section 1.15 | "Mortgage" . . . . . . . . . . . . . | 5 |
| Section 1.16 | "Mortgagee" . . . . . . . . . . . . . | 5 |
| Section 1.17 | "Mortgagor" . . . . . . . . . . . . . | 5 |
| Section 1.18 | "Owner" or "Owners" . . . . . . . . . | 5 |
| Section 1.19 | "Parcel" . . . . . . . . . . . . . . | 5 |
| Section 1.20 | "Parcel 1" . . . . . . . . . . . . . | 5 |
| Section 1.21 | "Parcel 2" . . . . . . . . . . . . . | 5 |
| Section 1.22 | "Parcel 3" . . . . . . . . . . . . . | 5 |
| Section 1.23 | "Parcel 4" . . . . . . . . . . . . . | 6 |
| Section 1.24 | "Person" . . . . . . . . . . . . . . | 6 |
| Section 1.25 | "Property" . . . . . . . . . . . . . | 6 |
| Section 1.26 | "Number and Gender" . . . . . . . . . | 6 |
| Section 1.27 | "Mandatory and Permissive" . . . . . . | 6 |
| Section 1.28 | "Residential Declaration" . . . . . . . | 6 |
| Section 1.29 | "Shared Expenses" . . . . . . . . . . | 6 |
| Section 1.30 | "Shared Expenses Assessment" . . . . . . | 7 |
| Section 1.31 | "Shared Expenses Budget" or "Budget" . . . | 7 |

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

**ARTICLE II - DESCRIPTION OF PROPERTY, DIVISION OF PROPERTY**
**AND CREATION OF PROPERTY RIGHTS** . . . . . . . . . . . 7

    Section 2.1  Description of Property . . . . . . . . . . 7
          (a)  The Property . . . . . . . . . . . . . . . . 7
          (b)  Existing Encumbrances . . . . . . . . . . . 7
    Section 2.2  Division of Property . . . . . . . . . . . 9
          (a)  Parcel 1 . . . . . . . . . . . . . . . . 9
          (b)  Parcel 2 . . . . . . . . . . . . . . . . 9
          (c)  Parcel 3 . . . . . . . . . . . . . . . . 10
          (d)  Parcel 4 . . . . . . . . . . . . . . . . 10
          (e)  No Separate Conveyance of Easements . . . . . 11
    Section 2.3  Partition Prohibited . . . . . . . . . . . 11
    Section 2.4  Subdivision Permitted . . . . . . . . . . 11

**ARTICLE III - ASSOCIATION-ADMINISTRATION, MEMBERSHIP AND**
**VOTING RIGHTS** . . . . . . . . . . . . . . . . . . . 13

    Section 3.1  Association to Manage and Maintain
          Property Improvements . . . . . . . . . . . . 13
    Section 3.2  Membership . . . . . . . . . . . . . . . 14
    Section 3.3  Voting Rights . . . . . . . . . . . . . . 14

**ARTICLE IV - MAINTENANCE AND ASSESSMENT** . . . . . . . . . . . 15

    Section 4.1  Creation of the Lien and Personal
          Obligation of Assessment . . . . . . . . . . . 15
    Section 4.2  Purpose of Assessment . . . . . . . . . . 16
    Section 4.3  Regular Annual Shared Assessment and
          Reserve Fund . . . . . . . . . . . . . . . 16
    Section 4.4  Special Assessments . . . . . . . . . . . 18
    Section 4.5  Limitation on Board's Authority to
          Increase and Decrease Shared Assessments . . . . . 19
    Section 4.6  Notice and Quorum for Any Action
          Authorized Under Sections 4.3(a) and 4.5 . . . . . 20
    Section 4.7  Levying of Assessments . . . . . . . . . 21
    Section 4.8  Assessment Period . . . . . . . . . . . 22
    Section 4.9  Notice and Assessment Installment Due
          Dates; Delinquent Assessment . . . . . . . . . 23
    Section 4.10  Estoppel Certificate . . . . . . . . . . 23
    Section 4.11  Right to Enforce . . . . . . . . . . . 24
    Section 4.12  Creation of Lien . . . . . . . . . . . 24
    Section 4.13  Enforcement of Assessment Lien . . . . . 26
    Section 4.14  Waiver of Exemptions . . . . . . . . . 26

**ARTICLE V - DUTIES AND POWERS OF THE ASSOCIATION** . . . . . . 27

    Section 5.1  Duties . . . . . . . . . . . . . . . . 27
          (a)  Maintenance . . . . . . . . . . . . . . . 27
          (b)  Insurance . . . . . . . . . . . . . . . . 28
          (c)  Discharge of Liens . . . . . . . . . . . . 31
          (d)  Assessments . . . . . . . . . . . . . . . 31
          (e)  Payment of Expenses . . . . . . . . . . . 31
          (f)  Enforcement . . . . . . . . . . . . . . . 31

Section 5.2  Powers . . . . . . . . . . . . . . . . . . 31
    (a)  Utility Service . . . . . . . . . . . . 32
    (b)  Manager . . . . . . . . . . . . . . . . 32
    (c)  Adoption of Rules . . . . . . . . . . . 32
    (d)  Access . . . . . . . . . . . . . . . . 32
    (e)  Assessments, Liens and Fines . . . . . 33
    (f)  Enforcement . . . . . . . . . . . . . . 33
    (g)  Acquisition of Property . . . . . . . . 33
    (h)  Loans . . . . . . . . . . . . . . . . . 34
    (i)  Contract . . . . . . . . . . . . . . . 34
    (j)  Delegation . . . . . . . . . . . . . . 34
    (k)  Temporary Removal of Occupants . . . . 34
    (l)  Appointment of Trustee . . . . . . . . 35
    (m)  Other Powers . . . . . . . . . . . . . 35

ARTICLE VI - EASEMENTS AND UTILITIES . . . . . . . . . . 35

Section 6.1  Easements for Support and Access . . . . . 35
Section 6.2  Owners' Rights and Duties . . . . . . . . 36
Section 6.3  Easements for Utilities and Maintenance . . 37
Section 6.4  Association's Duties . . . . . . . . . . . 37
Section 6.5  Structural and Support Easements . . . . . 37

ARTICLE VII - USE RESTRICTIONS . . . . . . . . . . . . . 38

Section 7.1  Maintenance of Separate Parcels . . . . . 38
Section 7.2  Parking Use . . . . . . . . . . . . . . . 38
Section 7.3  Commercial/Retail Use . . . . . . . . . . 38
Section 7.4  Residential Use . . . . . . . . . . . . . 39
Section 7.5  Nuisances . . . . . . . . . . . . . . . . 40
Section 7.6  Commercial/Retail Signs . . . . . . . . . 40
Section 7.7  Residential Signs . . . . . . . . . . . . 40
Section 7.8  Garbage and Refuse Disposal . . . . . . . 41
Section 7.9  Radio and Television Antennas . . . . . . 41
Section 7.10  Architectural Control . . . . . . . . . 42
Section 7.11  Hazardous Materials . . . . . . . . . . . 43

ARTICLE VIII - GENERAL PROVISIONS . . . . . . . . . . . 43

Section 8.1  Enforcement . . . . . . . . . . . . . . . 43
    (a)  Right to Enforce . . . . . . . . . . . 43
    (b)  Alternative Dispute Resolution . . . . 43
Section 8.2  Invalidity of any Provision . . . . . . . 44
Section 8.3  Term . . . . . . . . . . . . . . . . . . . 44
Section 8.4  Amendments . . . . . . . . . . . . . . . . 45
Section 8.5  Encroachment Easements . . . . . . . . . . 45
Section 8.6  Effect of Breach . . . . . . . . . . . . . 46
Section 8.7  Owner's Right and Obligations to Maintain
  and Repair . . . . . . . . . . . . . . . . . . . . 46
Section 8.8  Damage or Destruction . . . . . . . . . . 46
Section 8.9  Condemnation . . . . . . . . . . . . . . . 50
Section 8.10  Owners' Compliance . . . . . . . . . . . 51
Section 8.11  Limitation of Restrictions on Declarant . 52
Section 8.12  Termination of Any Responsibility of
  Declarant . . . . . . . . . . . . . . . . . . . . . 53

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Section 8.13    Notice to First Mortgagees of Record . . .   54
Section 8.14    Effect of Breach . . . . . . . . . . . . .   54
Section 8.15    Notices  . . . . . . . . . . . . . . . . .   54
Section 8.16    Subdivider Access for Testing . . . . . .   55
Section 8.17    Enforcement of Bonded Obligations  . . . .   55

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

# MASTER

## DECLARATION

## OF

## CONDITIONS, COVENANTS AND RESTRICTIONS
## ESTABLISHING RECIPROCAL EASEMENTS AND A PLAN OF OWNERSHIP

## FOR

## PORTSIDE,

## SAN FRANCISCO, CALIFORNIA

THIS DECLARATION is made on the date hereinafter set forth by HUM BABY ASSOCIATES, a California limited partnership, referred to herein as "Declarant."

Declarant is the owner of that certain real property located in the City and County of San Francisco, State of California, described on that certain parcel map entitled "Parcel Map of Portside Subdivision Showing the Subdivision of Airspace", said Map having been recorded in the Office of the Recorder of the City and County of San Francisco, State of California, on January 19, 1994, in Book 42 of Parcel Maps, Pages 15 through 19, inclusive. Said real property is improved with a mixed-use retail/commercial/residential project consisting of four (4) separate airspace parcels: Parcel 1 (air, earth and certain other areas to be used in common by Parcels 2, 3 and 4); Parcel 2 (commercial parking uses); Parcel 3 (retail/commercial uses); and Parcel 4 (residential use). Parcel 4 is further defined and described on that certain subdivision map and condominium plan entitled "Map of Portside, a Condominium Project," recorded the _11th_ day of _February_, 199_4_, in Book _42_ of

-1-

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Condominium Maps, pages _161_ through _170_, Official Records of the City and County of San Francisco. Declarant intends to establish a development providing for the separate ownership of the individual airspace parcels, with reciprocal easements and restrictions upon the parcels for the use and enjoyment of the Property.

The condominium project shall be referred to herein as the "Property" as defined in Article I, Section 1.24.

Declarant intends by this document to impose upon the Property mutually beneficial restrictions under a general plan of improvement for the benefit of all the interests in the Property and the Owners thereof.

NOW, THEREFORE, Declarant hereby establishes that the Property hereinafter described shall be held, conveyed, mortgaged, encumbered, leased, rented, used, occupied, sold and improved, subject to the following declarations, limitations, covenants, conditions, restrictions and easements, all of which are imposed as equitable servitudes, pursuant to a general plan for the development of the Property, for the purposes of enhancing and protecting the value and attractiveness of the Property, and every part thereof, in accordance with the plan for the improvement of the Property and the division thereof into separate parcels. All of the limitations, covenants, conditions, restrictions and easements shall constitute covenants which shall run with the land and shall be binding upon Declarant and the successors and assigns of Declarant and all parties having or acquiring any right, title or interest in or to any part of the Property.

Case: 25-30699    Doc# 53-4    Filed: 10/02/25    Entered: 10/02/25 11:57:48    Page 8 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

# ARTICLE I

## DEFINITIONS

**Section 1.1** **"Articles"** Shall mean and refer to the Articles of Incorporation of the Association, as amended from time to time.

**Section 1.2** **"Assessment"** Shall mean that portion of the cost of maintaining, improving, operating and managing the Property which is to be paid by each Owner as determined by the Association.

**Section 1.3** **"Association" or "Master Association"** Shall mean and refer to Portside Master Owners' Association, a California nonprofit mutual benefit corporation, the Members of which shall be Owners of Parcels, or portions thereof, in the Property.

**Section 1.4** **"Association Documents"** Means and includes this Declaration, as it may be amended from time to time, the attachments, if any, annexed hereto, the Articles, the Bylaws, and the rules and regulations for the Members, as established from time to time.

**Section 1.5** **"Board" or "Board of Directors"** Shall mean and refer to the governing body of the Association.

**Section 1.6** **"Building"** Shall mean the structures on the Property containing the condominium units, parking spaces and commercial/retail spaces.

**Section 1.7** **"Bylaws"** Shall mean or refer to the Bylaws of the Association, as amended from time to time.

**Section 1.8** **"Condominium Plan or Plan"** Shall mean and refer to any diagrammatical floor plan, pursuant to California Civil Code Section 1351(e), subdividing the separate airspace parcels into condominium regimes, whether now or hereafter recorded. The Plan for Parcel 4 is entitled "Map of Portside, a Condominium Project,"

Case: 25-30699   Doc# 53-4   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 9 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

recorded the ___11th___ day of ___February___, 199*4*, in Book __42__ of Condominium Maps, pages __161__ through __170__, Official Records of the City and County of San Francisco.

**Section 1.9** **"Declarant"** Shall mean and refer to HUM BABY ASSOCIATES, a California limited partnership, together with its successors and assigns.

**Section 1.10** **"Declaration"** Shall mean and refer to this enabling Master Declaration.

**Section 1.11** **"Institutional Lender"** Shall mean any bank, savings and loan association, insurance company, or other financial institution holding a recorded mortgage on any parcel.

**Section 1.12** **"Map"** Shall mean that certain parcel map entitled "Parcel Map of Portside Subdivision Showing the Subdivision of Airspace", recorded on January 19, 1994, in Book 42 of Parcel Maps, pages 15 through 19, inclusive, Official Records of the City and County of San Francisco, State of California.

**Section 1.13** **"Member" or "Members"** Shall mean and refer to the Owner or Owners of Parcel 2 (who together constitute the Parking Membership); the Owner or Owners of Parcel 3 (who together constitute the Commercial/Retail Membership); and the Owner or Owners of Parcel 4 (who together constitute the Residential Membership).

**Section 1.14** **"Membership"** Shall mean and refer to one (1) of the three (3) memberships in the Association (the Parking Membership, the Retail/Commercial Membership and the Residential Membership), as set forth in Article III hereof.

-4-

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Section 1.15 "Mortgage" Shall include a deed of trust as well as a mortgage.

Section 1.16 "Mortgagee" Shall include a beneficiary or a holder of a deed of trust as well as a mortgagee.

Section 1.17 "Mortgagor" Shall include the trustor of a deed of trust as well as a mortgagor.

Section 1.18 "Owner" or "Owners" Shall mean or refer to the record holder or holders of title, if more than one, of a Parcel or a portion thereof. This shall include any person having a fee simple title to any Parcel but shall not include contract sellers and those persons or entities having any interest merely as security for the performance of any obligation. If a Parcel or any portion thereof is sold under a recorded installment land contract to a purchaser, such purchaser, rather than the fee owner, shall be considered the "Owner".

Section 1.19 "Parcel" Means an airspace parcel as defined and delineated on the Map.

Section 1.20 "Parcel 1" Shall mean and refer to airspace Parcel 1 as delineated on the Map, including all the improvements located therein. Parcel 1 shall be the air and earth parcel containing the upper and lower elevations of the Property and certain other areas to be used in common by Parcels 2, 3 and 4.

Section 1.21 "Parcel 2" Shall mean and refer to airspace Parcel 2 as delineated on the Map, including all the improvements located therein. Parcel 2 shall be used for parking purposes only as set forth herein.

Section 1.22 "Parcel 3" Shall mean and refer to airspace Parcel 3 as delineated on the Map, including all the improvements

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

located therein.  Parcel 3 shall be used for commercial/retail purposes only.

Section 1.23  "Parcel 4"  Shall mean and refer to airspace Parcel 4 as delineated on the Map, including the improvements located therein together with any real property annexed to Parcel 4 in accordance with the Residential Declaration.  Parcel 4 shall be used for residential purposes only.

Section 1.24  "Person"  Means a natural person, a corporation, a partnership, a trustee or other legal entity.

Section 1.25  "Property"  Shall mean and refer to the entire real property described herein, including all structures and improvements erected thereon.

Section 1.26  "Number and Gender"  The singular and plural number and masculine, feminine and neuter gender shall each include the other where the context requires.

Section 1.27  "Mandatory and Permissive"  "Shall", "will", and "agree" as used herein are mandatory and "may" as used herein is permissive.

Section 1.28  "Residential Declaration"  Shall mean and refer to the Declaration of Conditions, Covenants and Restrictions of Portside, A Condominium Project, recorded on the _11th_ day of _February_, 199_4_, in Book _G-67_, Pages _584_ in the Official Records of the City and County of San Francisco.

Section 1.29  "Shared Expenses"  Means and includes the actual and estimated expenses of operating those portions of the Property for which the Master Association has a duty to maintain and any reasonable reserve for such purposes as found and determined by the

Case: 25-30699   Doc# 53-4   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 12 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Board and all sums designated shared expenses by or pursuant to this Declaration.

Section 1.30 **"Shared Expenses Assessment"** Shall mean that portion of the Shared Expenses which is to be paid by each Member as determined by the Association, pursuant to the terms of this Declaration and shall include both regular and special assessments.

Section 1.31 **"Shared Expenses Budget" or "Budget"** Shall mean the pro forma operating budget and reserve statement prepared by the Association as required by this Declaration.

## ARTICLE II

## DESCRIPTION OF PROPERTY,

## DIVISION OF PROPERTY AND CREATION OF PROPERTY RIGHTS

Section 2.1 **Description of Property**.

(a) **The Property**. The Property as described on the Map consists of the underlying real property with four (4) separately delineated airspace parcels, and all improvements located thereon. There is being built upon the Property structures occupying the airspace parcels, said structures containing the uses defined below. Reference is made to the Map to supply further details concerning the Property.

(b) **Existing Encumbrances**. The Property is subject to the following existing encumbrances:

i. Agreement executed by and through The State of California, acting by and through the Department of Public Works, and The Atchison, Topeka and Santa Fe Railway Company, a Kansas company, dated June 21st, 1934, and recorded September 4th, 1934,

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

in Book 2688 of Official Records, Page 306; as amended by Supplemental Agreement, dated March 23, 1937, recorded June 29, 1937, in Book 3144, Page 323, Official Records; further amended by unrecorded Supplemental Agreement, dated June 10, 1939, as disclosed by Deed, from the Atchison, Topeka and Santa Fe Railway Company, to Bryant-Harrison Associates, recorded August 19, 1985, in Book D902, Page 768, Official Records; and further amended by Third Amendment to Agreement, dated April 7, 1992, recorded October 29, 1992, in Book F744 at Page 407, Official Records.

ii.   License Agreement executed by and between Bryant-Harrison Associates, a California limited partnership, and Two Bryant Associates, a California general partnership, dated December 24th, 1985, recorded December 31st, 1985, in Book D994 of Official Records, Page 1083; as amended by Amendment No. 1, dated January 27, 1987, recorded January 30, 1987, in Book E269, Page 1125, Official Records.

iii. Grant of Easement to Two Bryant Associates, a California general partnership, dated January 28th, 1987, recorded February 3rd, 1987, in Book E271 of Official Records, Page 1086.

iv.   Grant of Easement and License Agreement executed by and between 470 Spear Associates, a California limited partnership, and Hum Baby Associates, a California limited partnership, dated December 9th, 1988, recorded December 15th, 1988 in Book E765 of Official Records, Page 440; as amended by First Amendment to Grant of Easement and License Agreement, dated October 29, 1992, recorded October 29, 1992 in Book F744 at Page 406, Official Records.

v. San Francisco City Planning Commission Motion No. 11818 executed by San Francisco City Planning Commission, dated December 7, 1989, recorded February 22nd, 1990, in Book F67 of Official Records, Page 1133.

vi. Notice of Special Restrictions Under the City Planning Code executed by Hum Baby Associates, dated December 20, 1991, recorded January 29th, 1992, in Book F552 of Official Records, Page 597.

vii. Declaration of Covenants, Conditions, Restrictions and Reciprocal Easements executed by Hum Baby Associates, a California limited partnership, dated October 29th, 1992, and recorded October 29th, 1992, in Book F744 of Official Records, Page 404.

viii. Agreement for Declaration of Encroachment Easement executed by Hum Baby Associates, a California limited partnership, dated October 29th, 1992, recorded October 29th, 1992 in Book F744 of Official Records, Page 405.

Section 2.2 Division of Property. The Property is hereby divided into the following separate freehold estates:

(a) Parcel 1. Parcel 1 shall consist of the air and earth parcels delineating the upper and lower elevations of the Property and certain other areas to be used in common by Parcels 2, 3 and 4. Prior to conveyance of a Parcel or any Unit in a Parcel to an Owner, Parcel 1 shall be conveyed by the Declarant to the Association. Parcel 1 shall have appurtenant easements for ingress and egress and support over the other Parcels.

(b) Parcel 2. Parcel 2 shall consist of one hundred seventy-five (175) commercial parking spaces to be used for parking

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

purposes only (all of which spaces may be subject to a valet parking arrangement at the discretion of the Owner of Parcel 2), of which sixty-two (62) parking spaces have been licensed to the Portside Homeowners' Association, pursuant to that certain irrevocable License Agreement between the Owner of Parcel 2 and said Association, which shall be recorded in the Official Records of the City and County of San Francisco, State of California. The use of said sixty-two (62) parking spaces shall be in accordance with the terms and conditions of said Agreement, which provides that such spaces shall be subject to a valet parking arrangement every day from 7:00 a.m. to 7:00 p.m. Should Parcel 2 be subdivided into condominiums, then upon conveyance of a unit to an Owner, Parcel 2 shall be a separate condominium regime. Parcel 2, whether subdivided or not, shall have appurtenant easements for ingress and egress and support over the other Parcels.

(c) <u>Parcel 3</u>. Parcel 3 shall consist of commercial/retail space to be used for commercial/retail purposes only. The Owner of Parcel 3 shall be permitted to install a mezzanine level within Parcel 3, without obtaining approval of any Architectural Control Committee or the Owners of Parcels 2 or 3. Should Parcel 3 be subdivided into condominiums, then upon conveyance of a Unit to an Owner, Parcel 3 shall be a separate condominium regime. Parcel 3, whether subdivided or not, shall have appurtenant easements for ingress and egress and support over the other Parcels.

(d) <u>Parcel 4</u>. Parcel 4 shall consist of sixty-two (62) residential units and any additional units annexed to Parcel 4 in accordance with the Residential Declaration. Upon conveyance of

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

a unit to an Owner, Parcel 4 shall be a condominium regime with appurtenant easements for ingress and egress and support over the other Parcels.

(e) <u>No Separate Conveyance of Easements</u>. Declarant, the successors, assigns and grantees of Declarant covenant and agree that the easements over and across Parcels 1, 2, 3 and 4, and the fee title to the respective Parcels (or portions thereof) conveyed therewith, shall not be separated or separately conveyed, and each such interest shall be deemed to be conveyed or encumbered with its respective Parcel (or portion thereof), even though the description in the instrument of conveyance or encumbrance may refer only to the fee title to the Parcel or a portion thereof.

<u>Section 2.3</u>  <u>Partition Prohibited.</u>  The Parcels shall remain undivided as set forth herein, except for permitted subdivisions as set forth in Section 2.4, and no Owner shall bring any action for partition of the Property or any part thereof, it being agreed that this restriction is necessary in order to preserve the rights of the Owners with respect to the operation and management of the Property.  Judicial partition by sale of a single Parcel owned by two or more persons and division of the sale proceeds is not prohibited hereby.

<u>Section 2.4</u>  <u>Subdivision Permitted</u>.

(a) The Parcels may be subdivided; provided, however, under no circumstances shall said subdivision violate this Declaration.  The subdivision of any Parcel shall require the approval of a Final Map by the City and County of San Francisco, but shall not require the approval of the Owners of all or part of the other Parcels, or of the Master Association.  Upon any such

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

subdivision, the rights, duties and obligations of a Parcel Owner enumerated in this Declaration shall be transferred to the Owners of the subdivided interests. By way of example and not meant to be inclusive, this includes the obligation to pay assessments, the right to membership in the Association, and the right to cast a vote as a Member of the Association.

(b) In accordance with the approval of the City and County of San Francisco, Declarant intends to subdivide Parcel 4, together with that certain real property more particularly described as:

> Lot 20 as shown on that certain Map entitled "Parcel Map of a Portion of Vara Block No. 328, also being a Portion of Assessor's Block No. 3768, Lot 17, San Francisco, California", recorded January 29, 1992, in Book 41 of Parcel Maps, at Pages 7 and 8, Official Records of the County of San Francisco,

into a maximum of 260 residential condominium units, and to annex the residential condominium units constructed on said Lot 20 into Parcel 4 in accordance with the Residential Declaration. Notwithstanding the foregoing, Declarant hereby reserves the right, subject to obtaining all necessary approvals from the City and County of San Francisco and the California Department of Real Estate, to develop Lot 20 in a different manner. In such event, Declarant, in its sole discretion, shall have the right to annex Lot 20 (or any lots into which Lot 20 may have been subdivided in accordance with said approvals) to the Property or to any of the Parcels. Any such annexation shall occur prior to the third anniversary of the original issuance of the public report for the

Case: 25-30699   Doc# 53-4   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 18 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

immediately preceding phase of the Project. In addition, Declarant may elect to create separate condominium regime or regimes in connection with such subdivision, which regime or regimes may be annexed as part of the Master Association, or any condominium association established with respect to any of the Parcels.

## ARTICLE III
## ASSOCIATION-ADMINISTRATION, MEMBERSHIP AND VOTING RIGHTS

**Section 3.1    Association to Manage and Maintain Property Improvements.** The management of the Property and the improvements thereon shall be vested in the Association to the extent provided for in the Bylaws. Except as set forth herein or in the Bylaws, each Parcel shall be separately maintained by the Owners thereof. Improvements shall include, but are not limited to, the Building roofs, the Building fascia, Building supports, trellis located at the roof level of Parcel 2, walls and columns, slab floors which divide the Parcels, earthquake expansion joints, inter-parcel stairwells, internal fire exiting corridors, life safety systems, sidewalks and landscaping located on perimeter sidewalks surrounding the Property, below ground walls, those portions of reservoirs, tanks, pumps, motors, ducts, flues, chutes, conduits, pipes, plumbing, wires, and other utility or Building systems installations lying within any Parcel or contained within and immediately surrounded by or attached to any structure or space which is part of the Building, and any other Building element which is not located solely within one Parcel or which the Board determines to be an improvement subject to this Declaration, except

that (a) any utility equipment which is part of a complete system servicing only one Parcel, or a part thereof, and (b) any equipment used solely in connection with the operation of Parcel 2, including, without limitation, the ventilation system and security gates, shall not be included. The Owners of the Parcels covenant and agree that the administration of the Property shall be in accordance with the provisions of this Declaration, the Articles of Incorporation, and the Bylaws of the Association.

Section 3.2 Membership. There shall be three (3) Memberships in the Master Association: one (1) consisting of the Owners of Parcel 2 (the Parking Membership); one (1) consisting of the Owners of Parcel 3 (the Commercial/Retail Membership); and one (1) consisting of the Owners of Parcel 4 (the Residential Membership). The three Memberships together include all of the Owners of Parcels 2, 3 and 4. The affairs of the Master Association shall be managed by five (5) directors, three (3) representing Parcel 4; one (1) representing Parcel 3; and one (1) representing Parcel 2. Membership shall be held in accordance with the Articles of Incorporation and the Bylaws of the Association.

Section 3.3 Voting Rights. The Master Association shall have one class of voting. Each Member of the Residential Membership, each Member of the Commercial/Retail Membership and each Member of the Parking Membership shall be entitled to one vote for each condominium unit owned within the respective Parcels, except that until such time as Parcel 2 and Parcel 3 are subdivided into condominium units as permitted by this Declaration, the Owners of each unsubdivided Parcel shall be the Members. If a condominium unit into which a Parcel is subdivided is owned by more than one

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

person, each person shall be a Member of the Membership, ==but there shall be no more than one vote for each such unit.==

==Any action by the Association== (except as otherwise provided in the Association Documents), which must have the approval of the Memberships before being undertaken ==shall require the majority vote== or written assent of the total voting power of the Residential Membership, and the majority vote of the total voting power of the Master Association. Any provision in this Declaration which requires that the vote of Declarant shall be excluded during any such vote shall require the majority vote or written assent of the total voting power in the Residential Membership, the majority vote or written assent of the total voting power of the Residential Membership excluding Declarant, and the majority vote or written assent of the total voting power of the Master Association.

## ARTICLE IV

## MAINTENANCE AND ASSESSMENT

**Section 4.1** **Creation of the Lien and Personal Obligation of Assessment**. The Declarant hereby covenants, and each Owner of any Parcel or portion thereof, by acceptance of a deed thereto, whether or not it shall be so expressed in such deed, is deemed to covenant and agrees to pay to the Association regular shared expenses assessments and special assessments, such assessments to be established, made and collected as provided in this Declaration.

Each assessment or installment thereof, together with any late charge, interest, collection costs and reasonable attorneys' fees, shall be a charge on each Parcel at the time such assessment, or

installment, became due and payable. The annual and special assessments provided for in this Article IV, together with interest, late charges, collection costs and reasonable attorneys' fees, shall be a debt of the Owners of the Parcel against which the assessment is made, as provided in Section 4.12 hereof. No Owner may exempt himself from payment of his portion of assessments, or installments, by waiver of the use or enjoyment of all or any portion of the Property or by waiver of the use or enjoyment, or by abandonment of, his Parcel. Notwithstanding anything to the contrary contained in this Declaration, if an Owner of a condominium unit established in any Parcel has fully paid that Owner's portion of the Shared Expenses Assessment, the Master Association covenants that it shall not in any manner disturb or impair the quiet enjoyment of the non-defaulting condominium Owner's separate ownership interest.

Voting rights attributable to a Unit shall not vest until assessments against that Unit have been levied by the Association.

Section 4.2 **Purpose of Assessment**. The assessments levied by the Association shall be used exclusively to promote the recreation, health, safety and welfare of Owners of interests in the Property, the improvement, replacement, repair, operation and maintenance of the Property and the performance of the duties of the Association as set forth in this Declaration.

Section 4.3 **Regular Annual Shared Assessment and Reserve Fund**.

(a) The Board shall establish and levy annual assessments in an amount the Board estimates will be sufficient to raise the funds needed to perform the duties of the Association

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

during each fiscal year, subject to the limitations contained in Section 4.5 hereof. Such annual assessments shall include an adequate reserve fund for maintenance, repairs and replacement of those components of the Project and facilities which the Association is obligated to maintain and that must be replaced on a periodic basis, and shall be payable in regular installments rather than by special assessments. However, annual increases in the regular Shared Expenses Assessment of twenty percent (20%) or less for any fiscal year shall not be imposed unless the Board has complied with Section 9.1(a) of the Bylaws with respect to that fiscal year, or has obtained, in accordance with Section 4.6 hereof, the approval of eighty percent (80%) of the Board of Directors, and the vote or written assent of fifty-one percent (51%) of each Membership at a Membership meeting in which quorum was present. Annual increases of more than twenty percent (20%) shall be made subject to Section 4.5 hereof.

(b) Unless the Association is exempt from Federal or State taxes, all reserves shall be accounted for as contributions to the capital of the Association and as trust funds segregated from the regular income of the Association or in any other manner authorized by law or regulation of the Internal Revenue Service and the California Franchise Tax Board that will prevent such funds from being taxed as income to the Association.

(c) Failure of the Board to set assessments shall not be deemed a waiver of assessments but, rather, the prior fiscal year's assessment shall remain in full force and effect.

(d) The Board shall not expend funds designated as reserve funds for any purpose other than the repair, restoration,

replacement, or maintenance of, or litigation involving the repair, restoration, replacement, or maintenance of, components of the Property and facilities which the Association is obligated to repair, restore, replace, or maintain, and for which such reserve fund was established. However, the Board may authorize the temporary transfer of money from a reserve fund to the Association's general operating fund to meet short-term cash-flow requirements or other expenses. The transferred funds shall be restored to the reserve fund within three years of the date of the initial transfer, except that the Board may, upon making a finding supported by documentation that a delay would be in the best interests of the Project, delay the restoration until the time which the Board reasonably determines to be necessary. The Board shall exercise prudent fiscal management in delaying restoration of these funds and in restoring the expended funds to the reserve account, and shall, if necessary, levy a special assessment to recover the full amount of the expended funds within the time limits required by this Section. Such special assessment is not subject to the limitation imposed by Section 4.5 of this Declaration.

Section 4.4 **Special Assessments**. If the Board determines that the estimated total amount of funds necessary to defray the Shared Expenses of the Association for a given fiscal year is, or will become, inadequate to meet expenses for any reason (including, but not limited to, unanticipated delinquencies, costs of construction, unexpected repairs or replacements of capital improvements to the Property) the Board shall determine the approximate amount necessary to defray such expenses, and if the

==amount is approved by a sixty-six and two-thirds percent (66 2/3%) vote of the Board, it shall become a special assessment.== Every special assessment shall be levied upon the same basis as that prescribed for the levying of regular assessments.

The Board may, in its discretion, prorate such special assessment over the remaining months of the fiscal year or levy the assessment immediately against each Parcel. Unless exempt from Federal or State income taxation, all proceeds from any special assessment shall be segregated and deposited into a special account and shall be used solely for the purpose or purposes for which it was levied or it otherwise shall be handled and used in a manner authorized by law or regulations of the Internal Revenue Service and the California Franchise Tax Board in order to avoid, if possible, its taxation as income to the Association.

Any special assessment against the Owners to raise funds for the rebuilding or major repair of Parcel 1 shall be levied on the basis of the ratio of the square footage of the floor area of each Parcel to be assessed to the total square footage of floor area of all Parcels to be assessed.

Section 4.5 ==Limitation on Board's Authority to Increase and Decrease Shared Assessments.==

(a) ==The Association may not, without an eighty percent (80%) approval of the Board of Directors, and the vote or written assent of fifty-one percent (51%) of each Membership at a Membership meeting in which a quorum was present:==

i. ==Increase the regular Shared Expenses Assessment more than twenty percent (20%) over the regular Shared Expenses== Assessment for the Association's preceding fiscal year; or

ii. Impose special assessments which in the aggregate exceed five percent (5%) of the budgeted Shared Expenses for the current fiscal year.

iii. Decrease the regular annual Shared Expenses Assessment by more than ten percent (10%) in any one (1) year.

A special assessment imposed pursuant to Section 4.3(d) is not subject to the five percent (5%) limitation imposed pursuant to this subsection.

(b) The Board alone may increase assessments necessary for emergency situations. For purposes of this section, an emergency situation is any of the following:

i. An extraordinary expense required by court order.

ii. An extraordinary expense necessary to repair or maintain the Property, or any part of it for which the Association is responsible, where a threat to safety of persons is discovered.

iii. Repairs to or maintenance of the Property that could not have been reasonably foreseen in preparing the budget. Prior to imposition of the assessment, the Board shall make written findings, distributed to the Members, as to the necessity of the expense and why it could not have been foreseen.

(c) The Association may not charge or collect fees or assessments in connection with a transfer of a Parcel or a portion thereof more than the actual cost to change its records.

Section 4.6 Notice and Quorum for Any Action Authorized Under Sections 4.3(a) and 4.5. Any action authorized under Sections 4.3(a) and 4.5, which requires a vote of the Membership, shall be

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

taken at a meeting of the Association called for that purpose at which a quorum equal to fifty-one percent (51%) of each Membership is present. Written notice of said meeting shall be sent to all Owners not less than ten (10) nor more than ninety (90) days in advance of the meeting, specifying the place, day and hour of the meeting and, in the case of a special meeting, the nature of the business to be undertaken. The action may also be taken without a meeting, pursuant to the provisions of California Corporations Code Section 7513.

Section 4.7  Levying of Assessments. All regular and special assessments shall be assessed to the Owners according to the following respective proportionate shares:

<div style="margin-left: 3em;">

Parcel 2:     31.48%

Parcel 3:      4.37%

Parcel 4:     64.15%

</div>

The foregoing proportionate shares may be revised in the event of any annexation pursuant to Section 2.4(a). As provided in Section 5.1(a) of the Residential Declaration, the Portside Homeowners' Association shall be responsible for contracting for security services for the entire Property, and the Owners shall pay the following proportionate shares of such services, which shares are based on the relative degree of use by the Owners:

<div style="margin-left: 3em;">

Parcel 2     20%

Parcel 3     12%

Parcel 4     68%.

</div>

The foregoing proportionate shares may be revised based on actual usage of security services by the three Parcels. Promptly after receipt of a statement for such security services from the provider

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

thereof, the Portside Homeowners' Association shall submit to the Owners of Parcel 2 and Parcel 3 bills for their respective proportionate shares of such statement, and the Owners of Parcel 2 and Parcel 3 shall remit payment-in-full to the Portside Homeowners' Association within thirty (30) days after receipt of said bills.

Section 4.8 **Assessment Period.** The regular assessment period shall commence on January 1 of each year and shall terminate on December 31 of each year, unless a different fiscal year is adopted by the Board, and the regular Shared Expenses Assessment shall be payable in equal monthly installments, unless the Board adopts some other basis for collection. However, the initial regular assessment period shall commence on the first day of the calendar month following the date on which the sale of the first condominium unit in the Phase I of Parcel 4 to a purchaser is closed and shall terminate on December 31 of the year in which the initial sale is closed. In the event subsequent phases are annexed to the Project as provided in Section 2.4(b), the assessments against all parcels or condominium units in each phase shall commence on the first day of the month following the closing of the first sale in such phase. The first regular assessment and all special assessments shall be adjusted according to the number of months remaining in the fiscal year and shall be payable in equal monthly installments, unless the Board adopts some other basis for collection. The Association shall not change the prorata interest or obligation of any Parcel for purposes of levying assessments, unless all Owners and all mortgagees of such Owners have given their prior written consent.

Case: 25-30699   Doc# 53-4   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 28 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

**Section 4.9** **Notice and Assessment Installment Due Dates;**
**Delinquent Assessment.** A single ten (10) day prior written notice
of each annual regular Shared Expenses Assessment and each Special
Assessment, specifying the due dates for the payment of
installments, shall be given to each Owner of every Parcel or
portion thereof subject to assessment; provided, however, in the
event of an increase in any regular or special assessment, such
notice shall be given not less than thirty (30) nor more than sixty
(60) days prior to the increased assessment becoming due. The due
dates for the payment of installments normally shall be the first
day of each month, unless some other due date is established by the
Board. Each installment of regular Shared Expenses Assessments and
special assessments shall become delinquent if not paid within
fifteen (15) days after its due date.

If an assessment is delinquent, upon formal adoption of the
following delinquent assessment policy by the Board of Directors
of the Association, the Association may recover the following:

(a) Reasonable costs incurred in collecting the
delinquent assessment, including reasonable attorneys' fees;

(b) A late charge of ten percent (10%) of the delinquent
assessment, or ten dollars ($10.00), whichever is greater;

(c) Interest on all sums imposed in accordance with this
Section, including the delinquent assessment, reasonable costs of
collection, and late charges, at an annual percentage rate of ten
percent (10%) interest, commencing thirty (30) days after the
assessment becomes due.

**Section 4.10** **Estoppel Certificate.** The Board, or its
managing agent, on not less than twenty (20) days prior written

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

request, shall execute, acknowledge and deliver to the party making such request a statement in writing stating whether or not, to the knowledge of the Association, a particular Parcel is in default under the provisions of this Declaration and further stating the dates to which installments of assessments, regular or special, have been paid as to such Parcel. Any certificate delivered pursuant to this Section may be relied on by any prospective purchaser or mortgagee of any Parcel or portion thereof, but reliance on such certificate may not extend to any default not involving the payment of assessments of which the signer had not actual knowledge.

Section 4.11 Right to Enforce. The right to collect and enforce assessments is vested in the Board acting by and on behalf of the Association. The Board, or its authorized representative, can enforce the obligations of the Owners to pay Shared Expenses Assessments provided for in this Declaration by commencement and maintenance of a suit at law or in equity, or the Board may foreclose by judicial proceedings or through the exercise of the power of sale pursuant to Section 4.13 to enforce the lien rights created. Suit to recover a money judgment for unpaid assessments, together with all amounts described in Section 4.1, shall be maintainable without foreclosing or waiving the lien rights.

Section 4.12 Creation of Lien. If there is a delinquency in the payment of any Shared Expenses Assessment or installment thereof on a Parcel, as described in Section 4.9, any amounts that are delinquent together with any late charges, interest and all costs that are incurred by the Board or its authorized representative in the collection of the amounts, including

Case: 25-30699   Doc# 53-4   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 30 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

reasonable attorneys' fees, shall be a lien against such Parcel upon the recordation in the Office of the Recorder of the City and County of San Francisco of a notice of delinquent assessment as provided in California Civil Code Section 1367. The assessment lien created by this Section shall be prior to all other liens recorded subsequent to the notice of delinquent assessment, except for taxes, bonds, assessments and other levies which by law would be superior thereto, and the lien of any first mortgage made in good faith and for value. The notice of delinquent assessment shall state the amount of the assessment, collection costs, attorneys' fees, late charges, and interest, a description of the Parcel against which the assessment and other sums are levied, the name of the record owners, and the name and address of the trustee authorized by the Association to enforce the lien by sale. The notice shall be signed by the President of the Association or such other person designated by the Association for that purpose.

The transfer of a Parcel as the result of a power of sale or a judicial foreclosure involving a default under a first mortgage shall extinguish the lien of assessments affecting that Parcel which were due and payable prior to the transfer of the Parcel. No such transfer shall relieve the new owner, whether the former beneficiary of the first mortgage or another person, from liability for any assessments thereafter becoming due or from the lien thereof.

Fines and penalties levied by the Association to reimburse the Association for costs incurred in the repair of damage to the Property for which an Owner was allegedly responsible, or in bringing the Owner and his Parcel or portion thereof into

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

compliance with the Association Documents, are not assessments which may become a lien against an Owner's subdivision interest enforceable by a sale of the interest in accordance with the provisions of Sections 2924, 2924(b) and 2924(c) of the California Civil Code.

The above statement does not apply to charges imposed against an Owner consisting of reasonable late payment penalties for delinquent assessments and/or charges to reimburse the Association for the loss of interest and for costs reasonably incurred (including attorneys' fees) in its efforts to collect delinquent assessments.

Section 4.13 <u>Enforcement of Assessment Lien</u>. The lien created pursuant to Section 4.12 above may be enforced in any manner permitted by law, including sale by the court, sale by the trustee designated in the notice of delinquent assessment, or sale by a trustee substituted pursuant to California Civil Code Section 2934(a). Any sale by a trustee shall be conducted in accordance with the provisions of California Civil Code Sections 2924, 2924(b), 2924(c), 2924(f), 2924(g) and 2924(h) applicable to the exercise of powers of sale in mortgages and deeds of trust.

Section 4.14 <u>Waiver of Exemptions</u>. Each Owner, to the extent permitted by law, waives, to the extent of any liens created pursuant to this Article IV, the benefit of any homestead or exemption laws of the State of California in effect at the time any assessment or installment becomes delinquent or any lien is imposed.

## ARTICLE V

## DUTIES AND POWERS OF THE ASSOCIATION

**Section 5.1  Duties**. In addition to the duties enumerated in its Bylaws, or elsewhere provided in this Declaration, and without limiting the generality thereof, the Association shall perform the following duties:

(a) **Maintenance**.  The Association shall maintain, repair, replace, restore, operate and manage all of the structural improvements located on the Property, the Building roof and exterior, the Building life safety systems, garage fans, doors and gates, and all other personal and real property that may be acquired by the Association, including, without limitation the improvements specified in Section 3.1. Maintenance shall include, without limitation, painting, maintaining, repairing and replacing all structural improvements as well as landscaping the exterior ground-level portions of the Property but shall not include maintenance or replacement of glass surfaces.  The responsibility of the Association for maintenance, repair and replacement shall not extend to repairs or replacements arising out of or caused by the willful or negligent act or neglect of an Owner or his guests, tenants or invitees, the cost of which is not covered by insurance. Repairs or replacements resulting from such excluded items shall be the responsibility of the Associations governing the individual Parcels and/or of each Owner; provided, however, that if an Association or an Owner shall fail to make the repairs or replacements which are his responsibility as provided herein, then, upon a vote of sixty-six and two thirds percent (66 2/3%) of the

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Board of Directors, and after not less than thirty (30) days notice to the Owner, and hearing (except in emergency situations), the Association shall have the right (but not the obligation) to make such repairs or replacements, and the cost thereof shall be added to the assessments chargeable to such Parcel and shall be payable to the Association by the Parcel's Association or Owner.

(b) <u>Insurance</u>. The Association shall maintain the following policies of insurance:

i. A policy or policies of fire, boiler and casualty insurance, with extended coverage endorsement and coverage against loss or damage by fire, vandalism, malicious mischief, sprinkler leakage, lighting, windstorm, water and any peril standardly included, from time to time, under an all risk policy for the full insurable value of the Parcels, payable as provided in Section 8.8 hereof, or such other fire and casualty insurance as the Board shall determine gives substantially equal or greater protection to the Owners and their mortgagees of record, as their respective interests appear. Each policy shall provide that it shall not be canceled without at least thirty (30) days prior written notice to the Association and to each of the Owners and their mortgagees of record. The Board shall review the limits of such insurance at least every year and shall adjust same, if necessary, to provide the coverage and protection required by this Declaration. Such policy or policies shall provide for a separate loss payable endorsement in favor of the mortgagee or mortgagees of each Parcel, if any.

ii. A policy or policies of general comprehensive public liability insurance, including both bodily injury and

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

property damage in the amount of at least One Million Dollars ($1,000,000.00) insuring the Association, Declarant, the Board, Owners and any appointed manager, against liability to the public or to any Owner incident to the ownership, management and/or use of the Property and to protect against liability to the public or to any Owner incident to the use of, or resulting from accident or intentional act occurring in or about, any Parcel. The Board shall review the limits of coverage for such insurance at least every year and shall increase or adjust the same if necessary, to provide the coverage and protection required by this Declaration.

iii. Worker's Compensation Insurance to the extent necessary to comply with all applicable laws of the State of California or the regulations of any governmental body or authority having jurisdiction over the Property.

iv. Fidelity insurance in commercial blanket form, naming such persons as may be designated by the Board as principals, and the Owners as obligees, in an amount to be determined by the Board in its absolute discretion.

v. Flood insurance if the Project is located in an area designated by an appropriate governmental agency as a special flood hazard area.

Nothing in this subsection (b) shall restrict or prohibit the Board from maintaining such additional policies of insurance as it, in its absolute discretion, shall deem reasonable and necessary. Any insurance acquired by the Board may be taken in the name of the Board, as trustee, for the use and benefit of the Board and all Owners. No Owner may insure all or any portion of the Owner's separate interest in a Parcel or a portion thereof against loss

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

covered by insurance maintained by the Association. Any Owner who violates this restriction shall be liable to the named insureds for any diminution in insurance proceeds otherwise payable. Any Owner, however, may insure his or her personal property or any permitted improvements to the Owner's separate interest against loss. Any insurance separately carried by an Owner must contain a waiver of subrogation by the insurer as to claims against the Declarant, the Association, the Board, any Association established to maintain and manage condominiums within a Parcel, the directors, officers and employees thereof and the Owners of such condominiums.

The amount, term, and coverage of any policy required hereunder (including the type of endorsements, the amount of the deductible, the named insureds, the loss payees, standard mortgage clauses, and notices of changes or cancellations) shall satisfy the minimum requirements imposed for this type of project by the Federal National Mortgage Association ("FNMA") and the Federal Home Loan Mortgage Corporation ("FHLMC") or any successor thereto. If the FNMA or FHLMC requirements conflict, the more stringent requirement shall be met. If FNMA and FHLMC do not impose requirements on any policy required hereunder, the term, amount, and coverage of such policy shall be no less than that which is customarily carried by prudent owners of similar property in the County in which the Project is located.

Each Owner appoints the Association or any insurance trustee (as defined in Section 9.9 below) designated by the Association to act on behalf of the Owners in connection with all insurance matters arising from any insurance policy maintained by the

Association, including, without limitation, representing the Owners in any proceeding, negotiation, settlement, or agreement.

Any insurance maintained by the Association shall contain "waiver of subrogation" as to the Association and its officers, directors, and Members; the Owners and occupants of the Condominiums (including Declarant); and mortgagees; and, if obtainable, cross liability endorsements or severability of interest endorsements insuring each insured against the liability of each other insured.

(c) <u>Discharge of Liens</u>. The Association shall discharge by payment, if necessary, any lien against a Parcel and assess the cost thereof to the Member or Members responsible for the existence of such lien. Such Member or Members shall be given notice and the opportunity to be heard by the Board prior to discharge of the lien.

(d) <u>Assessments</u>. The Association shall fix, levy, collect and enforce assessments as provided in Article IV hereof.

(e) <u>Payment of Expenses</u>. The Association shall pay all Shared Expenses and obligations incurred by the Association in the conduct of its business including, without limitation, all licenses, taxes or governmental charges levied or imposed against the Property of the Association.

(f) <u>Enforcement</u>. The Association shall enforce this Declaration.

<u>Section 5.2</u> <u>Powers</u>. In addition to the powers enumerated in its Bylaws, or elsewhere provided herein, and without limiting the generality thereof, the Association shall have the following powers:

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

(a) <u>Utility Service</u>.  The Association shall have the authority to obtain, for the benefit of all Parcels, all water, gas and electric service; refuse collection; janitorial or window cleaning service; fireplace or chimney cleaning service.

(b) <u>Manager</u>.  The Association shall have the authority to employ a manager or managing agent and to contract with independent contractors to perform all or any part of the day to day management duties and responsibilities of the Association, each of whom shall be subject to the direction and control of the Board, provided that any contract with a firm or person appointed as manager or managing agent shall not exceed a one (1) year term and shall provide for the right to terminate by either party without cause and without payment of a termination fee on thirty (30) days written notice, and further provided that said managing agent shall comply with the provisions of Civil Code Section 1363.1(a), prior to entering into a management contract with the Association.  Any delegation of authority to a manager or managing agent shall be subject to Section 5.2(j) hereof.

(c) <u>Adoption of Rules</u>.  The Association may adopt reasonable rules not inconsistent with this Declaration relating to the use of the Parcels and the conduct and use of Owners and their tenants and guests with respect to the Property and other Owners.

(d) <u>Access</u>.  For the purpose of performing the maintenance authorized herein, the Association's agents or employees shall have the right, after reasonable notice to the Owner thereof, to enter any portion of a Parcel at reasonable hours.  Except in the case of any emergency, twenty-four (24) hours

-52-

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

advance notice shall be given to the Owner or occupant prior to any entry.

(e) <u>Assessments, Liens and Fines</u>. The Association shall have the power to levy and collect Shared Expenses Assessments in accordance with the provisions of Article IV hereof. The Association may impose fines or take disciplinary action against any Owner for failure to pay Shared Expenses Assessments or for violation of any provision of the Association Documents. Penalties may include but are not limited to: fines, temporary suspension of voting rights or other appropriate discipline, provided that the accused Member is given at least fifteen (15) days notice and the opportunity to be heard orally or in writing before the Board of the Association with respect to the alleged violations at least five (5) days before a decision to impose discipline is made. In no event shall the Association have the right to cause a forfeiture or abridgement of an Owner's right to the full use and enjoyment of its Parcel on account of the failure by the Owner to comply with provisions of the Association Documents except by judgment of a court or a decision arising out of arbitration or on account of a foreclosure or sale under a power of sale for failure of the Owner to pay assessments duly levied by the Association. All notices required under this Section shall be made pursuant to Section 8.15 of this Declaration.

(f) <u>Enforcement</u>. The Association shall have the authority to enforce this Declaration as provided in Section 8.1 hereof.

(g) <u>Acquisition of Property</u>. The Association shall have the power to acquire (by gift, purchase or otherwise), own, hold,

improve, build upon, operate, maintain, convey, sell, lease, transfer, dedicate for public use, or otherwise dispose of, real or personal property in connection with the affairs of the Association.

(h) Loans. The Association shall have the power to borrow money, and only with the consent (by vote or written consent) of eighty percent (80%) of the Board.

(i) Contract. The Association shall have the power to contract for goods and/or services for the facilities and interests or for the Association, subject to any limitations set forth in the this Declaration.

(j) Delegation. The Association shall have the power to delegate its authority and powers to committees, officers or employees of the Association. The Association may not, however, delegate the following powers:

    i. To levy fines, hold hearings, or impose discipline;

    ii. To make capital expenditures;

    iii. To file suit, to cause a claim of lien to be recorded, or to foreclose for failure to pay assessments; or

    iv. To levy regular or special Shared Expenses Assessments.

(k) Temporary Removal of Occupants. The Association may cause the temporary removal of any occupant of the Property for such periods and at such times as necessary for prompt, effective treatment of the wood-destroying pests or organisms. The cost of the temporary relocation is to be borne by the Owners of the Parcel or portion thereof affected. Not less than fifteen

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

(15) days nor more than thirty (30) days notice of the need to temporarily vacate shall be given to occupants and to the Owners of the Parcel or portion thereof affected. The notice shall state:

       i. The reason for the temporary relocation;

       ii. The date and time of the beginning of the treatment;

       iii. The anticipated date and time of termination of treatment; and

       iv. That the occupants will be responsible for their own accommodations during the temporary relocation.

Notice is deemed complete if a copy is personally delivered or mailed first class to the occupants and a copy is sent to the non-occupying Owners via first class mail.

(1) **Appointment of Trustee**. The Association, or the Board on behalf of the Association, shall have the power to appoint a trustee to enforce assessment liens as provided in Section 4.13 hereof, and as provided in California Civil Code Section 1367(b).

(m) **Other Powers**. In addition to the powers enumerated in this Declaration and in the Bylaws, the Association may exercise the powers granted to a nonprofit mutual benefit corporation, as such exist from time to time, under the California Corporations Code.

## ARTICLE VI

## EASEMENTS AND UTILITIES

**Section 6.1** **Easements for Support and Access**. Reciprocal easements among the Owners of the Parcels, or any portion thereof,

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

over and under the Property and all areas thereof for support, repair, access and ingress and egress and for the installation, repair, and maintenance of electric, telephone, fire protection, water, life safety systems, security systems, gas, sanitary and storm sewer lines and facilities, exhaust, heating and air-conditioning facilities, plumbing vent pipes, cable or master television antenna lines (collectively referred to as "utility facilities"), drainage facilities, garbage chutes, stairs, elevator shafts and walkways, and as may be hereafter required or needed to service the Property, are hereby declared to exist. Declarant and its successors and assigns, including the Association, shall have the right to grant and transfer additional easements for such purposes, as necessary.

In addition, an easement, for the benefit of Parcel 3, over, under and through that portion of Parcel 4 located on Level 3 and designated "Vent Easement" on the Map and the Plan for Parcel 4, for construction, installation, repair and maintenance of a vent to exhaust air is hereby declared to exist, together with an easement for access and ingress and egress over Level 3 of Parcel 4 as necessary in connection with such construction, installation, repair and maintenance.

Section 6.2 Owners' Rights and Duties. The rights and duties of the Owners of the Parcels, or portions thereof, with respect to the utility facilities shall be as follows:

(a) Whenever the utility facilities are installed within the Property, which utility facilities or any portion thereof lie in or upon a portion of a Parcel owned by other than the Owner of the portion of the Parcel served by the utility facilities, the

Board or its authorized representative shall have the right to (or to have the utility company enter) upon the Parcels within or upon which such utility facilities, or any portion thereof, lie, in connection with construction, maintenance or emergency repair for the benefit of the Owners in common.

(b) Whenever utility facilities are installed within the Property, which utility facilities serve more than one Parcel, any Owner shall be entitled to the full use and enjoyment of the portions of such utility facilities as service his Parcel.

Section 6.3   Easements for Utilities and Maintenance. Easements over and under the Property for the installation, repair and maintenance of utility facilities and drainage facilities, walkways, and landscaping as shown on the recorded Map of the Property, and as may be hereafter required or needed to service the Property are hereby reserved by Declarant and the successors and assigns of Declarant, including the Association, together with the right to grant and transfer the same.

Section 6.4   Association's Duties.   The Association shall maintain all utility installations located on the Property, except those installations maintained by utility companies, public, private or municipal or those installations servicing one Parcel only.

Section 6.5   Structural and Support Easements.   Easements exist in favor of each Parcel through those portions of each Parcel necessary for the structural support of the Building.

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

## ARTICLE VII
## USE RESTRICTIONS

**Section 7.1  Maintenance of Separate Parcels.**  The Owners of Parcels 2 and 3, shall be responsible for the maintenance of all improvements located within Parcels 2 and 3 and those systems which exclusively serve Parcels 2 and 3, except for those maintenance duties specifically reserved to the Master Association in Section 5.1 hereof.  The Owners of Parcel 4, through the Portside Homeowners' Association pursuant to the Residential Declaration, shall be responsible for the maintenance of all improvements located entirely within Parcel 4, and those systems which exclusively serve Parcel 4, except as specified in Section 5.1 hereof.  The agents and employees of the Portside Homeowners' Association shall have the right, after reasonable notice to the Owner of Parcel 3, to enter Parcel 3 at reasonable hours for performing the maintenance authorized by this Section 7.1 and the Residential Declaration.  Except in the case of any emergency, twenty-four (24) hours advance notice shall be given to the Owner or occupant prior to any entry.

**Section 7.2  Parking Use.**  Parcel 2 shall be used for commercial or residential parking purposes only.  Any lease of all or a portion of the Parking Parcel shall be made subject to this Declaration.  No amendment of this Section shall be allowed.

**Section 7.3  Commercial/Retail Use.**  In Parcel 3, the commercial/retail space shall be occupied and used for commercial/retail purposes only, including retail sales, food service, businesses, live-work and offices, provided such uses are

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

permitted by law. The Owner or Owners of Parcel 3 shall have the right at all times of ingress and egress over and across Parcel 1 for the purpose of delivery of goods and services to the commercial/retail businesses, provided such use does not interfere with the use of Parcel 1 by the other Owners. The employees of the occupants of a portion of Parcel 3 shall have the right to use the bathroom located in a portion of Parcel 4 on Level One as shown on the Map, all as more particularly described in Section 2.2(b) of the Residential Declaration. Any lease of all or a portion of Parcel 3 shall be made subject to the Declaration. No amendment of this Section shall be allowed without the express consent of the Commercial/Retail Members.

Section 7.4 Residential Use. In Parcel 4, the residential units shall be occupied and used for residential purposes by the Owners, tenants, and social guests thereof, and no trade or business shall be conducted therein, except that an Owner or tenant of a residential unit may use a portion of the Unit for a "home office," as such is allowed under the zoning ordinances of the City and County of San Francisco existing from time to time. Declarant and the successors or assigns of Declarant, however, may use a portion of Parcel 4 for model home sites and sales office until the last residential unit is sold by Declarant, or, if Declarant elects to retain one (1) or more condominiums, three (3) years after the close of the sale of the first condominium in the final phase of the Project. Residential use shall include the leasing of individual units by Owners thereof. Any amendment of this Section shall be in accordance with Section 8.4 and shall require the vote

or written assent of fifty-one percent (51%) of the voting power of the Residential Membership.

Section 7.5  Nuisances.  No illegal or seriously offensive activity shall be transacted or conducted in any Parcel or in any part of the Property, nor shall anything be done thereon which is a serious annoyance or a nuisance to or which may in any way interfere with the quiet enjoyment of the Owners of interests in the Property, which shall violate any law or ordinance, or which shall in any way increase the rate of insurance for the Property, or cause any insurance policy to be canceled or to cause a refusal to renew the same or which will impair the structural integrity of any Building.

Section 7.6  **Commercial/Retail Signs.**  The Owner of Parcel 3 shall have the right to place signs, awnings and signs above awnings on the outside walls of the Property, or any portion thereof, which shall conform to the ordinances of the City and County of San Francisco and any regulations established solely by the Commercial/Retail Owners.

Section 7.7  Residential Signs.  No signs shall be displayed to the public view on any Residential Unit or any portion of the Property except signs as are approved by the Board, and signs in accordance with Section 7.6.  In accordance with California Civil Code Section 712, one "For Sale" or "For Rent" sign for each Condominium shall be allowed without such approval, provided that it is reasonable in size and posted at an appropriate location on the Property.  The Board may adopt rules and regulations concerning the size and location of "For Sale" or "For Rent" signs.

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Nothing contained in this Section shall prohibit Declarant from placing promotional signs anywhere on the Property, provided such signs do not prohibit the use of Parcel 1 by Owners. This right in the Declarant shall terminate within four (4) years of the issuance of the Final Public Report for the last phase of the Project.

Section 7.8 Garbage and Refuse Disposal. All rubbish, trash and garbage shall be regularly removed from the Property and shall not be allowed to accumulate thereon. Trash, garbage and other waste shall not be kept, except in sanitary containers. All equipment for the storage or disposal of such materials shall be kept in a clean and sanitary condition. All equipment, garbage cans, wood piles or storage piles shall be kept screened and sealed from view of other Parcels and the streets. No toxic or hazardous materials shall be disposed of within the Property by dumping in the garbage containers or down the drains, or otherwise.

Section 7.9 Radio and Television Antennas. No alteration to or modification of a central radio antenna or television antenna system or cable television system, if any, as developed by Declarant and as maintained by the Association, shall be permitted, and no Owner may be permitted to construct and/or use and operate his own external radio and/or television antenna without the consent of the Board.

In the event a cable television wiring system is installed in the Property by the Declarant and cable wiring provided to individual Units, neither the Declarant nor the Association shall be responsible of payment of any charges assessed by any cable

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

television franchisee for individual connection to the cable wiring system or program transmission.

Section 7.10 **Architectural Control**. The Board shall maintain an architectural control committee of three (3) members to review structural, landscaping and exterior design alterations or improvements on the Property (excluding, however, construction of a mezzanine in Parcel 3 in accordance with Section 2.2(c)). Any construction, alteration or improvement of any kind on the Property which is subject to approval by an architectural control committee, may be reviewed by the Board if the Board sends a written notice of such review to that committee within the fifteen (15) day period following the date of approval. If the construction, alteration or improvement is being proposed in Parcel 2 or Parcel 3 by the respective Owners thereof prior to subdivision, the plans and specifications shall be submitted to the Board for approval, and are deemed approved if no written notice of review is sent by the Board to the Owner within fifteen (15) days after submittal.

Plans and specifications must be approved by sixty-six and two thirds percent (66 2/3%) of the Board, and are deemed approved if the Board fails to act within thirty (30) days of the date of the notice.

The Board may require the applicant to provide insurance and/or indemnification for the benefit of the other Owners and the Association.

Notwithstanding the foregoing, the Owner of Parcel 3 shall have the right, in its sole discretion and at its sole expense, to construct and install a vent to exhaust air in that portion of Parcel 4 located on Level 3 and designated "Vent Easement" on the

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

Map and the Plan for Parcel 4 without compliance with this Section 7.10. Such construction and installation shall be accomplished with the minimum disruption possible of the use and quiet enjoyment of Level 3 of Parcel 4 by the Owners thereof.

Section 7.11 <u>Hazardous Materials</u>. An Owner shall not use or keep in a Parcel, or portion thereof, any kerosene, gasoline or inflammable or combustible fluid or materials, other than those required, in limited quantities, for the normal cleaning of a parcel or portion thereof.

### ARTICLE VIII

### GENERAL PROVISIONS

Section 8.1 <u>Enforcement</u>.

(a) <u>Right to Enforce</u>. The Association, or any Owner shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration, or decisions made by the Association pursuant to the provisions of this Declaration, and in such action shall be entitled to recover reasonable attorneys' fees as are ordered by the Court. Failure by the Association or by any Owner to enforce any covenant or restriction contained herein shall in no event be deemed a waiver of the rights to so do thereafter.

(b) <u>Alternative Dispute Resolution</u>. Pursuant to the provisions of California Civil Code Section 1354, prior to the filing by either the Association or an Owner of a civil action related to the enforcement of the Association Documents for

declaratory or injunctive relief only, or for declaratory relief or injunctive relief in conjunction with a claim for monetary damages (other than Association assessments) not in excess of five thousand dollars ($5,000), the parties shall endeavor to resolve the dispute through some form of alternative dispute resolution such as mediation or arbitration, in compliance with the procedure and time limits specified in said Section 1354. The form chosen may be binding or nonbinding at the option of the parties. The costs of the alternative dispute resolution shall be borne by the parties.

The failure by any Owner or the Association to comply with the requirements of said Section 1354 may result in the loss of the right to obtain a court judgment.

Section 8.2    Invalidity of any Provision.    Should any provision or portion of any of this document be declared invalid or in conflict with any law of the jurisdiction in which this Property is situated, the validity of all the remaining provisions and portions thereof shall remain unaffected and in full force and effect.

Section 8.3 Term. The covenants, conditions and restrictions of this Declaration shall run with and bind the Property and shall inure to the benefit of and shall be enforceable by the Association or the Owner of any property subject to this Declaration, their respective legal representatives, heirs, successors and assigns for a term of thirty (30) years from the date that this Declaration is recorded, after which time, these covenants, conditions and restrictions shall be automatically extended for successive periods of ten (10) years, unless an instrument in writing, signed by

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

seventy-five percent (75%) of the then Owners of the Parcels (and approved by all first mortgagees) has been recorded within the year preceding the year of each successive period of ten (10) years, agreeing to change such covenants and restrictions, in whole or in part, or to terminate them.

Section 8.4 Amendments. This Declaration may be amended only by the vote or written assent of fifty-one percent (51%) of the total voting power of each Membership, and fifty-one percent (51%) of the voting power of each Membership excluding Declarant's votes. All such amendments must be recorded and shall become effective upon being recorded in the Recorder's Office of the City and County of San Francisco.

Section 8.5 Encroachment Easements. Each Parcel within the Property is hereby declared to have an easement over the other Parcels for the purpose of accommodating any encroachment due to engineering errors, errors in original construction, settling or shifting of the Buildings, or any other cause. There shall be valid easements for the maintenance of such encroachments as long as they shall exist, and the rights and obligations of the Owners shall not be altered in any way by such encroachment, settlement or shifting; provided, however, that in no event shall a valid easement for encroachment be created in favor of an Owner or Owners if such encroachment occurred due to willful misconduct of such Owner or Owners. In the event that a structure is partially or totally destroyed, and subsequently repaired or rebuilt, the Owners of each Parcel agree that minor encroachments over adjoining Parcels shall be permitted and that there shall be valid easements

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

for the maintenance of such encroachments, so long as they shall exist.

Section 8.6   Effect of Breach.   No breach of any provision of this Declaration shall invalidate the lien of any mortgage made in good faith and for value, but all covenants, conditions and restrictions shall be binding on any Owner whose title is derived through foreclosure sale, trustee's sale, or otherwise.

Section 8.7   Owner's Right and Obligations to Maintain and Repair.   Except for those portions of the Property that the Association is required to maintain and repair, each Owner shall at his sole cost and expense, maintain and repair his separate interest in the Property, keeping the same in good condition.

Section 8.8   Damage or Destruction.

(a)  If the Property improvements are damaged by fire or other casualty, the improvements shall be rebuilt or repaired substantially the same as the improvements existed prior to the fire or other casualty, subject to local building codes and other applicable governmental regulations, unless either of the following occurs:

i.  The cost of repair or reconstruction is more than fifty percent (50%) of the current replacement cost of all the improvements located in the Property, the available insurance proceeds are not sufficient to pay eighty-five percent (85%) of the cost of such repairs or reconstruction, and eighty percent (80%) of the owners in each Membership vote against the repair and reconstruction; or

ii.  Available insurance proceeds are not sufficient to repair or reconstruct the improvement substantially to their

-46-

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

condition prior to the casualty, a special assessment fails to receive the requisite vote, if required, pursuant to Article IV, Section 4.4 hereof, and the Board is unable to supplement the insurance by borrowing, in the name of the Association, sufficient funds to reconstruct the improvements within a reasonable time.

(b)  The following procedures shall be employed for disposition of insurance proceeds and guidance in reconstruction:

i.  **Minor Casualty**.  If the cost to repair or reconstruct does not exceed the sum of seventy-five thousand dollars ($75,000), the Board shall thereupon contract to repair and rebuild the damaged portions of all Parcels, in accordance with the conditions existing immediately prior to damage (modified at the discretion of the Board to comply with building codes and construction standards in effect at the time of the rebuilding), and the funds held in the insurance trust fund shall be used for that purpose.  If the insurance proceeds are insufficient to pay all of the costs of repairing or rebuilding, the various Owners of interests in the Parcels affected shall pay for the portion of the insufficiency attributed to their interest owned.  The special assessment shall be subject to the provisions of this Declaration governing Membership approval of special assessments and shall be levied in the same manner as Shared Expenses Assessments, as set forth in Section 4.7 hereof.

ii.  **Major Casualty**.  If subparagraph (b)(i) is inapplicable, then,

·1.  All insurance proceeds and funds borrowed by the Association, if any, shall be paid to a bank, trust company or other entity designated by the Board ("the insurance trustee")

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

to be held for the benefit of the Owners and their mortgagees, as their respective interests may appear. Said funds shall be disbursed according to standard construction loan procedures. The Board, on behalf of the Association and of the Owners, hereby is authorized to enter into an insurance trust agreement, consistent with this Declaration, with such insurance trustee, relating to its powers, duties and compensation.

2. The Board shall obtain firm bids from two (2) or more responsible contractors to rebuild the Property in accordance with the conditions existing immediately prior to damage and destruction (modified at the direction of the Board to comply with building codes and construction standards in effect at the time of the rebuilding). The Board may also obtain an estimate from the insurance carrier of the scope of work included within the amount of the insurance coverage. To be considered, any contractor's bid shall include the premium payable for performance, labor and material payment bonds from a reputable bonding company. The Board shall, as soon as reasonably possible after receipt of such contractor's bids or insurance estimate, call a special meeting of the Owners to consider such bids or insurance estimate. If the Board fails to do so within sixty (60) days after the casualty occurs, any Owner may obtain such contractors' bids or insurance estimate and call and conduct such meeting, as provided herein. Failure to call such a meeting, or to repair such casualty damage within twelve (12) months from the date such damage occurred, shall be deemed, for all purposes, a decision not to rebuild the damaged or destroyed improvements.

Case: 25-30699   Doc# 53-4   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 54 of 62

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

4. At such meeting, the Owners may elect to reject all such bids or estimates and thus not to rebuild. A vote of eighty percent (80%) of the Owners in each Parcel shall be required to reject all bids or estimates. Failure to reject all bids and estimates shall authorize the Board to accept the unrejected bid it considers most favorable; provided, however, that if acceptance of any such bid would require the levy of a special assessment, such acceptance shall only be granted following Membership approval of such special assessment, as required by this Declaration. If such Membership approval is not obtained, the bid shall be deemed to have been rejected.

5. In the event the Board elects not to rebuild, insurance proceeds received by the Association shall be distributed by the Association among Owners and their respective mortgagees, according to the respective fair market values of the Parcels at the time of destruction, as determined by the following procedure: The Board shall appoint two (2) independent appraisers to determine the relative value of the Parcels affected. The two appraisers shall appoint a third independent appraiser. If the two appraisers are unable to agree on a third, then the third shall be appointed by the presiding Judge of the Superior Court of the State of California for the City and County of San Francisco. The market value of the respective Parcels or any portions thereof shall then be the average of the three values submitted by each of the appraisers.

6. If a bid or estimate is accepted, the Board shall levy a special assessment to make up any deficiency between the total insurance proceeds for insurance work and the cost for

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

such repairs or rebuilding, and such assessment and all insurance proceeds, whether or not subject to liens of mortgagees, shall be paid to the insurance trustee to be used for such rebuilding. The special assessment shall be levied as provided in Section 4.7 hereof.

(c) Notwithstanding any provision in this Section to the contrary, if the insurance carrier offers the full amount required to repair and restore all of the damage, then the Board shall contract to repair and rebuild the damaged portions of the Parcels in the manner provided in subparagraph (b)(i) for a minor casualty.

(d) Without waiting to obtain insurance settlements or bids, the Board may undertake such emergency repair work after a casualty as it may deem necessary or desirable under the circumstances.

Section 8.9 Condemnation. In the event of an award for the taking of any interest in a Parcel by eminent domain, the Owners of such interest shall be entitled to receive the award for such taking and after acceptance thereof, they and their mortgagee shall be divested of all interest in the Property if such Owner shall vacate his interest as a result of such taking. The Membership shall decide by eighty percent (80%) vote of the Owners whether to rebuild or repair the Property, or take other action. The remaining portion of the Property shall be resurveyed, if necessary, and the Declaration shall be amended to reflect such taking and to adjust proportionately the interests of the remaining Owners in the Property.

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

The Association shall represent the Owners in any condemnation proceedings or in negotiations, settlements and agreements with the condemning authority for the acquisition of the Property or any part thereof, and the award or proceeds of settlement shall be payable to the Association, or any trustee appointed by the Association, for the use and benefit of the Owners and their mortgagees, as their interests may appear.

If interests in Parcels are not valued separately by Court judgment or by agreement between the condemning authority and each of the affected Owners in the Property, the condemnation award shall be distributed as follows: The Board shall appoint two (2) independent appraisers to determine the relative values of the interests affected by the condemnation. The two appraisers shall appoint a third independent appraiser. If the two appraisers are unable to agree on a third, then the third shall be appointed by the presiding Judge of the Superior Court of the State of California for the City and County of San Francisco. The value of the respective interests shall be the average of the three values submitted by each of the appraisers. In the event any Owner disagrees with the proposed allocation, he may have the matter submitted to arbitration under rules of the American Arbitration Association. In the event of eminent domain proceedings against the Property, or any portion thereof, institutional lenders shall be given timely written notice thereof.

Section 8.10  Owners' Compliance.  Each Owner, tenant or occupant of a Parcel, or any portion thereof, shall comply with the provisions of this Declaration, Bylaws, decisions and resolutions of the Association or its duly authorized

representative, as lawfully amended from time to time, and failure to comply with any such provisions, decisions or resolutions shall be grounds for an action to recover sums due for damages or for injunctive relief. All agreements and determinations lawfully made by the Association in accordance with the voting percentages established in this Declaration or in the Bylaws, shall be deemed to be binding on all Owners of Parcels, their successors and assigns.

Section 8.11    Limitation of Restrictions on Declarant. Declarant is undertaking the work of constructing a phased project and incidental improvements upon the Property. The completion of that work and the sale, rental, and other disposal of Parcels or portions thereof is essential to the establishment and welfare of said Property as a residential/commercial/retail community. In order that said work may be completed and said Property be established as a fully occupied residential/commercial/retail community as rapidly as possible, nothing in this Declaration shall be understood or construed to do the following:

(a) Prevent Declarant, its contractors, or subcontractors, from doing on the Property or any portion thereof, whatever is reasonably necessary or advisable in connection with the completion of said work; or

(b) Prevent Declarant or its representatives from erecting, constructing and maintaining on the Property (except upon Parcels or portions thereof owned by others), such structures as may be reasonable and necessary for developing said Property as a residential/commercial/retail community and disposing of the same by sale, lease or otherwise; or

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

(c) Prevent Declarant from conducting on the Property (except upon Parcels or portions thereof owned by others) its business of completing said work and of establishing a plan of residential/commercial/retail ownership and of disposing of said Parcels or portions thereof by sale, lease or otherwise; or

(d) Prevent Declarant from maintaining such sign or signs on the Property as may be necessary for the sale, lease or disposition thereof; or

(e) Subject Declarant to the architectural control provisions of Article VII for construction of any residence or other improvements on the Property.

The foregoing rights of Declarant shall terminate upon sale of Declarant's entire interest in the Project.

So long as Declarant, its successors and assigns own one (1) or more of the Parcels or portions thereof described herein, Declarant, its successors and assigns shall be subject to the provisions of this Declaration. Declarant shall make reasonable efforts to avoid disturbing the use and enjoyment of Parcels by their Owners, while completing any work necessary to said Property.

Section 8.12 Termination of Any Responsibility of Declarant. In the event Declarant shall convey all of its rights, title and interest in and to the Property to any partnership, individual or individuals, corporation or corporations, then and in such event, Declarant shall be relieved of the performance of any further duty or obligation hereunder, and such partnership, individual or individuals, corporation or corporations shall be obligated to perform all such duties and obligations of the Declarant.

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

**Section 8.13** **Notice to First Mortgagees of Record**. Upon written request to the Association identifying the name and address of the holder of a first mortgage encumbering any Parcel, the Association shall give notice of the following: (1) any loss to any Parcel covered by the mortgage, if such loss affects a material portion of the Parcel on which there is a first mortgage, (2) any taking of the Parcel, or (3) if any Owner of a Parcel is in default under any provision of this Declaration, or any other provision of the Bylaws or rules and regulations adopted by the Association, which default is not cured within sixty (60) days after written notice to such Owner, the Association shall promptly give to the holder of the first mortgage written notice of such default and of the fact that said sixty (60) day period has expired. The holder of the first mortgage shall have the right, but not the obligation, to cure any default at any time.

**Section 8.14** **Effect of Breach**. No breach of any provision of this Declaration shall invalidate the lien of any first mortgage made in good faith and for value, but all covenants, conditions and restrictions shall be binding on any Owner whose title is derived through foreclosure sale, trustee's sale, or otherwise.

**Section 8.15** **Notices**. Any notice permitted or required by this Declaration or the Bylaws may be delivered either personally or by mail. If delivery is by mail, it shall be deemed to have been delivered seventy-two (72) hours after a copy of the same has been deposited in the United States Mail, postage prepaid, addressed to each person at the current address given by such person to the Secretary of the Board or addressed to the Property, if no such address has been given to the Secretary.

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

**Section 8.16** **Subdivider Access for Testing**. Declarant hereby reserves for itself, and the successors and assigns of Declarant, including the Master Association, easements over and under the Property for purposes of underground water sampling, as may be necessary to comply with environmental laws and regulations, through the wells located on the lowest level of parking, and for testing the venting system connected therewith which extends from below grade to the roof, as may be necessary for compliance. The responsibility for testing and sampling, and any maintenance, repair, or corrective action to abate any potentially harmful contamination, shall rest with Declarant until such time as the Portside Homeowners' Association has only one class of members, at which time it shall rest with the Master Association.

**Section 8.17** **Enforcement of Bonded Obligations**.

(a)  Board shall be directed to consider and vote on the question of action by the Association to enforce the obligations under the Bond with respect to any improvement for which a Notice of Completion has not been filed within 60 days after the completion date specified for that improvement in the planned construction statement appended to the Bond.  If the Association has given an extension in writing for the completion of any Parcel improvement, the Board shall be directed to consider and vote on the aforesaid question if a Notice of Completion has not been filed within 30 days after the expiration of the extension.

(b)  A special meeting of the Membership for the purpose of voting to override a decision by the Board not to initiate action to enforce the obligations under the Bond or on the failure of the Board to consider and vote on the question shall be required

DocuSign Envelope ID: CCE78F91-E616-4178-A67A-FABFC28C6B82

and held not less than thirty-five (35) days nor more than forty-five (45) days after receipt by the Board of a petition for such a meeting signed by Members representing 5% or more of the total voting power of each Membership.

(c) A vote of a majority of the voting power of each Membership residing in Members other than Declarant to take action to enforce the obligations under the Bond shall be deemed to be the decision of the Association and the Board shall thereafter implement this decision by initiating and pursuing appropriate action in the name of the Association.

IN WITNESS WHEREOF, the undersigned, being the Declarant herein, have executed this Declaration this 3nd day of February, 1994.

Declarant:

HUM BABY ASSOCIATES,
A CALIFORNIA LIMITED PARTNERSHIP

By: Emerald Fund, Inc., a California
corporation, Its General Partner

By: _____
S. Osborn Erickson

Single Form)
Effective 1/1/91

STATE OF CALIFORNIA
COUNTY OF San Francisco } SS.

On 3 February 1994 before me, the undersigned, a Notary Public in and for said State,
personally appeared S. Osborn Erickson

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____



MARY C. TUROWSKI
COMM. #959994
Notary Public-California
SAN FRANCISCO COUNTY