# EXHIBIT 5

# Department of Real Estate
## of the
## State of California

**FINAL SUBDIVISION PUBLIC REPORT**
CONDOMINIUM

*In the matter of the application of*

HUM BABY ASSOCIATES,
A California Limited Partnership

| | |
|---|---|
| FILE NO. | 032426SA-F00 |
| ISSUED: | MARCH 4, 1994 |
| EXPIRES: | MARCH 3, 1999 |

*for a Final Subdivision Public Report on*

MAP OF PORTSIDE
a.k.a. PORTSIDE

CLARK WALLACE
Real Estate Commissioner

by _____
Deputy Commissioner

SAN FRANCISCO COUNTY, CALIFORNIA

---

### CONSUMER INFORMATION

- **THIS REPORT IS NOT A RECOMMENDATION OR ENDORSEMENT OF THE SUBDIVISION; IT IS INFORMATIVE ONLY.**
- **BUYER OR LESSEE MUST SIGN THAT (S)HE HAS RECEIVED AND READ THIS REPORT.**
- A copy of this subdivision public report along with a statement advising that a copy of the public report may be obtained from the owner, subdivider, or agent at any time, upon oral or written request, *must* be posted in a conspicuous place at any office where sales or leases or offers to sell or lease interests in this subdivision are regularly made. *[Reference Business and Professions (B&P) Code Section 11018.1(b)]*

This report expires on the date shown above. All material changes must be reported to the Department of Real Estate. *(Refer to Section 11012 of the B&P Code; and Chapter 6, Title 10 of the California Administrative Code, Regulation 2800.)* Some material changes may require amendment of the Public Report; which Amendment must be obtained and used in lieu of this report.

Section 12920 of the California Government Code provides that the practice of discrimination in housing accommodations on the basis of race, color, religion, sex, martial status, national origin, physical handicap or ancestry, is against public policy.

Under Section 125.6 of the B&P Code, California real estate licensees are subject to disciplinary action by the Real Estate Commissioner if they discriminate or make any distinction or restriction in negotiating the sale or lease of real property because of the race, color, sex, religion, ancestry, national origin, or physical handicap of the client. If any prospective buyer or lessee believes that a licensee is guilty of such conduct, (s)he should contact the Department of Real Estate.

*READ THE ENTIRE REPORT ON THE FOLLOWING PAGES BEFORE CONTRACTING TO BUY OR LEASE AN INTEREST IN THIS SUBDIVISION.*

RE 618 (Rev. 6/91)

# COMMON INTEREST DEVELOPMENT
# GENERAL INFORMATION

*Common Interest Development*

The project described in the attached Subdivision Public Report is known as a common-interest development. Read the Public Report carefully for more information about the type of development. The development includes common areas and facilities which will be owned and/or operated by an owners' association. Purchase of a lot or unit automatically entitles and obligates you as a member of the association and, in most cases, includes a beneficial interest in the areas and facilities. Since membership in the association is mandatory, you should be aware of the following information before you purchase:

*Governing Instruments*

Your ownership in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a subdivision interest.

*Assessments*

In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your lot or unit. If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your lot or unit may be liened and sold through the exercise of a power of sale. The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget. Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

*Common Facilities*

A homeowner association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this development. The association also provides a means to accomplish architectural control and to provide a base for homeowner interaction on a variety of issues. The purchaser of an interest in a common-interest development should contemplate active participation in the affairs of the association. He or she should be willing to serve on the board of directors or on committees created by the board. In short, "they" in a common interest development is "you". Unless you serve as a member of the governing board or on a committee appointed by the board, your control of the operation of the common areas and facilities is limited to your vote as a member of the association. There are actions that can be taken by the governing body without a vote of the members of the association which can have a significant impact upon the quality of life for association members.

*Subdivider Control*

Until there is a sufficient number of purchasers of lots or units in a common interest development to elect a majority of the governing body, it is likely that the subdivider will effectively control the affairs of the association. It is frequently necessary and equitable that the subdivider do so during the early stages of development. It is vitally important to the owners of individual subdivision interests that the transition from subdivider to resident-owner control be accomplished in an orderly manner and in a spirit of cooperation.

*Cooperative Living*

When contemplating the purchase of a dwelling in a common interest development, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to whether you will be able to exist happily in an atmosphere of cooperative living where the interests of the group must be taken into account as well as the interests of the individual. Remember that managing a common interest development is very much like governing a small community ... the management can serve you well, but you will have to work for its success. [B & P Code Section 11018.1(c)]


**DEPARTMENT OF DRE REAL ESTATE**

RE 646 (Rev. 1/93)

## SPECIAL NOTES

1. IF YOU HAVE RECEIVED A PRELIMINARY PUBLIC REPORT FOR THIS SUBDIVISION, YOU ARE ADVISED TO CAREFULLY READ THIS FINAL PUBLIC REPORT SINCE IT CONTAINS INFORMATION THAT IS MORE CURRENT AND PROBABLY DIFFERENT FROM THAT INCLUDED IN THE PRELIMINARY REPORT.

2. THIS IS A MULTI-USE AIRSPACE PROJECT WHICH CONSISTS OF 4 PARCELS. ONE OF THE PARCELS WILL BE A COMMERCIAL GARAGE; ONE PARCEL IS A COMMERCIAL UNIT AND TWO PARCELS WILL BE RESIDENTIAL CONDOMINIUM PROJECTS.

3. THIS REPORT COVERS ONLY THE RESIDENTIAL UNITS IN THE FIRST PHASE OF THIS PROJECT.

4. THIS PROJECT IS A COMMON INTEREST SUBDIVISION OF THE TYPE REFERRED TO AS A CONDOMINIUM. IT WILL BE OPERATED BY TWO INCORPORATED OWNERS ASSOCIATIONS.

5. THE PORTSIDE HOMEOWNERS' ASSOCIATION HAS THE RIGHT TO LEVY ASSESSMENTS AGAINST YOU FOR MAINTENANCE OF THE COMMON AREAS AND OTHER PURPOSES. YOUR CONTROL OF OPERATIONS AND EXPENSES IS LIMITED TO THE RIGHT OF YOUR ELECTED REPRESENTATIVES TO VOTE ON CERTAIN PROVISIONS AT MEETINGS.

6. SINCE THE COMMON PROPERTY AND FACILITIES WILL BE MAINTAINED BY AN ASSOCIATION OF HOMEOWNERS, IT IS ESSENTIAL THAT THIS ASSOCIATION BE FORMED EARLY AND PROPERLY. THE HOMEOWNER ASSOCIATION MUST HOLD THE FIRST ELECTION OF THE ASSOCIATION'S GOVERNING BODY WITHIN FORTY-FIVE (45) DAYS AFTER 51% SELL OUT OF THE INTERESTS AUTHORIZED FOR SALE UNDER THE FIRST PUBLIC REPORT FOR THE SUBDIVISION. HOWEVER, IN NO EVENT SHALL THE MEETING BE HELD LATER THAN SIX MONTHS AFTER THE CLOSING OF THE SALE OF THE FIRST SUBDIVISION INTEREST. (REGULATIONS 2792.17 AND 2792.19). THE HOMEOWNER ASSOCIATION MUST ALSO PREPARE AND DISTRIBUTE TO ALL HOMEOWNERS A BALANCE SHEET AND INCOME STATEMENT (REGULATION 2792.22).

7. THE SUBDIVIDER ADVISES THAT NO ESCROWS WILL CLOSE UNTIL ALL COMMON FACILITIES, IMPROVEMENTS, AND LANDSCAPING, IN THIS PHASE HAVE BEEN COMPLETED; A NOTICE OF COMPLETION HAS BEEN FILED AND ALL CLAIM OF LIENS HAS EXPIRED, OR A TITLE POLICY ISSUED TO THE ASSOCIATION AND EACH PURCHASER CONTAINING AN ENDORSEMENT AGAINST ALL CLAIM OF LIENS. (SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE.)

8. NO ESCROWS WILL CLOSE IN THIS PHASE UNTIL COMPLETION OF ALL COMMON AREAS AND FACILITIES OR, AS AN ALTERNATIVE, THE SUBDIVIDER HAS SUBMITTED A BOND OR OTHER SECURITY ACCEPTABLE TO THE DEPARTMENT OF REAL ESTATE UNDER THE PROVISIONS OF SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE TO ASSURE LIEN FREE COMPLETION OF ALL COMMON AREAS, FACILITIES, AND RESIDENTIAL UNITS IN THIS PHASE OF THIS CONDOMINIUM PROJECT.

9. THE SUBDIVIDER MUST PAY ASSESSMENTS TO THE HOMEOWNERS ASSOCIATION FOR ALL UNSOLD UNITS IN THIS PHASE. THE PAYMENTS MUST COMMENCE ON THE FIRST DAY OF THE MONTH AFTER SUBDIVIDER CONVEYS THE FIRST SUBDIVISION INTEREST IN THIS PHASE. (REGULATIONS 2792.9 AND 2792.16).

10. THE SUBDIVIDER MUST PROVIDE YOU WITH A COPY OF THE ARTICLES OF INCORPORATION, RESTRICTIONS AND BYLAWS, PORTSIDE MASTER OWNERS ASSOCIATION AND THE PORTSIDE HOMEOWNERS' ASSOCIATION PRIOR TO CLOSE OF ESCROW. THESE DOCUMENTS CONTAIN NUMEROUS MATERIAL PROVISIONS THAT SUBSTANTIALLY AFFECT AND CONTROL YOUR RIGHTS, PRIVILEGES, USE, OBLIGATIONS, AND COSTS OF MAINTENANCE AND OPERATION. YOU SHOULD READ AND UNDERSTAND THESE DOCUMENTS BEFORE YOU OBLIGATE YOURSELF TO PURCHASE A UNIT. (SECTION 11018.6 BUSINESS AND PROFESSIONS CODE.)

11. THE SUBDIVIDER STATED HE WILL FURNISH THE CURRENT BOARD OF OFFICERS OF THE HOMEOWNERS ASSOCIATION AND EACH INDIVIDUAL PURCHASER WITH THE DEPARTMENT OF REAL ESTATE APPROVED BUDGET AND THE CONDOMINIUM PLAN.

12 THE SUBDIVIDER HAS INDICATED THAT HE INTENDS TO SELL ALL OF THE UNITS IN THIS PROJECT; HOWEVER, ANY OWNER, INCLUDING THE SUBDIVIDER, HAS A LEGAL RIGHT TO RENT OR LEASE THE UNITS.

13. IF YOU PURCHASE FIVE OR MORE SUBDIVISION INTERESTS (UNITS) FROM THE SUBDIVIDER, THE SUBDIVIDER IS REQUIRED TO NOTIFY THE REAL ESTATE COMMISSIONER OF THE SALE. IF YOU INTEND TO SELL YOUR INTERESTS OR LEASE THEM FOR TERMS LONGER THAN ONE YEAR, YOU ARE REQUIRED TO OBTAIN AN AMENDED SUBDIVISION PUBLIC REPORT BEFORE YOU CAN OFFER THE INTERESTS FOR SALE OR LEASE.

14. <u>WARNING</u>: WHEN YOU SELL YOUR CONDOMINIUM UNIT TO SOMEONE ELSE, YOU MUST GIVE THAT PERSON A COPY OF THE DECLARATION OF RESTRICTIONS, ARTICLES OF INCORPORATION, THE BYLAWS AND A TRUE STATEMENT CONCERNING ANY DELINQUENT ASSESSMENTS, PENALTIES, ATTORNEYS' FEES OR OTHER CHARGES, PROVIDED BY THE RESTRICTIONS OR OTHER MANAGEMENT DOCUMENTS ON THE UNIT AS OF THE DATE THE STATEMENT WAS ISSUED.

<u>NOTE</u>: IF YOU FORGET TO DO THIS, IT MAY COST YOU A PENALTY OF $500.00 -- PLUS ATTORNEY'S FEES AND DAMAGES (SEE CIVIL CODE SECTION 1368).

THE SUBDIVIDER MUST MAKE AVAILABLE TO YOU, COPIES OF THE ASSOCIATION GOVERNING INSTRUMENTS, A STATEMENT CONCERNING ANY DELINQUENT ASSESSMENTS AND RELATED CHARGES AS PROVIDED BY THE GOVERNING INSTRUMENTS AND, IF AVAILABLE, CURRENT FINANCIAL AND RELATED STATEMENTS (SEE BUSINESS AND PROFESSIONS CODE SECTION 11018.6).

INTERESTS TO BE CONVEYED: You will receive fee title to a specified unit, an undivided fractional fee interest as tenant in common in the common area together with a membership in the Portside Master Owners' Association and the Portside Homeowners' Association and rights to use the common area.

LOCATION AND SIZE: This subdivision is located at Bryant Street and Main Street, within the city limits of San Francisco, California. Prospective purchasers should acquaint themselves with the kinds of city services available.

This is the first phase which consists of approximately .4 acre on which 1 building containing 62 units, and exclusive right to one parking space within the adjacent garage (Parcel 2 of the Airspace Parcel Map, not a part of this filing) between the hours of 7 PM and 7 AM, from 7 AM 7 PM the parking in the garage for the units is non-exclusive.

Parking is subject to a License Agreement between the subdivider and the Portside Homeowners' Association which Agreement will be recorded prior to the close of the first sale of a condominium unit. According to this agreement, you shall pay a monthly parking charge.

Common facilities for the residential units consisting of a swimming pool, spa, recreation room, elevator, 2 restrooms, lighting, HVAC, booster pumps, boiler system and security system also will be constructed on the common area as shown on the condominium map.

Common facilities for the Master Association consisting of landscaping, fences and walls, walkways, lighting, a fire alarm system, a fire protection system and a trash compactor also will be constructed on Parcel 1 as shown on the airspace parcel map.

This phase is part of a total project which, if developed as proposed will consist of a total of 2 phases and 216 units.

There is no assurance that the total project will be completed as proposed.

MANAGEMENT AND OPERATION: The Portside Master Owners' Association and the Portside Homeowners' Association, of which you become a member at time of purchase, manages and operates the common area(s) in accordance with the Restrictions, Articles of Incorporation, and the Bylaws.

MAINTENANCE AND OPERATIONAL EXPENSES: The subdivider has submitted budgets for the maintenance and operation of the common areas and for long-term reserves when the subdivision is substantially completed (built-out budget) and an interim budget applicable to this phase. These budgets were reviewed by the Department of Real Estate in August 1993. You should obtain copies of these budgets from the subdivider.

Under the built-out budget, the monthly assessment against each subdivision interest ranges from $251.19 to $358.66. The association may or may not elect to use this budget when additional phases are annexed. Under the interim budget, the monthly assessment per interest will be ranges from $262.27 to $390.42. Of these amounts, the monthly contributions towards long-term reserves, which are not to be used to pay for current operating expenses are $30.67 and $39.65, respectively. Of these amounts, $77.37 is a monthly contribution to the Master Owners' Association.

According to the subdivider, assessments under the interim budget should be sufficient for proper maintenance and operation of the common areas until the development is completed at which time it may be anticipated that assessments will be adjusted.

> IF THE BUDGET FURNISHED TO YOU BY THE DEVELOPER SHOWS A MONTHLY ASSESSMENT FIGURE WHICH IS AT LEAST 20% MORE OR AT LEAST 10% LESS THAN THE ASSESSMENT AMOUNT SHOWN IN THIS PUBLIC REPORT, YOU SHOULD CONTACT THE DEPARTMENT OF REAL ESTATE BEFORE ENTERING INTO AN AGREEMENT TO PURCHASE.

The association may increase or decrease assessments at any time in accordance with the procedure prescribed in the Restrictions or Bylaws. In considering the advisability of a decrease, or a smaller increase, in assessments, care should be taken not to eliminate amounts attributable to reserves for replacement or major maintenance.

> THE BUDGET INFORMATION INCLUDED IN THIS PUBLIC REPORT IS APPLICABLE AS OF THE DATE OF BUDGET REVIEW AS SHOWN ABOVE. EXPENSES OF OPERATION ARE DIFFICULT TO PREDICT ACCURATELY AND EVEN IF ACCURATELY ESTIMATED INITIALLY, MOST EXPENSES INCREASE WITH THE AGE OF FACILITIES AND WITH INCREASES IN THE COST OF LIVING.

Monthly assessments will commence on all units in this phase, on the first day of the month following the conveyance of the first subdivision interest in the phase.

The remedies available to the association against owners who are delinquent in the payment of assessments are set forth in the Restrictions. These remedies are available against the subdivider as well as against other owners.

The subdivider has deposited funds in escrow as partial security for the obligation to pay these assessments. The governing body of the association should assure itself that the subdivider has satisfied these obligations to the association with respect to the payment of assessments before agreeing to a release or exoneration of the security.

"START-UP" MONEY: (Initial Capital Contribution) In addition to assessments, purchasers must make an Initial Capital Contribution to the association in order for the association to have sufficient "start-up" funds for operating the common areas. To ensure the early availability of such funds, the subdivider will have advanced an amount equal to one months assessment as Capital Contribution for each subdivision unit, and deposited that amount in the account of the association. Prior to the close of escrow, each purchaser must deposit an amount equal to one months assessment into escrow for each unit purchased. This amount will be reimbursed to the subdivider upon the close of each individual escrow. The amount represents the purchaser's Initial Capital Contribution, and is _not_ a prepayment of assessments or part of the purchase price of the unit. This arrangement is set forth in the escrow instructions.

TITLE: A title report shows title, among other things, to be subject to:

**PARCEL I:**

All that certain real property, as shown on that certain map entitled, "Map of Portside, A Condominium Project, Being a Resubdivision of Lot 24, Being a Portion of Assessor's Block No. 3768, Also Being a Portion of 100 Vara Block No. 328, San Francisco, California, which map was filed for record in the Office of the Recorder of the City and County of San Francisco, State of California, on February 11, 1994, in Book 42 of Condominium Maps, at Pages 161 to 170, inclusive.

EXCEPTING therefrom all minerals, including, without limiting the generality thereof, oil, gas and other hydrocarbon substances as well as metallic or other solid minerals, as reserved by the Atchison Topeka and Santa Fe Railway Company, a Delaware corporation, in Grant Deed, recorded August 19, 1985, in Book D902, at Page 768, Instrument No. D682209, Official Records of the City and County of San Francisco.

Said Railway Company shall have the right to go upon or use the surface of said land for the purpose of drilling for, mining, or otherwise removing said materials.

**PARCEL II:**

A non-exclusive easement for unobstructed ingress and egress over existing driveways located on the property described as Parcel II in the title report.

Parcel II is appurtenant to Parcel I above, and was created by that certain Instrument entitled "Grant of Easement and License Agreement" recorded December 15, 1988, in Book E765 at Page 440 and certain Instrument entitled "First Amendment to Grant of Easement and License Agreement" recorded October 29, 1992, in Book F744 at Page 406, Official Records.

PARCEL III:

A non-exclusive easement for construction and maintenance of the Ramp and "Satellite" Parking Lot and for unobstructed ingress and egress to provide access to the parking structure from Parcel II above, being more particularly described set forth in the title report:

Parcel III is appurtenant to Parcel I above, and was created by that certain Instrument entitled "Grant of Easement and License Agreement" recorded December 15, 1988, in Book E765 at Page 440 and certain Instrument entitled "First Amendment to Grant of Easement and License Agreement" recorded October 29, 1992, in Book F744 at Page 406, Official Records.

PARCEL IV:

An easement for vehicular and pedestrian access, utilities encroachment of access ramp, and construction and development purposes, all as recited in that certain document entitled "Declaration of Covenants, Conditions and Restrictions and Reciprocal Easement" recorded October 29, 1992, in Book F744 at Page 404, Official Records.

Said Parcel IV above is appurtenant to Parcel I above, and was created by that certain Instrument entitled "Declaration of Covenants, Conditions and Restrictions and Reciprocal Easement" recorded October 29, 1992, in Book F744 at Page 404, Official Records.

PARCEL V:

An easement for encroachment of an interior parking ramp as recited in the certain "Agreement For And Declaration Of Encroachment Easement" recorded October 29, 1992 in Book F744 at Page 405, Official Records.

Said Parcel V above is appurtenant to Lots 18 and 19 of Parcel I above, and was created by that certain Instrument "Agreement for and Declaration of Encroachment Easement" recorded December 29, 1992, in Book F744 at Page 405, Official Records.

Covenants, Conditions and Restrictions, but deleting restrictions, if any, based on race, color, religion or national origin, as provided in an instrument

| | |
|---|---|
| Entitled | : Agreement |
| Executed by | : And through the State of California, acting by and through the Department of Public Works and the Atchison, Topeka and Santa Fe Railway Company, a Kansas company |
| Dated | : June 21, 1934 |
| Recorded | : September 4, 1934, in book 2688 of Official Records, Page 306 |

Supplemental Agreement relative thereto, recorded June 29, 1937, in Book 3144, Page 323, Official Records.

Unrecorded Supplemental Agreement relative thereto, dated June 10, 1939, as disclosed by Deed, from the Atchison, Topeka and Santa Fe Railway Company, to Bryant-Harrison Associates, recorded August 19, 1985, in Book D902, Page 768, Official Records.

Third Amendment to Agreement relative thereto, recorded October 29, 1992, in Book F744 at Page 407, Official Records.

An easement affecting that portion of land and for the purposes stated herein and incidental purposes as provided in the above mentioned Agreement and Supplemental Agreement,

| | |
|---|---|
| For | : Construction, maintenance and operation of the San Francisco Oakland Bay Bridge |
| Affects | : Said land, and as shown on the Map referred to herein |

A. NOTE: Said easement is also shown on the map filed on January 29, 1992, in Book 41 of Parcel Maps, at Pages 7 to 8.

B. Said Map also contains the following recital, in the General Notes referring to the above mentioned agreement and easement:

The agreement and conveyance contain Covenants, Conditions and Restrictions, Reservations, Easements, Limitations and Prohibition on the subject property, due to the construction and maintenance of a bridge for highway purposes across San Francisco Bay.

For location of footings or Pier "B", see map entitled, "State of California, Department of Public Works, San Francisco-Oakland Bay Bridge, Contract No. 3, San Francisco Approach, Pier "B", retaining wall and details", dated 12-28-34, Drawing No. 19-F-2, on file in the Engineering Office located at the Bridge Toll Plaza Building, said footing is located within Lot 3.

Terms and provisions as contained in an instrument

| | |
|---|---|
| Entitled | : License Agreement |
| Executed by | : And between Bryant-Harrison Associates, a California limited partnership and Two Bryant Associates, a California general partnership |
| Dated | : December 24, 1985 |
| Recorded | : December 31, 1985 in Book D994 of Official Records, Page 1083 |

Which, among other things, provides for Grant to Licensee of irrevocable perpetual license to park motor vehicles on said land, together with rights of ingress and egress in connection therewith.

Amendment No. 1 to the above Agreement was recorded January 30, 1987, in Book E269, Page 1125, Official Records.

NOTE: Said easement is also shown on the map filed on January 29, 1992, in Book 41 of Parcel Maps, at Pages 7 to 8.

The following unrecorded Leases as disclosed by Assignment of Leases, by Bryant-Harrison Associates, a California limited partnership, to Hum Baby Associates, a California limited partnership, recorded May 6, 1988, in Book E589, Page 1811, Official Records:

| Date of Lease | Lessee |
|---|---|
| October 15, 1985 | Foster and Kleiser, Division of Metromedia, Inc. |
| September 16, 1985 | San Francisco Parking |

Any unrecorded and subsisting leases.

Terms and provisions as contained in an instrument

| | |
|---|---|
| Entitled | : Grant of Easement and License Agreement |
| Executed by | : And between 470 Spear Associates, a California limited partnership and Hum Baby Associates, a California limited partnership |
| Dated | : December 9, 1988 |
| Recorded | : December 15, 1988 in Book E765 of Official Records, Page 440 |

Which, among other things, provides: for non-exclusive easement over said land for unobstructed ingress and egress over existing driveways, located on said land so as to provide access for parking purposes, and further provides for irrevocable license to park motor vehicles on said land together with rights of pedestrian and vehicular ingress and egress in the event said easement is terminated under the terms of said Agreement; reference to said document is hereby made for full particulars.

NOTE: Said easement is also shown on the map filed on January 29, 1992 in Book 41 of Parcel Maps, at Pages 7 to 8.

First Amendment to Grant of Easement and License Agreement relative thereto, recorded October 29, 1992, in Book F744 at Page 406, Official Records.

Terms and provisions as contained in an instrument

| | |
|---|---|
| Entitled | : San Francisco City Planning Commission Motion No. 11818 |
| Executed by | : San Francisco City Planning Commission |
| Recorded | : February 22, 1990, in Book F67 of Official Records, Page 1133 |

NOTE: The following recital is contained in the General Notes of the map filed January 29, 1992, in Book 41 of Parcel Maps, at Pages 7 to 8 in regards to the above mentioned motion:

Case: 25-30699   Doc# 53-6   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 11 of 18

Among other things, said document provides for: conditional use authorization for a Planned Unit Development.

Covenants, Conditions and Restrictions, but deleting restrictions, if any, based on race, color, religion or national origin, as provided in an instrument

| | |
|---|---|
| Entitled | : Notice of Special Restrictions Under the City Planning Code |
| Executed by | : Hum Baby Associates |
| Recorded | : January 29, 1992, in Book F552 of Official Records, Page 597 |

Recitals shown or noted upon a map as follows:

| | |
|---|---|
| Map Entitled | : Parcel Map of a Portion of 100 Vara Block No. 328 also being a portion of Assessor's Block No. 3768, Lot 17, San Francisco, California |
| Filed On | : January 29, 1992, in Book 41 of Parcel Maps, at Pages 7 to 8 |
| Which Says | : This Parcel Map is based on a field survey. Main building lines and main visible building encroachments for the subject properties are shown hereon. Not all building appurtenances and site improvements are shown. Therefore, there may be additional encroachments not shown on this survey. Any encroachments of adjoining onto the subject properties are not shown. |

Any facts, rights, interest or claims which are not shown by the Public Record, but which could be ascertained by making inquiry of the parties in possession of the herein described real property.

Covenants, Conditions and Restrictions, but deleting restrictions, if any, based on race, color, religion or national origin, as provided in an instrument

| | |
|---|---|
| Entitled | : Declaration of Covenants, Conditions, Restrictions and Reciprocal Easements |
| Executed by | : Hum Baby Associates, a California Limited Partnership |
| Dated | : October 29, 1992 |
| Recorded | : October 29, 1992, in Book F744 of Official Records, Page 404 |

Said Covenants, Conditions and Restrictions provide that a violation thereof shall not defeat or render invalid the lien of any Mortgage or Deed of Trust made in good faith and for value.

An easement affecting that portion of said land and for the purposes stated herein and incidental purposes as provided in the following:

| | |
|---|---|
| Instrument | : Declaration of Covenants, Conditions, Restrictions and Reciprocal Easements |

| | | |
|---|---|---|
| Granted to | : | Hum Baby Associates, a California limited partnership |
| For | : | Vehicular and Pedestrian Access; installation, maintenance and operation of common and separate utility lines and related facilities and services; initial construction and development of complex and encroachment of access ramp onto Lot 20 |
| Recorded | : | October 29, 1992, in Book F744 of Official Records, Page 404 |
| Affects | : | "See Document for Full Particulars" |

Agreement for Declaration of Encroachment Easement

| | | |
|---|---|---|
| Executed by | : | Hum Baby Associates, a California limited partnership |

On the terms, covenants and conditions contained therein,

| | | |
|---|---|---|
| Dated | : | October 29, 1992 |
| Recorded | : | October 29, 1992 in Book F744 of Official Records, Page 405 |
| Return to Address | : | Hum Baby Associates, c/o Emerald Fund, Inc., 501 Second Street, Suite 422, San Francisco, California 94107 Attn: S. Osborn Erickson |

Lease upon the terms, covenants and conditions contained therein.

| | | |
|---|---|---|
| Lessor | : | NOT SHOWN |
| Lessee | : | House of Music of San Francisco, Inc. |
| Disclosed by | : | State of California Uniform Commercial Code Financing Statement Form UCC-1 |
| Recorded | : | March 31, 1993, in Book F847 of Official Records, Page 638 |
| Return to Address | : | Burlingame Bank and Trust Co., 350 Primrose Road, P.O. Box 910, Burlingame, California 94010-0910 |

NOTE: The present ownership of said leasehold or leaseholds and other matters affecting the interest of the lessee or lessees are not shown herein.

Recitals shown or noted upon a map as follows:

| | | |
|---|---|---|
| Map Entitled | : | Map of Portside, a Condominium Project, being a resubdivision of Lot 24, Portion of Assessor's Block No. 3768 |
| Filed | : | February 11, 1994, in Book 42 of Condominium Maps, at Pages 161 to 170, inclusive. |
| Which Says: | A. | UNIT ENCROACHMENT ALONG BRYANT STREET ARE ALLOWABLE UNDER SECTIONS 4504 AND 4504.1 OF THE BUILDING CODE. THIS MAP DOES NOT CONVEY ANY OWNERSHIP INTEREST IN SUCH ENCROACHMENT AREAS TO THE CONDOMINIUM UNIT OWNER. |

B. THE BUILDINGS SHOWN ON THIS FINAL MAP HAVE NOT BEEN CONSTRUCTED AT THE TIME OF APPROVAL OF THIS FINAL MAP. IN THE EVENT THAT THE BUILDINGS AS CONSTRUCTED ARE NOT AS SHOWN ON THIS FINAL MAP, AN AMENDMENT TO THIS FINAL MAP WILL BE REQUIRED WITHIN SIXTY (60) DAYS OF THE ISSUANCE OF A CERTIFICATE OF OCCUPANCY OR CERTIFICATE OF FINAL COMPLETION FOR ANY SUCH BUILDINGS.

EASEMENTS: Easements for utilities, rights-of-way, vehicular and pedestrian access and other purposes are shown on the Title Report and Subdivision Map recorded in the Office of the San Francisco County Recorder, Book 42 of Condominium Maps, Pages 161 through 170, Condominium Plan recorded as a part of the Map on February 11, 1994, Parcel Map of Portside Subdivision being an airspace subdivision, recorded January 1994, Book 42 of Parcel Maps, Page 15.

RESTRICTIONS: This subdivision is subject to Master Declaration of Conditions and Covenants and Restrictions recorded in the Office of the San Francisco County Recorder, Book G67, Pages 583 February 11, 1994. This subdivision is also subject to Restrictions recorded February 11, 1994, Book G67, Page 584.

FOR INFORMATION AS TO YOUR OBLIGATIONS AND RIGHTS, YOU SHOULD READ THE RESTRICTIONS. THE SUBDIVIDER MUST MAKE THEM AVAILABLE TO YOU.

MINERAL RIGHTS: You will not own the mineral, oil, and gas rights under your land. These have been reserved as follows: Book D902, Page 768, Instrument No. D682209.

The right to surface entry has not been waived, and the owners of the mineral rights may enter upon the land at some future date to extract minerals, etc. This right could affect your ability to obtain financing for building on your property.

USES AND ZONING: Property to the north and south is zoned Residential and Office; property to the east is the San Francisco Bay and Pier 30, and property to the west is zoned for Warehouse, Office and Residential.

HAZARDS: The following hazards exist within or near this development:

1. The Bay Bridge is located approximately 60 feet from the perimeter of the project (30 feet above the building) to the northwest.

2. Contaminated soils have been removed and remediated (lead and hydrocarbons). A clearance will be issued and provided when available.

TAXES: The maximum amount of any tax on real property that can be collected annually by counties is 1% of the full cash value of the property. With the addition of interest and redemption charges on any indebtedness, approved by voters prior to July 1, 1978, the total property tax rate in most counties is approximately 1.25% of the full cash value. In some counties, the total tax rate could be well above 1.25% of the full cash value. For example, an issue of a general obligation bonds previously approved by the voters and sold by a county water district, a sanitation district or other such district could increase the tax rate.

The total property tax rate for the subdivision is 1.15% for tax year 1993-94.

For the purchaser of a lot or unit in this subdivision, the full cash value of the lot will be the valuation, as reflected on the tax roll, determined by the county assessor as of the date of purchase of the lot or as of the date of completion of an improvement on the lot if that occurs after the date of purchase.

ASSESSMENTS: The subdivision lies within the boundaries of Community Facilities District No. 90-1 and is subject to any taxes, assessments and obligations thereof. This District was formed to finance the repair, restoration and/or replacement of District facilities damaged by the earthquake of October 17, 1989 (or its aftershocks); seismic upgrading of children's centers and other District facilities; correction of fire safety violations of District facilities, deferred capital maintenance of District facilities and incidental expenses. In consideration of financing such improvements and costs, the District has encumbered each lot/unit within this project. Special tax payments (principal plus interest) will be due twice yearly with the owner's real property taxes. The special tax will be collected for twenty (20) years.

Purchasers who are at least 65 years of age may qualify for a senior citizen exemption. For further information, contact the San Francisco Unified School District.

The maximum annual tax on parcels in CFD 90-1 shall be the rates below for the first six (6) years:

1.  Single-Family Residential Parcels and Non-Residential Parcels shall pay $46.00 per parcel.

2.  Mixed Use Parcels and Multi-Family Residential Parcels shall pay $23.00 per dwelling unit.

The maximum annual tax on parcels in CFD 90-1 shall be the rates below for the fourteen years (14) following the sixth year:

1.  Single-Family Residential Parcels and Non-Residential Parcels shall pay $32.20 per parcel.

2.  Mixed Use Parcels and Multi-Family Residential Parcels shall pay $16.10 per dwelling unit.

In the event of non-payment of the special taxes, the district is authorized to enforce the payment of the special taxes due by the sale or foreclosure of all or any part of the real property or the lien. A Notice of Special Tax Lien ("Notice") for the District was recorded on July 5, 1990, Reel F160, Image 1044 in the Official Records of San Francisco County, which, in addition to the above, contains specific information concerning your obligations. Purchasers should obtain a copy of this Notice from the title company or developer in order to thoroughly understand the effect of this District on their Unit/Lot. The administration of this district will be provided by the San Francisco Unified School District.

CONDITIONS OF SALE: Pursuant to Civil Code Sections 2956 through 2967, inclusive, subdividers and purchasers must make certain written disclosures regarding financing terms and related information. The subdivider will advise purchasers of the disclosures needed from them, if any.

If your purchase involves financing, a form of deed of trust and note will be used. The provisions of these documents may vary depending on the lender selected. These documents may contain the following provisions:

Acceleration Clause: This is a clause in a mortgage or deed of trust which provides that if the borrower (trustor) defaults in the repaying of the loan, the lender may declare the unpaid balance of the loan immediately due and payable.

Due-on Sale Clause: If the loan instrument for financing your purchase of an interest in this subdivision includes a due-on-sale clause, the clause will be automatically enforceable by the lender when you sell the property. This means that the loan will not be assumable by a purchaser without the approval of the lender. If the lender does not declare the loan to be all due and payable on transfer of the property by you, the lender is nevertheless likely to insist upon modification of the terms of the instrument as a condition to permitting assumption by the buyer. The lender will almost certainly insist upon an increase in the interest rate if the prevailing interest rate at the time of the proposed sale of the property is higher than the interest rate of your promissory note.

A Balloon Payment: This means that your monthly payments are not large enough to pay off the loan, with interest, during the period for which the loan is written and that at the end of the loan period, you must pay the entire remaining balance in one payment. If you are unable to pay the balance and the remaining balance is a sizeable one, you should be concerned with the possible difficulty in refinancing the balance. If you cannot refinance or sell your property, or pay off the balloon payment, you will lose your property.

Prepayment Penalty: This means that if you wish to pay off your loan in whole or in part before it is due, you must, in addition, pay a penalty.

A Late Charge: This means that if you fail to make your installment payment on or before the due date, or within a specified number of days after the due date, you, in addition, must pay a penalty.

BEFORE SIGNING, YOU SHOULD READ AND THOROUGHLY UNDERSTAND ALL LOAN DOCUMENTS.

PURCHASE MONEY HANDLING: The subdivider must impound all funds received from you in an escrow depository until legal title is delivered to you. [Refer to Business and Professions Code Sections 11013 and 11013.2(a)]

If the escrow has not closed on your unit within one (1) year from the date of your deposit receipt, you may request the return of your deposit.

NOTE: Section 2995 of the Civil Code provides that no real estate developer shall require as a condition precedent to the transfer of real property containing a single-family residential dwelling that escrow services effectuating such transfer shall be provided by an escrow entity in which the developer owns or control 5% or more of the escrow entity.

THE SUBDIVIDER HAS NO SUCH INTEREST IN THE ESCROW COMPANY WHICH IS TO BE USED IN CONNECTION WITH THE SALE OR LEASE OF UNITS IN THIS SUBDIVISION.

SOILS CONDITIONS: Soils and geologic information is available at the City and County of San Francisco, Department of Public Works, Bureau of Building Inspection, 450 McAllister Street, Room 202, San Francisco.

**The subdivider advises that all this area is filled ground dating back to the mid 1800s.**

GEOLOGIC CONDITIONS: THE UNIFORM BUILDING CODE, CHAPTER 70 PROVIDES FOR LOCAL BUILDING OFFICIALS TO EXERCISE PREVENTIVE MEASURES DURING GRADING TO ELIMINATE OR MINIMIZE DAMAGE FROM GEOLOGIC HAZARDS SUCH AS LANDSLIDES, FAULT MOVEMENTS, EARTHQUAKE SHAKING, RAPID EROSION OR SUBSIDENCE. THIS SUBDIVISION IS LOCATED IN AN AREA WHERE SOME OF THESE HAZARDS MAY EXIST. SOME CALIFORNIA COUNTIES AND CITIES HAVE ADOPTED ORDINANCES THAT MAY OR MAY NOT BE AS EFFECTIVE IN THE CONTROL OF GRADING AND SITE PREPARATION.

PURCHASERS MAY CONTACT THE DEVELOPER, THE DEVELOPER'S ENGINEER, THE ENGINEERING GEOLOGIST AND THE LOCAL BUILDING OFFICIALS TO DETERMINE IF THE ABOVE-MENTIONED HAZARDS HAVE BEEN CONSIDERED AND IF THERE HAS BEEN ADEQUATE COMPLIANCE WITH CHAPTER 70 OR AN EQUIVALENT OR MORE STRINGENT GRADING ORDINANCE DURING THE CONSTRUCTION OF THIS SUBDIVISION.

FIRE PROTECTION: City of San Francisco Fire Department is located approximately 1/4 mile from the project.

GAS AND ELECTRICITY: Pacific Gas and Electric Company, San Francisco (415) 781-4211.

TELEPHONE: Pacific Bell, San Francisco, (415) 542-3981.

SCHOOLS: This project lies within the San Francisco Unified School District. This District advises that the schools initially available to this subdivision are:

Bessie Carmichael Elementary School (K-5)
55 Sherman Street near 7th Street, 94103
Ms. Amy Talisman, Principal
241-6294

Potrero Hill Middle School (6-8)
655 DeHaro Street near 18 Street, 94107
Mr. Ron Cabral, Principal
695-5905

Mission High School 99-12)
3750 18th Street near Dolores Street, 94114
Ms. Patricia Aramendia, Principal
241-6240

This school information was provided prior to the date of issuance of this public report and is subject to change. For the most current information regarding school assignments, facilities and bus service, purchasers are encouraged to contact the above school district.

If you need clarification as to the statements in this Public Report, or if you desire to make arrangements to review the documents submitted by the subdivider which the Department of Real Estate used in preparing this Public Report, you may call (916) 227-0813.