# EXHIBIT 7

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17

SAN FRANCISCO

CITY PLANNING COMMISSION

MOTION NO. 11818

**ADOPTING FINDINGS RELATED TO THE APPROVAL BY THE CITY PLANNING COMMISSION OF CONDITIONAL USE AUTHORIZATION FOR RESIDENTIAL USE IN A M-1 (LIGHT INDUSTRIAL) DISTRICT PURSUANT TO PLANNING CODE SECTION 303 AND TREATMENT AS A PLANNED UNIT DEVELOPMENT PURSUANT TO PLANNING CODE SECTION 304, FOR A RESIDENTIAL AND COMMERCIAL PROJECT ON THE EAST SIDE OF MAIN STREET, LOT 17, ON ASSESSOR"S BLOCK 3768.**

Recitals

1. On or about September 12, 1989, Lalanne, Babcock and Brown, (the "Project Sponsor") made application (the "Application") for Conditional Use Authorization for a Planned Unit Development ("PUD") and for residential use in an M-1 district for construction of a maximum 260-unit condominium project, 2-1/2 levels of parking containing a maximum of 450 parking spaces, 10,000 square feet of commercial space and open space in three plazas. The total development including parking, comprises approximately 379,000 square feet.

   The Project site comprises 63,798 square feet (1.46 acres) and is located on Assessor's Block 3768, Lot 17. It is of sufficient size to be treated as a PUD application under Section 304 of the Planning Code. The Project will have two unequal-height towers on landscaped plazas above 2-1/2 levels of parking. The residential entrances are on Main and Bryant Streets, and the complex will include support retail use at the sidewalk frontage along Bryant and Harrison Street. The project site is divided into three parts, with the central part having a Cal Trans airspace easement for the Bay Bridge above.

2. The project is located within a M-1 (Light Industrial) District, an 84X Height and Bulk District, and within the Commercial/Industrial Subdistrict of the Rincon Hill Special Use District.

3. Residential density for the project under applicable zoning controls is governed in accordance with requirements for the Commercial/ Industrial Subdistrict of the Rincon Hill Special Use District, which allows one unit for each 200 square feet of site area for a maximum of 319 units.

4. The Application requests approval of a conditional use for a residential project in an M-1 District (Section 215 of the Planning Code) and consideration as a Planned Unit Development (PUD) for any exception to Code requirements that may be necessary to construct the project as approved. Specific Code or policy exceptions include:

Case: 25-30699   Doc# 53-8   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 2 of 15

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Page 2

- o Sidewalk treatment requirements (Section 249.1(b)(2) for the sidewalk area underneath the CalTrans easement in the center of the block along Main Street (to meet CalTrans requirements, if any).

- o Open space requirement (Section 249.1(d)(1) and Section 135) for enclosed solariums provided where noise levels require a high degree of sound insulation and for covered and/or enclosed areas where overhead hazard protection is required.

- o Parking requirement (Section 249.1(d)(2) for parking in addition to what is required by Code (1 space per dwelling unit plus 1 space per 1000 square feet of retail area) due to deeded license agreements necessary to meet the Planning Code requirements for adjacent buildings (2 Bryant, 79 spaces and 444 Spear, 25 spaces, totalling 373 spaces) and any additional parking, if provided for commuter use for a project total of up to 450 spaces. (Parking in an M-1 District is a permitted use.) Parking in excess of 150% of the Code requirement is by Conditional Use or a PUD exception.

- o Commercial space requirements for street facades under the Rincon Hill Plan in order to provide townhouse units accessed directly off Main and Harrison Streets in the North Building. Also commercial use (Section 249.1(c)(1)(c) at a depth of 20 feet in lieu of the required 25 feet.

- o Setback requirements for building frontage above 50 feet involving a lesser setback for 77 feet (14%) of frontage above 50 feet (Section 249.1(c)(3)).

- o The requirement for a buffer zone for parking above grade to be reduced from 25 feet to 15 feet at the area below the Cal Trans easement (Section 249.1(c)(5)(c)).

5. On November 29, 1989, the proposed project was determined to be exempt from the requirements of the California Environmental Quality Act (CEQA) pursuant to CEQA Guidelines Section 15182 - Residential Projects Pursuant to a Specific Plan. The proposed project was determined to be a residential project pursuant to the Rincon Hill Plan. A final EIR for the Rincon Hill Plan, File No. 82.39E, was certified by the City Planning Commission on July 18, 1985.

6. On December 7, 1989, the Commission held a duly noticed Public Hearing on the Application for Conditional Use Authorization for a Residential Use in an M-1 District and for consideration of the project as a Planned Unit Development (PUD).

7. In reviewing the Application in accordance with the provisions of CEQA, the State CEQA guidelines and Chapter 31 of the San

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Page 3

Francisco Administrative Code, the Commission has had available for review and consideration the information contained in the Final EIR for the Rincon Hill Plan, File No. 82.39E, certified July 18, 1985.

8. In reviewing the Application, the Commission has had available for review and consideration the information contained in accompanying documents, has had available to it for its review and consideration studies, letters, plans and reports pertaining to the Project contained in the case file of the Department of City Planning, and has heard testimony from all interested parties.

Findings

Having reviewed all the materials identified in the recitals above, and having heard oral testimony and arguments, this Commission finds, concludes and determines as follows:

1. The above recitals are accurate and also constitute findings of the Commission.

2. The Project, through the conditional use procedure, conforms with all applicable standards of the Planning Code ("Code).

3. The Project requires authorization per Section 215 of the Planning Code for Residential Use in an M-1 District.

4. The Project requires authorization for parking in excess of 150% of the required amount under Code Section 304 (Planned Unit Development). The reason for this exception is to accommodate required deeded parking.

5. Planning Code 303 authorizes approval of conditional uses where such authorization is provided for elsewhere in the Code and the project meets applicable criteria contained in 303(c).

6. The Project meets criteria in 303(c)(1) in that it will provide a development that is necessary or desirable for, and compatible with, the neighborhood or community:

   The site presently is used as an on-grade parking lot. The project site is within five minutes walking distance of the central business district. The proposed development will provide approximately 260 condominium units with dramatic views of the bay, the East Bay skyline and the Bay Bridge. The close proximity to the business and financial district offers a new community and housing resource for downtown workers. The complex would include support retail at the sidewalk level along Bryant

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Page 4

Street providing vitality for the buildings and the neighborhood. Further interest will be created by the dual tower design framing the Bay Bridge, the three open space plazas, the landscaped streetscape and the individual street level entrances off the Main Street sidewalk to the lower level townhouses. The Project will help promote the planned transition to a residential community and be consistent with the intent of the Rincon Hill Plan.

7. The Project meets the criteria in 303(c)(2) in that the use, size, shape, features and arrangement of the structure on the project site will not be detrimental to the health, safety, convenience or general welfare of the persons residing or working in the vicinity.

   A. The site slopes downward between Harrison and Bryant Streets along Main Street. The design of the project responds to and emphasizes the hill form and bridge easement with two unequal-height residential towers on a podium base and a landscaped pedestrian and parking area between (at the bridge easement). The towers' forms step back above the podium base and are joined at the lower levels by the pedestrian and parking structure. The stepbacks at the upper levels of both towers and the gap between the towers (the bridge easement) provide views toward the bridge and the bay. Entrances to individual Townhouses in the North Tower are provided at street level along Main Street.

   B. <u>Parking, Traffic and Accessibility</u>. The Project is serviced by Harrison, Main, Bryant and Spear Streets, with its primary residential entrance on Harrison and Main Streets, and transient parking from Spear Street. Traffic patterns will be similar to those currently in use, as the majority of parking will be accessed from Spear Street. Within walking distance are MUNI bus lines on Fremont, Folsom, Mission, Market and The Embarcadero. MUNI Metro and BART are four blocks away on Market Street. AC Transit, Golden Gate Transit and SamTrans are a similar distance at the Transbay Terminal. The Golden Gate Ferry Terminal is four blocks away on The Embarcadero.

   Access to the Bay Bridge, Interstate 80 and Highway 101 is made a few blocks west off Harrison Street at 1st Street and 4th Street.

   Proposed in the Project are 2-1/2 separate parking levels accessible from Harrison, Main and Spear Streets. The separate entrancing and exiting onto three streets will eliminate rush hour congestion onto and from the City streets that interface with the project.

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Page 5

    C. **Safeguards Against Noxious Emissions.** None of the uses proposed for the Project will emit noxious odors, offensive noise or dust. Clear glass will be used for the residential and commercial windows and no offensive glare will be caused.

    During construction, all reasonable precautions will be taken to reduce dust and noise as specified in the conditions of approval.

    D. **Handling of Landscaping, Open Spaces, Parking and Loading.** The Project will contain three large landscaped plazas, including a landscaped pedestrian and parking open space in the area of the Bay Bridge easement. The open space areas are at different levels relative to the public sidewalks, offering a variety of space, privacy, views and orientations. The sun will shine on portions of the various open areas during most of the day. Some open space areas may be enclosed by solariums in order to reduce ambient noise levels. Also, some open spaces may be covered for hazard protection.

    The required parking is screened from view of passersby.

8. The Project meets the criteria in 303(c)3 by complying with applicable provisions of the Code through exceptions authorized by the Conditional Use Process and by not adversely affecting the Master Plan.

9. Section 304 of the Code authorizes the approval of PUDs that are intended for projects on sites of considerable size, developed as integrated units and designed to produce an environment of stable and desirable character that will benefit the occupants, the neighborhood and the City as a whole. The Project is consistent with the intent of Section 304 of the Code in that the property that is the subject of this PUD approval has a total size of 63,798 square feet (1.46 acres), which is in excess of the one-half acre minimum for PUDs.

10. The Project satisfies the criteria established by Section 304(d)(1) of the Code in that the Project will affirmatively promote numerous objectives and policies of the Master Plan including the following:

    a. Residence Element, Objective 1, Policy 2 in that the Project will pursue development of housing in an underused industrial area close to downtown.

    b. Residence Element, Objective 2, in that the Project will increase substantially the supply of housing without overcrowding or adversely affecting the prevailing character of existing neighborhoods.

CITY PLANNING COMMISSION                    File No. 89.493C
                                            401 Main Street
                                            East Side of Main
                                            Assessor's Block 3768, Lot 17
                                            Motion No. 11818
                                            Page 6

    c. Rincon Hill Plan in that the combined residential, open space, retail and parking uses comply with the objectives and policies of the Rincon Hill Plan.

11. The Project satisfies the criteria established by Section 304(d)(2) or the Code in that the Project will provide adequate off-street parking for the occupancy proposed, in excess of project demand. The Code requires 260 spaces for the proposed residential units, 9 spaces for the proposed retail space and 104 spaces for deeded license agreements for adjacent buildings (2 Bryant Street and 444 Spear Street). The proposed Project will include a minimum 373 parking spaces (260 residential, 9 retail and 104 for deeded license agreements). The project may include up to a total of 450 spaces.

12. The Project satisfies the criteria established in Section 304(d)(3) of the Code in that it will provide open space in the form of three large landscaped plazas above the parking/retail floors at different levels and locations in the Project. The sun will shine on portions of the various open space areas during most of the day.

13. The Project satisfies the limitations of Section 304(d)(4) of the Planning Code in that its density is limited by the Rincon Hill Plan to a ratio not to exceed one dwelling unit for each 200 feet of lot area.

14. The Project satisfies the criteria established by Section 304(d)(6) of the Planning Code in that it is within an 84-foot height district and is in accordance with design principles of the Rincon Hill Plan. The Project's tower at the Bryant and Main Street intersection, which is closer to the base of the hill, is two stories lower than the more northerly tower.

15. The Project is consistent with the eight priority policies of Section 101.1 of the Planning Code.

    a. That Existing Neighborhood Serving Retail Uses be Preserved and Enhanced and Future Opportunities for Resident Employment In and Ownership of Such Business be Enhanced.

       The proposed project provides support neighborhood retail per the Rincon Hill Plan.

    b. That Existing Housing and Neighborhood Character be Conserved and Protected in Order to Preserve the Cultural and Economic Diversity of Our Neighborhoods.

       The proposed project promotes planned transition of an underutilized former industrial district to a new residential neighborhood near downtown.

Case: 25-30699   Doc# 53-8   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 7 of 15

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Page 7

c. That the City's Supply of Affordable Housing be Preserved and Enhanced.

The Project Sponsor has made arrangements with the San Francisco Public Housing Authority, The Mayor's Office of Housing and the Bernal Heights Community Group to revitalize 118 public housing units known as Holly Court, located in Bernal Heights.

d. That Commuter Traffic Not Impede MUNI Transit Service or Overburden Our Street or Neighborhood Parking.

The proposed project does not increase commuter traffic because of its residential character, proximity to downtown, and the site's current use as a commuter parking lot.

e. That a Diverse Economic Base Be Maintained by Protecting Our Industrial and Service Sectors From Displacement Due to Commercial Office Development, and That Future Opportunities for Resident Employment and Ownership in These Sectors Be Enhanced.

The proposed project would add to the economic base within the guidelines set forth in the Rincon Hill Plan.

f. That the City Achieve the Greatest Possible Preparedness to Protect Against Injury and Loss of Life in an Earthquake.

The proposed project would conform to earthquake standards enacted by the City of San Francisco.

g. That Landmark and Historic Buildings be Preserved.

No such buildings are involved in the proposed project. The applicant has expressed interest in providing a location on-site for the Union 76 Station now located at Pacific and Larkin or other potential historic buildings.

h. That All Parks and Open Space and Their Access to Sunlight and Vistas be Protected From Development.

No parks or open space are affected by this proposal.

## DECISION

That based upon the Record, the submissions by the Applicant, the staff of the Department and other interested parties, the oral testimony presented to this Commission at the public hearings, and all other written materials submitted by all parties, the Commission hereby

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Page 8

Approves Conditional Use Application No. 89.493C subject to the following conditions attached hereto as EXHIBIT A which is incorporated by reference as though fully set forth.

I hereby certify that the foregoing Motion was ADOPTED by the City Planning Commission on December 7, 1989.

                                      Lori Yamauchi
                                      Secretary

AYES:    Commissioners Bierman, Boldridge, Engmann, Hu, Karasick and Morales

NOES:    None

ABSENT:  None

ADOPTED:  December 7, 1989

LRB:mj:316

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818

EXHIBIT A

CONDITIONS OF APPROVAL

CONDITIONS TO BE MET PRIOR TO THE RELEASE OF THE SITE PERMIT, BUILDING PERMIT, OR ADDENDA TO BUILDING PERMITS

Land Use and Density

1. This approval is for development of up to a 260 unit apartment project, with two mid rise towers of eight and seven stories respectively (approximately 240,000 square feet) over two and three levels of parking (approximately 130,000 square feet) containing up to 450 parking spaces, 10,000 square feet of commercial space, approximately 10,000 square feet of open space in three garden areas. The total development is approximately 380,000 square feet.

Design

1. The final plans shall meet the standards of the Planning Code within the exceptions permitted under the Planned Unit Development procedure and be in general conformity with the plans accepted by the Commission on December 7, 1989 as Exhibit B.

2. Mechanical equipment and appurtenances shall be enclosed in such a manner that (a) the enclosure is designed as a logical extension of the building form and an integral part of overall building design and (b) its cladding and detailing is comparable in quality to the rest of the building.

3. Final detailed building plans shall be reviewed and approved by Department staff prior to issuance of a building permit. Detailed building plans shall include a final site plan, unit plans, elevations, sections, landscape plan, choice of finish materials and details of construction.

4. Only clear glass shall be used throughout the project.

Landscaping and Open Space

1. Project sponsor shall landscape the sidewalk on Main Street frontage and on Harrison and Bryant Streets adjacent to the project in accordance with the Rincon Hill Plan. The paving pattern for the sidewalk and other

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Exhibit A
Page 2

    publicly accessible open space areas shall appropriately relate to the materials and patterns used in the Hills Brothers project at the base of Rincon Hill, subject to staff review and approval.

2. Project sponsor shall install lighting, decorative paving, seating and landscaping on public sidewalks adjacent to the site provided that such improvements meet any applicable ordinances and applicable requirements of the Department of Public Works, the Bureau of Light, Heat and Power of the Public Utilities Commission pertaining to street lighting and sidewalk paving. All such improvements are subject to staff review and approval.

3. The project sponsor and successive project owners of property (Lot 17, Assessor's Block 3768) shall hold harmless the City and County of San Francisco, its officers, agents and employees from any damage or injury caused by reason of the design, construction or maintenance of the sidewalk improvements and shall be solely liable for any damage or loss occasioned by any act or neglect in respect to the design, construction or maintenance of the sidewalk improvements.

4. A landscape plan prepared by a licensed landscape architect shall be submitted for review and approval by the Department of City Planning prior to application for a building permit.

5. Open space areas shall be retained for the use of residents for the lifetime of the project. Covenants, conditions and restrictions shall be drawn up governing the maintenance of open space and shall be approved by the Department of City Planning.

6. The hours of operation of the public open space shall be during daylight hours seven days per week.

7. In fulfillment of the requirements of Code Section 143, at minimum one street tree shall be provided for each 20 feet of street frontage unless waved by the Zoning Administrator.

8. Trash receptacles and dumpsters shall not be stored on public property or in project public or common open space, and they shall be screened from public view.

### Housing

1. The project shall not be marketed or leased for time share, executive suites or short term transient use. No residential units shall be used as a hotel, as defined in Section 203.8 of the San Francisco Housing Code.

2. Covenants, conditions and restrictions shall be imposed upon Project residential units to restrict use to occupancy for permanent (non-transient) residents and to preclude time share ownership or occupancy.

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Exhibit A
Page 3

3. In order to expand affordable housing opportunities, project sponsor has agreed to contribute no less than ($500,000) Five Hundred Thousand Dollars for the rehabilitation of existing low income housing. Funds shall be contributed prior to the release of a Temporary Certificate of Occupancy. The manner in which the contribution is made shall be approved by the Director of Planning in consultation with the Mayor's Office of Housing.

4. Project Sponsor shall provide construction management and project management services for the expenditure of the $500,000 and any matching funds that may be made available up to an additional million dollars for the construction and/or rehabilitation of low income housing. Satisfactory compliance with these conditions shall be determined by the Director of Planning in consultation with the Mayor's Office of Housing.

5. If the Director of Planning, in consultation with the Mayor's Office of Housing, determines that the project sponsor has not cooperated satisfactorily with respect to items 3 and 4 of this Housing Condition, then prior to the release of a Final Certificate of Occupancy, but no later than two years from the date of the issuance of the first Temporary Certificate of Occupancy, project sponsor shall contribute an additional sum of Two Hundred and Fifty Thousand Dollars ($250,000) for a total cash contribution of Seven Hundred and Fifty Thousand Dollars ($750,000).

### Noise Reduction in Residential Units

The residential units are subject to Title 25 of the California Administrative Code which provides standards for maximum interior noise levels in residential units located in areas with an ambient noise level of 60dBA or more. The project sponsor shall provide to the City an acoustical analysis by a competent acoustical engineer showing how the State required interior noise level standard of Ldn of 45dB will be met through noise insulation features to be included in the project.

### Transportation

1. No less than 373 and not more than 450 independently accessible parking spaces shall be provided.

2. Residents in each unit in the project shall have a right for the life of the project of first offer to lease one parking space in the garage levels of the project. If the resident(s) elects not to lease the parking space to which the unit is entitled, the Project Owner or designated agent shall have the right to lease such parking spaces to other parties on no longer than month to month leases, terminable upon receipt by the Project Owner or designated agent of written notice from the resident(s) entitled to occupy a unit that said resident(s) desire to lease a parking space for that unit. Upon receipt of such written notice, should a parking space

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Exhibit A
Page 4

    not be available, then Project Owner/agent shall terminate a non-resident month to month lease and lease the parking space to the resident at a cost that is no greater than that paid by other residents.

    The order of precedence for leasing to other than project residents shall be: (1) persons residing within the boundaries of the Rincon Hill Special Use District as delineated on the Zoning Map of the City and County of San Francisco; (2) persons working within the boundaries of the Rincon Hill Special Use District; (3) others.

3. Should units be sold, then for the life of the project the right to lease at least one parking space within the project must be sold with each unit.

4. Project sponsor shall provide a minimum of 13 secure spaces for bicycles or mopeds.

5. While subsurface sidewalk vaults are discouraged, should they be needed, project sponsor shall design subsurface vaults to allow for possible future widening of adjacent streets and vault design shall be of sufficient strength to carry maximum vehicular and live loads. Provision in the vault area for the placement of street trees shall also be made, subject to staff approval. In addition, should vaults exist or be installed as part of the project, project sponsor shall accommodate and pay for the installation of all sub-surface footings, supports and foundations as may be required for future public improvements such as street lights, street trees, trolley wire poles, signs, benches, transit shelters, etc. within project vault areas. Placement of such improvements is entirely within the discretion of the City.

### Energy

1. The Project Sponsor shall consider appropriate energy conservation measures in building design and operation. Prior to filing the site permit, the Project Sponsor shall submit to the Department a brief report containing its assessment of the cost effectiveness of utilizing the measures outlined in the following checklist including reasons for rejecting any of the measures not employed. Measures to be considered shall include:

   a. Passive solar energy design;

   b. Maximum uses of natural illumination (day lighting) through window design, atriums, skylights, etc.;

   c. Other lighting reduction strategies, including high efficiency outdoor lights, low energy ballasts, time switches on storerooms, occupancy sensors, etc.;

   d. Alternative energy systems for domestic hot water pre-heating;

Case: 25-30699   Doc# 53-8   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 13 of 15

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Exhibit A
Page 5

    e. Multiple metering of structure (separate meter for each dwelling unit) and

    f. Alternatives to air conditioning, including natural ventilation.

### Preservation and Archeology

1. Should evidence of historic or prehistoric artifacts be uncovered at the site during construction, the Project Sponsor shall:

   a. Require the Project contractor to notify the Environmental Review Officer of the Department of City Planning and the President of the Landmarks Preservation Advisory Board.

   b. Require that the Project contractor suspend construction in the area of the discovery for a maximum of four weeks to permit review of the find, and, if appropriate, retrieval of the artifacts.

   c. Retain an archaeologist or historians or other expert acceptable to the Environmental Review Officer to assist the Office of Environmental Review to determine the significance of the find and identify feasible measures, if any, to preserve or recover artifacts.

   d. Implement feasible mitigation measure,s but in any event the cost of such implementation shall not exceed one percent of total construction costs as indicated in the site permit application for the Project phase involved on file with the Department of Public Works. Copies of reports prepared according to this mitigation measures shall be sent to the California Archaeological Site Survey Office at Sonoma State University.

### Soils

1. A soils report shall be prepared by a California licensed engineer and the developer shall follow the recommendations of this report.

2. If dewatering is necessary, any groundwater pumped from the site shall be retained in a holding tanks to allow the suspended particles to settle, if this is found necessary by DPW, to reduce the amount of settlement entering the storm sewer lines.

### Air Quality

1. During excavation, unpaved demolition and construction areas shall be wetted completely at least twice a day to reduce the dust emissions.

Case: 25-30699   Doc# 53-8   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 14 of 15

CITY PLANNING COMMISSION

File No. 89.493C
401 Main Street
East Side of Main
Assessor's Block 3768, Lot 17
Motion No. 11818
Exhibit A
Page 6

### Hazards

1. An evacuation and emergency response plan shall be developed by the Project Sponsor in consultation with the Mayor's Office of Emergency Services to ensure coordination between the City's emergency planning activities and the Project's plan and to provide for building occupants in the event of an emergency. This plan shall be reviewed by the Office of Emergency Services and implemented by building management before issuance of the final certificate of occupancy.

2. Potential hazards associated with the project location under the Bay Bridge shall be evaluated by a Civil Engineer or other licensed professional(s) competent to conduct such evaluations. A report shall be prepared and the recommendations of the report shall be followed by the project sponsor, or the infeasibility of implementing such measures demonstrated.

### Wind

1. Pursuant to Code Section 249.1(b)(3), the project shall be designed to include wind wall, deflectors, baffles, trellises or other features or devices, as necessary, to reduce wind speeds on the proposed open space within the project to seven mph in public seating areas and eleven mph in pedestrian areas. The open space should be enclosed, if necessary, if the standard could not be met outdoors. The final wind reduction measures are subject to City Planning Department approval.

### Performance

1. The Project Sponsor shall transmit a copy of this Motion to the Office of the Recorder for the City and County of San Francisco for recordation as a part of the property records. This action shall be taken prior to any approval of a Building Permit Application by the Department of City Planning.

2. Project Sponsor shall secure a valid building permit for the project within three years of this approval. The time for receiving a building permit may be extended an additional two years by the Zoning Administrator should delays in issuing a permit be caused by a government agency or legal action.

LRB:mj:316

Case: 25-30699   Doc# 53-8   Filed: 10/02/25   Entered: 10/02/25 11:57:48   Page 15 of 15