EXHIBIT 8

SAN FRANCISCO

CITY PLANNING COMMISSION

MOTION NO. 13905

**ADOPTING FINDINGS PURSUANT TO THE AUTHORIZATION OF A CONDITIONAL USE FOR THE MODIFICATION OF CONDITIONAL USE NO. 89.493C, AS AUTHORIZED IN MOTION NO. 11818, IN ORDER TO REDUCE THE NUMBER OF OFF-STREET PARKING SPACES TO BE PROVIDED TO SUPPORT ON-AND OFF-SITE RESIDENTIAL AND COMMERCIAL USES AT 401 MAIN STREET (PORTSIDE PHASE I & II) AND TO ALLOW ATTENDANT (VALET) PARKING WITHIN THE PROPOSED PARKING GARAGE ON WEEKDAYS BETWEEN THE HOURS OF 7:00 A.M. AND 7:00 P.M.**

Preamble

On December 9, 1989, the Planning Commission approved a Conditional Use for a Planned Unit Development at 401 Main Street (hereinafter the "Project"), Lots 20, 21, 22 and 23 in Block 3768 (hereinafter the "Subject Property"), located in an M-1 (Light -Industrial) District within the Commercial/Industrial Subdistrict of the Rincon Hill Special Use District and with an 85-X Height and Bulk Designation, for up to 260 dwelling units in two towers, 10,000 square feet of ground floor commercial space, and from 373 to 450 parking spaces on 2 1/2 levels (Motion No. 11818). The parking spaces were to serve the residential units, the on-site commercial space, two nearby commercial buildings at 2 Bryant Street and 444 Spear Street, and general commuter parking.

On April 26, 1995, Hum Baby Associates (hereinafter "Project Sponsor") made application for Conditional Use authorization (Application No. 95.220C) to modify the previously authorized Project, as set forth in Motion No. 11818, to reduce the minimum number of parking spaces in the Project from 373 to 353, and to allow approximately 84 of the spaces to be provided through the operation of attendant (valet) parking on weekdays between the hours of 7:00 a.m. and 7:00 p.m.

On July 6, 1995, the San Francisco City Planning Commission (hereinafter the "Commission") conducted a duly noticed public hearing at a regularly scheduled meeting on Conditional Use Application No. 95.220C.

Case: 25-30699    Doc# 53-9    Filed: 10/02/25    Entered: 10/02/25 11:57:48    Page 2 of 10

The San Francisco Department of City Planning (hereinafter "Department") determined on June 28, 1995 in a Note To File No. 95.220C, that the Final Certificate of Determination issued on November 9, 1989, for the original Project (Case No. 89.493EC) remains valid and that the requested Project modification does not require supplemental environmental review. The original Project was found to be exempt from environmental review pursuant to the California Environmental Quality Act (CEQA) Guidelines Section 15182 - Residential Projects Pursuant to a Specific Plan. The proposed Project was determined to be a residential project pursuant to the Rincon Hill Plan. A final EIR for the Rincon Hill Plan, File No. 82.39E, was certified by the City Planning Commission on July 18, 1985.

The Commission has heard and considered the testimony presented to it at the public hearing and has further considered written materials and oral testimony presented on behalf of the applicant, Department staff, and other interested parties.

<u>Findings</u>

Having reviewed all the materials identified in the recitals above, and having heard oral testimony and arguments, this Commission finds, concludes and determines as follows:

1. The project originally proposed under Motion No. 11818 involved new construction of a condominium project in the Rincon Hill planning area. The Motion required the project to provide a minimum of 373 parking spaces. This motion modifies the conditions of Exhibit A, Conditions of Approval, of Motion No. 11818 to change the minimum number of parking spaces required from 373 to 353, 84 of which would be provided by the operation of attendant (valet) parking within the proposed garage on weekdays between the hours of 7:00 a.m. and 7:00 p.m.

2. Code Section 303(e) requires that changes to previously approved conditions be subject to the same procedures as new conditional use applications. Under Motion No. 11818, the Commission found that the original project met the provisions of Code Sections 303 and 304 in that the use would provide a development that was necessary and desirable for and compatible with the neighborhood, and the convenience and general welfare of persons residing or working in the vicinity, and not injurious to property improvements or potential development in the vicinity, and that such use would not adversely affect the Master Plan.

3. This proposal to change the required number of parking spaces and allow attendant parking on weekdays satisfies the criteria of Code Sections 303 and 304, and is both necessary and desirable in that:

    a. In 1994, the Project's Phase I residential tower and parking garage (known as Portside Phase I) was completed. During construction of Phase I, it was discovered that the soils underlying the site contain higher levels of hydrocarbons and lead than original studies indicated.

Because of that the excavation originally proposed for the third underground garage level in Phase II is now infeasible because it would require the extremely expensive disposal of hydrocarbon and lead-containing soil. Rather, the Project Sponsor proposes to encapsulate the existing soil and minimize excavation, resulting in 2 levels of underground parking instead of the 2-1/2 levels originally approved. Such an encapsulation scheme meets all health and safety standards.

b. The parking demand generated by the Project has been substantially reduced since Motion No. 11818 was approved. The Project has been modified to decrease the number of dwelling units from 260 to 220, and decrease the commercial space from 10,000 square feet to 6,000 square feet (reducing required parking by 44 spaces). Those 44 spaces, plus 2 additional spaces, would be allocated to the 46 dwelling units proposed for 101 Harrison Street and approved by the Planning Commission on April 13, 1995 (Motion No. 13863).

c. The Commission found in Motion No. 11818 that the project required authorization for parking in excess of 150 percent of the required amount under Code Section 304 (Planned Unit Development). The modification was granted to accommodate deeded parking for 2 Bryant Street and 444 Spear Street, as well as general commuter parking. However, prior parking license agreements between the Project Sponsor and the owners of 2 Bryant Street and 444 Spear Street have been amended to reduce the number of deeded spaces the Project Sponsor is required to provide those buildings from 104 independently accessible parking spaces to 15 independently accessible spaces and 66 attendant (valet) spaces.

d. The amount of commercial parking proposed (15 independently accessible spaces and approximately 84 valet spaces on weekdays) has been determined by the Zoning Administrator to satisfy the Code requirement for this Project. The Commission concurs with the Zoning Administrator's determination regarding the adequacy of the parking to be provided for the commercial space in the Project and in the 2 Bryant and 444 Spear buildings.

e. The amendment would allow the project to proceed consistent with the original Commission authorization, although decreasing the amount of general commuter parking provided by the Project.

5. Attendant (valet) parking would be provided in the proposed parking garage from 7:00 a.m. to 7:00 p.m. on weekdays to provide parking for commercial uses, including 2 Bryant Street, 444 Spear Street and the 6,000 square feet of commercial space in the Project. The Commission finds that the valet parking would

operate during the daytime hours when the commercial uses would be in operation and therefore the on-site parking would function in a manner consistent with the provisions for Joint Use Off-Street Parking as set forth in Section 160 of the Planning Code.

6. The Project has an existing 157.5 foot long driveway easement from Spear Street to the valet drop-off area of the garage which will prevent cars awaiting valet parking from queuing in the street.

7. In Motion No. 11818, the Commission found that the original Project would contribute to the character and stability of the neighborhood, and on balance, would constitute a beneficial development. The amendment results in a project consistent with the findings contained in Motion No. 11818, and the Commission hereby incorporates such findings, including the Code Section 101.1 findings, by reference, except for Finding No. 11 which is hereby amended to read as follows:

    "The Project satisfies the criteria established by Section 304(d)(2) of the Code in that the Project would provide adequate off-street parking for the occupancy proposed and for adjacent buildings. The Code requires 266 parking spaces for the proposed residential units to be constructed in Portside Phase II and at 101 Harrison Street, six spaces for the on-site retail space and 81 spaces pursuant to recorded license agreements for adjacent commercial buildings (2 Bryant Street and 444 Spear Street). The proposed project would include a minimum of 269 independently accessible parking spaces (266 residential spaces and 15 commercial spaces), and would accommodate approximately 84 additional vehicles using a valet operation during weekdays when the additional commercial parking demand would be present."

8. The Commission hereby finds that approval of the subject Conditional Use Authorization would promote the health, safety and welfare of the City.

## DECISION

That based upon the Record, the submissions by the Applicant, the staff of the Department and other interested parties, the oral testimony presented to this Commission at the public hearings, and all other written materials submitted by the parties, the Commission hereby approves Conditional Use Application No. 95.220C subject to the following conditions attached hereto as EXHIBIT A which is incorporated by reference as though fully set forth.

I hereby certify that the foregoing Motion was ADOPTED by the City Planning Commission at its regular meeting of July 6, 1995.

Linda Avery
Secretary

AYES: Commissioners Boomer, Levine, Martin, Prowler and Unobskey

NOES: Commissioners Fung and Lowenberg

ABSENT: None

ADOPTED: July 6, 1995

| CITY PLANNING COMMISSION | File No. 95.220C |
|---|---|
| | 401 Main Street |
| | Assessor's Block 3768 |
| | Lots 20, 21, 22 and 23 |

# EXHIBIT A

## CONDITIONS OF APPROVAL

The authorization contained herein is for the modification of Motion No. 11818 allowing a reduction in the dwelling unit count and provision of the off-street parking at 401 Main Street, Portside Phase II, generally as described herein. The Project shall be in general conformance with <u>Exhibit B</u>, architectural plans dated June 29, 1995, reviewed and approved by the Commission on July 6, 1995, and filed in the docket for Case No. 95.220C and incorporated herein as though fully set forth.

1. The residential unit count for the Portside Development, Phase I and II, shall be reduced from 260 to 220. The on-site commercial space shall be reduced from 10,000 to 6,000 square-feet.

2. A total of 289 independently accessible parking spaces shall be provided within the proposed garage to support residential uses as follows: Portside Phase I (62 units), Portside Phase II (158 units) and 101 Harrison Street (46 units).

3. The 289 independently accessible parking spaces shall be provided as 132 standard (160 Square-feet) and 129 compact (127.5 square-feet) spaces.

4. Attendant/valet parking shall be operated Monday through Friday between the hours of 7:00 a.m. and 7:00 p.m. within the proposed parking garage to provide a minimum of 84 off-street parking spaces to serve the off-site commercial uses as follows: 2 Bryant Street (60 spaces), 444 Spear Street (21 spaces). The operation of valet parking outside the designated Monday through Friday 7:00 a.m. to 7:00 p.m. schedule shall be prohibited without prior authorization of a new conditional use by the City Planning Commission.

5. Except as otherwise stated herein all conditions set forth in Exhibit A, of Motion 11818 shall remain in effect and without modification.

CITY PLANNING COMMISSION

Case No. 95.220C
401 Main Street
Motion No. 13905
EXHIBIT A
Page 2

6. The project sponsor shall disclose in writing a notice to all owners of the proposed dwelling units and for project tenants that a major sports facility and associated parking structure may be constructed in the immediate vicinity of the project. Such notice shall be given until such a facility is constructed on an undeveloped site within the immediate vicinity or another location, or until another project is built on the undeveloped parcels within the immediate vicinity. Notice shall include a statement that an arena/sports facility is anticipated to seat 20-47 thousand people with daytime, evening, and nighttime events throughout the year. The notice should also disclose that the facility could be approximately 200 feet in height, could substantially cover a 15 acre site and include parking for several thousand cars which would generate substantial levels of pedestrian and vehicular activity during events, and that public streets and right-of-ways may be modified.

7. The Applicant shall record a copy of these conditions with the Office of the Recorder for the City and County of San Francisco as part of the property records prior to the authorization of any site/building permits by the Department of City Planning.

8. The authorization and rights vested by virtue of this action shall be deemed void and cancelled if construction of the parking garage has not commenced within three years of the date of this approval.

mac.DATA\EMERALD\401.MTN

# CERTIFICATE OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen and not a party to the within action. On October 2, 2025, I served the following documents in the manner described below:

**DECLARATION OF JOHN CORNWELL IN SUPPORT OF PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS**

| | |
|---|---|
| ☒ | (BY U.S. MAIL) I am personally and readily familiar with the business practice of Stinson LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California. |
| ☐ | BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through Stinson LLP's electronic mail system from katrina.adkins@stinson.com to the email addresses set forth below. |
| ☒ | (BY CM/ECF): I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: |

On the following part(ies) in this action:

| | |
|---|---|
| Peter Hadiaris<br>100 E. Street, Suite 210<br>Santa Rosa, CA 95404 | *Attorney for Debtor*<br><br>415.694.0052<br>peter@hadiaris.com |
| Matthew G. Bouslog<br>Allen Matkins Leck Gamble Mallory & Natsis LLP<br>2010 Main Street, 8th Floor<br>Irvine, CA 92614-7214 | *Attorney for Two Bryant Investors, LLC*<br><br>949.851.5553<br>mbouslog@allenmatkins.com |
| Rachael Tamiko Gonzales<br>Allen Matkins<br>865 S. Figueroa Street, Ste 2800<br>Los Angeles, CA 90017 | 213.955.5615<br>rgonzales@allenmatkins.com |
| Paul Gregory Leahy<br>Office of the United States Trustee<br>280 South First Street, Suite 268<br>San Jose, CA 9511 | *Attorney for Office of the United States Trustee*<br><br>408.535.5535<br>Paul.Leahy@usdoj.gov |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 1, 2025, at San Francisco, California.

*Katrina D. Adkins* _____
Katrina D. Adkins

5
DECLARATION IN SUPPORT OF PORTSIDE HOMEOWNERS' ASSOCIATION'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO REJECT LICENSE AGREEMENTS
CORE/3543394.0001/232044248.1