1  MATTHEW G. BOUSLOG (BAR NO. 280978)
   ALLEN MATKINS LECK GAMBLE
2    MALLORY & NATSIS LLP
   2010 Main Street, 8th Floor
3  Irvine, California 92614-7214
   Phone: (949) 553-1313
4  Fax:   (949) 553-8354
   E-Mail: mbouslog@allenmatkins.com
5
   RACHAEL T. GONZALES (BAR NO. 347879)
6  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
7  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
8  Phone: (213) 622-5555
   Fax: (213) 620-8816
9  E-Mail: rgonzales@allenmatkins.com

10 Attorneys for Party in Interest
   Two Bryant Investors, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>SF OAKLAND BAY LLC,<br><br>Debtor. | Case 25-30699 HLB<br><br>Chapter 11<br><br>**TWO BRYANT INVESTORS, LLC'S OPPOSITION TO THE DEBTOR'S MOTION TO REJECT PORTSIDE LICENSE AGREEMENTS**<br><br>Date: October 16, 2025<br>Time: 10:00 a.m.<br>Ctrm: 19/Videoconference<br><br>Judge: Hon. Hannah L. Blumenstiel |

**TO THE HONORABLE HANNAH L. BLUMENSTIEL, UNITED STATES BANKRUPTCY JUDGE, AND PARTIES IN INTEREST:**

Two Bryant Investors, LLC ("Two Bryant"), by and through its undersigned counsel, submits this opposition to the *Debtor's Motion to Reject 1994 Executory Contract with Portside Homeowners' Association* [Docket No. 24] and *Debtor's Motion to Reject 1997 Executory Contract*

*with Portside Homeowners' Association* [Docket No. 25] (together, the "Motions")[1] with respect to the license agreements of Portside Homeowners' Association ("Portside"), and respectfully states as follows:

## I. PRELIMINARY STATEMENT

The Debtor seeks to reject the License Agreements based on a mistaken belief that it can terminate Portside's rights thereunder. On the contrary, the License Agreements are either covenants running with the land or easements—neither of which may be rejected under section 365 of the Bankruptcy Code. Additionally, by seeking to avoid its obligations under the License Agreement, the Debtor is attempting to violate the express conditions imposed by the City of San Francisco under which the Debtor is required to operate its business.

Even if the License Agreements could be rejected, however, Portside would nevertheless retains its rights under the License Agreements, including possession of its allocated parking spaces in accordance with sections 365(g) and/or 365(h) of the Bankruptcy Code. In other words, the Motions are improper and pointless, and they should be denied.

## II. BACKGROUND

**A.  The Portside Licenses**

On February 25, 1994, Portside and Hum Baby Associates, the Debtor's predecessor-in-interest (the "1994 Licensor"), entered into that certain License Agreement (the "1994 License Agreement"), and recorded on March 1, 1994, whereby the 1994 Licensor granted Portside an irrevocable license (the "1994 License") to park 62 motor vehicles on the debtor's real property, a parking garage commonly located at 401 Main Street, San Francisco, California 94105 and 38 Bryant Street, San Francisco, California 94105 (the "Parking Garage"). Docket No. 24 1:25–26.

On October 9, 1997, Portside and Portside II, LLC (the "1997 Licensor"), Debtor's predecessor-in-interest and successor to 1994 Licensor, entered into that certain License Agreement (the "1997 License Agreement"; together with the 1994 License Agreement, the "License Agreements"), and recorded on November 21, 1997, whereby the 1997 Licensor granted Portside

---

[1]  All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motions.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**
4928-7901-9115

an irrevocable license (the "1997 License"; together with the 1994 License, the "Licenses") to park 158 motor vehicles at the Parking Garage. The Licenses provide that the "License[s] shall remain in full force and effect in perpetuity." Docket No. 24, Ex. 1 § 7; Docket No. 25, Ex. 1 § 7. The Licenses also provide that they "shall be appurtenant to the Licensee Property, shall inure to the benefit of the Licensee, the Owners and the owner or owners of the Licensee Property from time to time and shall burden and be binding upon the Licensor Property and the successive owners of the Licensor Property." Docket No. 24, Ex. 1 § 10(b); Docket No. 25, Ex. 1 § 10(b).

The City of San Francisco's approval of the Debtor's use of its land for parking was conditioned on the existence of the Licenses, as reflected in the conditional use authorization (the "CUA") issued by the City of San Francisco's Planning Commission (the "Planning Commission"). *See Portside Homeowners' Association's Omnibus Opposition to Debtor's Motions to Reject License Agreements* [Docket No. 53] (the "Portside Objection") at 9.

**B.    The Two Bryant License**[2]

Similar to Portside, Two Bryant holds an irrevocable license to park 60 motor vehicles in the Parking Garage (the "Two Bryant License"), which license was recorded on August 13, 1992. The Two Bryant License contains language that it is appurtenant to the land and inures to the benefit of Two Bryant, it binds successive owners, and it is intended to be in effect in perpetuity. The CUA also includes an express condition to the Debtor's operations on the existence of the Two Bryant License.

### III.    ARGUMENT[3]

**A.    The License Agreement Is a Covenant that Runs with the Land and Cannot Be Rejected**

As set forth in the Portside objection,[4] the License Agreements constitute covenants running

---

[2]  Two Bryant provides this to highlight the similarities between the Two Bryant License Agreement and the License Agreements. There is additional factual background involved with the Two Bryant License Agreement not provided herein.

[3]  Two Bryant reserves all rights and arguments to the extent that the Debtor separately moves to reject the Two Bryant License.

[4]  Two Bryant incorporates by reference the arguments set forth in the Portside Objection at 4–6.
LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4928-7901-9115
3

with the land. If a covenant runs with the land, "[s]ection 365 is simply not available" to the debtor. *In re Badlands Energy, Inc.*, 608 B.R. 854, 875 (Bankr. D. Colo. 2019); *see also In re Hilltop SPV, LLC*, 667 B.R. 110, 121 (Bankr. W.D. Tex. 2025) ("rejection of an executory contract does not reject any real property interests conveyed by covenants in the contract . . . [i]nstead, the real property interest conveyed by the covenant survives rejection"); *In re Wildwood Villages, LLC*, 2022 WL 1599967, at *3 (Bankr. M.D. Fla. Jan. 21, 2022) (debtor's obligation to provide recreational facilities constituted "covenants that run with the land . . . are not subject to assumption or rejection under § 365(b)"); *Alta Mesa Holdings, LP v. Kingfisher Midstream, LLC (In re Alta Mesa Res., Inc.)*, 613 B.R. 90, 95 (Bankr. S.D. Tex. 2019) ("real property covenants are not executory and cannot be rejected under the Bankruptcy Code"); *HPIP Gonzales Holdings, LLC v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*, 567 B.R. 869, 874 (S.D.N.Y. 2017) ("it is not possible for a debtor to reject a covenant that 'runs with the land,' since such a covenant creates a property interest that is not extinguished through bankruptcy"), *aff'd*, 734 F. App'x 64 (2d Cir. 2018); *In re Daufuskie Island Prop., LLC*, 2011 WL 6936534, at *9 (Bankr. D.S.C. June 23, 2011) ("a property interest . . . is not subject to § 365 and therefore is not subject to rejection").

As the License Agreements "run with the land and are properly recorded, the [License] Agreements are not only valid and enforceable," but the Debtor's attempted rejection of the License Agreements serves "no purpose at all," and section 365 is not available. *In re Banning Lewis Ranch Co., LLC*, 532 B.R. 335, 346 (Bankr. D. Colo. 2015). Accordingly, the Debtor cannot reject the Licenses, and the Motions should be denied.

**B.     Even if the Licenses Are Not Covenants, They Are Easements, and the Debtor Cannot Reject Them**

       **i.     The License Agreements Are Easements**

"An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land" and "creates a nonpossessory right to enter and use the land in another's possession." *Main Street Plaza v. Cartwright & Main, LLC*, 194 Cal. App. 4th 1044, 1053 (2017); *see also Gamerberg v. 3000 E. 11th St., LLC*, 44 Cal.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
4928-7901-9115

App. 5th 424, 434 (2020) ("an irrevocable license does not differ at all from an easement") (citation omitted); *Barnes v. Hussa*, 136 Cal. App. 4th 1358, 1370 (2006) ("An irrevocable license . . . is for all intents and purposes the equivalent of an easement."); *Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 36 (1994) (holding that parking easement "might be described as an irrevocable license"). An easement may be created by (1) an express grant, (2) an express reservation, (3) an implied grant, (4) an implied reservation, (5) necessity, (6) prescription, (7) a recorded covenant, (8) dedication, (9) condemnation, (10) estoppel, or (11) a court decision. *Id.* at 1053–54. Of relevance here, the License Agreements were created by express grant and were recorded.

"If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." *Blackmore v. Powell*, 150 Cal. App. 4th 1593, 1599 (2007) (affirming validity of easement for parking). Here, the language in the License Agreements is clear and explicit to create an easement. The Licenses provide that Portside has the right to park motor vehicles "in the [Parking] Garage . . . located on the Licensor Property in designated spaces assigned to the Licensee." Docket No. 24, Ex. 1 § 1; Docket No. 25, Ex. 1 § 1. This language and the terms used therein indicate that the Licenses created were intended to expressly grant a right to use the Parking Garage in a specific manner—parking. This language is sufficient to create an express easement by looking only to the clear and explicit language. Accordingly, if the Licenses are not covenants running with the Land, they are easements.[5]

### ii. As Easements, the License Agreements Cannot be Rejected

An easement, just like a covenant running with the land, cannot be rejected under section 365 of the Bankruptcy Code. *See In re PG&E Corp.*, 2020 WL 5626350, at *3 & n.3 (Bankr. N.D. Cal. Feb. 28, 2020) ("Section 365 cannot be used to reject . . . easements" because they are not executory contracts (citing *Helms v. Southmark Corp.* (*In re Robert L. Helms Constr. & Dev. Co.*), 139

---

[5] Additionally, easements may be appurtenant or in gross. An appurtenant easement exists if the easement "attaches to the [ ] property, the so-called dominant tenement, and burdens the [affected] property, the so-called servient tenement." *Blackmore*, 150 Cal. App. 4th at 1598. Each License Agreement expressly provides that "[t]he License shall be appurtenant" and "shall inure to the benefit of the Licensee." Docket No. 24, Ex. 1 § 10(b); Docket No. 25, Ex. 1 § 10(b). Thus, if not covenants running with the land, the Licenses are easements appurtenant.

F.3d 702, 706 (9th Cir. 1998) (en banc)); *Badlands*, 608 B.R. at 874–75 (holding that the easements are property interests running with the land and as consequence, section 365 is not available to reject those easements).

Additionally, the Debtor cannot terminate easements because section 365 of the Bankruptcy Code does not empower the Debtor to override state law. *See Kent's Run P'ship, Ltd. v. Glosser*, 323 B.R. 408, 423–25 (W.D. Pa. 2005) ("the court is not licensed to interpret § 365 in a manner that fundamentally alters the property interest owned by the debtor on the date of filing"). Under California law, easements may only be terminated in limited circumstances: (i) merger of the estate, (ii) prescription, (iii) consent from the servient tenement, or (iv) abandonment. Cal. Civ. Code § 811. The Debtor alleges no merger, no prescriptive conduct, nor abandonment. *See generally*, Docket Nos. 24–25. And Portside has not otherwise consented to destroying the easement. Therefore, the Debtor cannot reject the License Agreements.

**C.    The Debtor Cannot Reject the License Agreements Because Rejecting Would Violate Applicable Non-Bankruptcy Law**

A debtor in possession must "manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b). There are no exceptions for any debtor to finesse a way out of complying with applicable law. *See In re White Crane Trading Co., Inc.*, 170 B.R. 694, 705 (Bankr. E.D. Cal. 1994) ("the court cannot carve out an exemption from state law"). Applicable state law includes applicable land use and zoning laws. *In re Chaffee Aggregates, Inc.*, 300 B.R. 170, 172 (Bankr. W.D.N.Y. 2003) (finding that the debtor "is bound to the same zoning requirements that would apply to any other owner of real property" and that if the "zoning law would prohibit" certain activity outside of bankruptcy, "it will similarly prohibit such activity" if it occurred "during the pendency of a bankruptcy proceeding") (citing *Cournoyer v. Town of Lincoln*, 790 F.2d 971, 977 (1st Cir. 1986)).

Applicable law also includes permits to operate a business as issued by administrative agencies. *See In re Lazar*, 207 B.R. 668, 682 (Bankr. C.D. Cal. 1997) (acknowledging that the

trustee was required to comply with obtaining necessary permits to operate debtor's business). A conditional use authorization by the Planning Commission derives from California planning and zoning law. *See Neighbors in Support of Appropriate Land Use v. County of Tuolumne*, 157 Cal. App. 4th 997, 1006–07 (2007) (noting that the power derives from the Cal. Gov. Code § 65800 and that the conditional use authorization is a zoning ordinance); *IT Corp. v. Solano Cnty. Bd. of Supervisors*, 1 Cal. 4th 81, 89 (1991) ("The reasonable conditions included in such a [conditional use] permit become part of the zoning regulation applicable to the affected parcel."); *see also* Cal. Gov. Code § 65850(a); Cal. Gov. Code § 65901(a).

A conditional use authorization "grants an owner permission to devote a parcel to a use that the applicable zoning ordinance allows not as a matter of right but **only upon issuance of the permit**." *Neighbors*, 157 Cal. App. 4th at 1006 (emphasis added). The conditions of a conditional use permit "run with the land, once the benefits of the permit ha[ve] been accepted." *Sounhein v. City of San Dimas*, 47 Cal. App. 4th 1181, 1188 (1996). Pursuant to section 303 of the City of San Francisco Planning Code (the "Planning Code"), a "Conditional Use" (as defined in the Planning Code) may be subject to additional conditions beyond those specified in the Planning Code if the Planning Commission determines it is "necessary to secure the objectives of the [Planning] Code." S.F., Cal., Planning Code § 303(c). Finally, California law requires a party to pursue any modification with the Planning Commission. *See* S.F., Cal., Planning Code § 303(e) (party must seek modification of conditional use authorization through the Planning Commission); *Harrington v. City of Davis*, 16 Cal. App. 5th 420, 441 (2017) (challenge to conditional use permit must be raised through administrative process with planning commission before seeking judicial review).

Here, the conditions imposed in the CUA require the Debtor to provide parking to Portside (and Two Bryant). Thus, pursuant to 28 U.S.C. § 959(b), the Debtor cannot circumvent its obligations under the CUA and is bound to continue performing under the License Agreements.

**D.    Even if the License Agreements Can Be Rejected, Portside Retains Its Rights Pursuant to Sections 365(g) and/or 365(h) of the Bankruptcy Code**

To the extent that the Debtor is entitled to reject the License Agreements pursuant to section 365 of the Bankruptcy Code, the rejection merely constitutes "a breach of such contract." 11

U.S.C. § 365(g). "A rejection does not terminate the contract" because the "counterparty retains the rights it has received under the agreement." *Mission Prods. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 381 (2019); *Anytime Fitness, LLC v. Thornhill Bros. Fitness, LLC* (*In re Thornhill Bros. Fitness, LLC*), 85 F.4th 321, 326 (5th Cir. 2023) (applying *Mission Products* to a franchise agreement and holding that the counterparty retains its contractual rights notwithstanding the debtor's rejection of the franchise agreement); *In re Ann Arbor Consultation Servs., Inc.*, 614 B.R. 789, 795 (Bankr. E.D. Mich. 2020) ("Although [*Mission Products*] involved a rejected contract rather than a rejected lease, the **text of § 365(g) expressly applies both to rejection of a contract and to rejection of a lease**. **The Court knows of no reason why [Mission Products] should not apply equally to a rejected lease as it does to a rejected contract**.") (emphasis added); *Hilltop*, 667 B.R. at 119 (applying *Mission Products* to a debtor's rejection of a gas gathering contractual arrangement between the parties and holding that the counterparty retains its rights under the contract); *In re Roberson*, 2019 WL 2320809, at *5 (6th Cir. BAP May 30, 2019) (applying *Mission Products* to a debtor-lessor's rejection of a lease and finding that the lessee may elect to continue the lease). "[T]he debtor cannot rescind the license already conveyed. So, the licensee can continue to do whatever the license authorizes." *Mission Prods. Holdings*, 587 U.S. at 381.

Additionally, because the License Agreements involve the use of real property, they constitute a lease pursuant to section 365(m) of the Bankruptcy Code. 11 U.S.C. § 365(m) ("For purposes of this section 365 . . . leases of real property shall include **any rental agreement to use real property**.") (emphasis added). As a lease of real property for purposes of section 365, Portside also enjoys the benefits of section 365(h), which would allow Portside to continue using the parking spaces under the License Agreements. *See* 11 U.S.C. § 365(h)(1)(A)(ii) ("lessee may retain its rights under such lease (including . . . any right of use, possession . . . that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law"); *Pinnacle Rest. at Big Sky, LLC v. Richardson* (*In re Spanish Peaks Holdings II, LLC*), 872 F.3d 892, 898 (9th Cir. 2017) (holding that the "rejection of an unexpired lease leaves a lessee in possession" with the option to "retain any rights—including a right of continued possession").

Thus, although the Debtor may reject the License Agreements, it "cannot rescind the license it already conveyed," and Portside is entitled to continue using its allocated parking spaces. *Mission Prods. Holding*, 587 U.S. at 381. Accordingly, even if the Debtor rejects the License Agreements, Portside retains its rights under the License Agreements, and the Motions should be denied.

### IV. CONCLUSION

For the foregoing reasons, Two Bryant respectfully requests that the Court deny the Motions.

Dated: October 2, 2025

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW G. BOUSLOG
RACHAEL T. GONZALES

By: */s/ Matthew G. Bouslog*
MATTHEW G. BOUSLOG
Attorneys for Party in Interest
Two Bryant Investors, LLC