Stephen D. Finestone (125675)
Michael J. Coffino (88109)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.: (415) 421-2624
Fax: (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: mcoffino@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for SF Oakland Bay LLC,
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re SF OAKLAND BAY LLC,<br><br>Debtor-in-Possession. | Case No. 25-30699-HLB<br>Chapter 11<br><br>**NOTICE OF APPEAL BY SF OAKLAND BAY LLC AND STATEMENT OF ELECTION** |

Debtor-in-possession, SF Oakland Bay LLC (the "Debtor"), appeals from the Bankruptcy Court's order denying Debtor's motion to reject its parking license agreements with the Portside Homeowners' Association.

## APPEALED DECISION

The appealed decision is the *Order Denying Debtor's Motion to Reject Executory Contracts* and is attached as **Exhibit A** and entered on the docket at ECF 115 on February 19, 2026.

## PARTIES TO THE APPEAL

The parties to the appeal are:

SF Oakland Bay LLC - Debtor and Appellant, represented by:

Finestone Hayes LLP
Stephen D. Finestone (Cal. Bar No. 125675)
Michael J. Coffino (Cal. Bar No. 88109)

NOTICE OF APPEAL

456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.: (415) 421-2624
Fax: (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: mcoffino@fhlawllp.com


Portside Homeowners' Association - counterparty and Appellee, represented by:

Stinson LLP
Donald H. Cram (Cal. Bar No. 160004)
595 Market St., Suite 2600
San Francisco, CA 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
Email: don.cram @stinson.com

Two Bryant Investors, LLC – asserted party in interest, represented by:

Allen Matkins Leck et al.
Matthew G. Bouslog (Cal. Bar No. 280978)
2010 Main St., 8th Floor
Irvine, CA 92614
Telephone: (949) 553-1313
Facsimile: (949) 553-8354
mbouslog@allenmatkins.com

21st Century Corporation – debtor in possession lender, represented by:

Dentons Bingham Greenebaum LLP
Andrew C. Helman (admitted pro hac vice)
One City Center, Suite 11100
Portland, ME 04101
Telephone: (207) 619-0919
Email: andrew.helman@dentons.com

## STATEMENT OF ELECTION

Debtor elects to have the appeal heard by the Bankruptcy Appellate Panel.

NOTICE OF APPEAL 2

Dated March 3, 2026

FINESTONE HAYES LLP

*/s/ Stephen D. Finestone*
Stephen D. Finestone
Counsel for SF Oakland Bay LLC,
Debtor-in-Possession and Appellant

NOTICE OF APPEAL

3

# EXHIBIT A

**Signed and Filed: February 19, 2026**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 25-30699 HLB |
| | ) |
| SF OAKLAND BAY LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

### ORDER DENYING DEBTOR'S MOTION TO REJECT EXECUTORY CONTRACTS

This case came before the court on February 12, 2026 for a hearing on Debtor SF Oakland Bay LLC's Motion to Reject Executory Contracts.[1]  Portside Homeowners' Association ("PHOA") opposed[2] the Motion, as did Two Bryant Investors, LLC ("TBI");[3] Debtor replied.[4]  Appearances were as noted on the record.  For the reasons stated below and those stated on the record during the February 12 hearing, the Motion is hereby **DENIED.**

---

[1] Dkt. 84 (the "Motion"), as supported by the declaration of Mr. Joseph Chua (Dkt. 84-5).

[2] Dkt. 92 (the "PHOA Opposition"), as supported by the declaration of Mr. John Cornwell (Dkt. 92-1).

[3] Dkt. 97 (the "TBI Objection"), as supported by the declaration of Mr. Matthew Paige (Dkt. 98).

[4] Dkt. 99 (the "Reply"), as supported by Mr. Chua's supplemental declaration (Dkt. 99-1) and the declaration of Mr. Michael Silva (Dkt. 99-5).

- 1 -

## I. Background

On February 25, 1994, Debtor's predecessor in interest, Hum Bay Associates ("Hum Bay"), entered into a license agreement with PHOA (the "1994 Agreement").[5] Hum Bay then entered into a second, near identical agreement with PHOA on October 9, 1997 (the "1997 Agreement").[6] The 1994 Agreement and 1997 Agreement (collectively, the "License Agreements") granted PHOA and its members the right to park cars in Hum Bay's garage located at 401 Main Street/38 Bryant St., San Francisco, CA (the "Garage") in exchange for a set monthly fee.

The License Agreements specifically grant "irrevocable license[s]" (each, a "License") to park cars in the Garage in accordance with the License Agreements' terms.[7] Debtor may designate and assign certain parking spaces in the Garage, and PHOA shall assign to any of its members wishing to park in the Garage the "right to use a Designated Space [as defined in the agreements] pursuant to the License and in accordance with the terms and conditions of" the agreement.[8] Upon any such assignment, the PHOA member "shall enter into an addendum" to the License Agreements whereby the PHOA member "shall agree to be bound by the terms and conditions of" the agreement.[9] Debtor

[5] The parties recorded the 1994 Agreement with the City and County of San Francisco on March 1, 1994.

[6] The parties recorded the 1997 Agreement with the City and County of San Francisco on November 21, 1997.

[7] 1994 Agreement, Page 3, ¶1. All citations to the License Agreements' terms correspond to the 1994 Agreement, which is functionally identical to the 1997 Agreement.

[8] 1994 Agreement, Page 3, ¶1.

[9] 1994 Agreement, Page 3-4, ¶1.

Case: 25-30699   Doc# 118   Filed: 03/04/26   Entered: 03/04/26 09:31:20   Page 6 of 29

agrees to "reasonably" assign a parking space to each participating PHOA member but may change the allotted parking space "from time to time . . . if necessary for the operation of the Garage."[10]  Debtor further agrees to provide valet parking from 7am to 7pm, as well as key card access to the Garage during all other hours.[11]  But Debtor may modify or terminate the valet service altogether if it "becomes infeasible or impracticable or otherwise materially adversely affects the operation of the Garage."[12]

All PHOA members using the Garage must pay Debtor a fixed monthly fee.[13]  If a participating PHOA member fails to make timely payment, then "in addition to all other rights and remedies [Debtor] may have under this Agreement and the laws of the State of California, [Debtor] shall have a right to preclude such [PHOA member] from utilizing" the Garage until the PHOA member cures the arrearage.[14]  The parties agree that "only a license of space is granted hereby . . . no bailment is created,"[15] and Debtor may establish operating rules and regulations for the Garage.[16]  Debtor may also designate other

[10] 1994 Agreement, Page 4, ¶2.

[11] 1994 Agreement, Page 4, ¶2.

[12] 1994 Agreement, Page 4-5, ¶2.  Debtor ceased providing valet service in accordance with this paragraph in 2019.

[13] 1994 Agreement, Page 5-7, ¶3(a) and (b).

[14] 1994 Agreement, Page 7, ¶3(b)(4).

[15] 1994 Agreement, Page 8, ¶5.

[16] 1994 Agreement, Page 9, ¶6.

portions of the Garage for "the exclusive use" of parties other than PHOA, as well as eject any persons not authorized to use the Garage and close off portions of the Garage for maintenance or "to prevent acquisition of prescriptive rights."[17]

The License Agreements, and Licenses granted therein, "shall remain in full force and effect in perpetuity" subject to timely payment and "other compliance by" PHOA and its members.[18] In the event of "material breach" by PHOA or its members, Debtor may terminate the License Agreement after giving PHOA, all PHOA members, and any first mortgage lender on PHOA's property 30 days' notice of its intent to terminate.[19] PHOA, its members, and any first mortgage lender "shall have the right to cure such material default within such thirty (30) days, and upon such cure the [License] shall continue in full force and effect."[20]

The License Agreements "shall be appurtenant to [PHOA's property], shall inure to the benefit of [PHOA], [PHOA's tenants] and the owner or owners of [PHOA's property] from time to time and shall burden and be binding upon [the owner of the Garage] and the successive owners of the [Garage]."[21] The License Agreements "shall not be assigned except in connection with the conveyance of, and to the purchaser or transferee of

---

[17] 1994 Agreement, Page 7-8, ¶4.

[18] 1994 Agreement, Page 9-10, ¶7.

[19] 1994 Agreement, Page 10, ¶9(a).

[20] 1994 Agreement, Page 10, ¶9(a).

[21] 1994 Agreement, Page 11, ¶ 10(b).

the fee title interest in [PHOA's property] or [PHOA's condominiums]."[22]  Upon any such conveyance, the assignee, purchaser, or transferee "shall be deemed to have assumed" PHOA's or its members' "obligations hereunder by acceptance of the deed or other instrument of conveyance."[23]  If PHOA ceases operation and "the legal existence of [PHOA] is terminated, this License shall inure to the benefit of the purchaser or transferee of the fee title interest in [PHOA's property]."[24]

### II.  Summary of Arguments

Debtor argues that the License Agreements are non-possessory, non-bailment, personal licenses which do not constitute interests in land under California law and thus may be rejected using § 365(a).[25]  Debtor claims that the License Agreements' explicit language demonstrates that they are neither covenants nor easements and, based on this, it argues that it has exercised sound business judgment in determining that rejecting the License Agreements is permissible, necessary, and beneficial to the continued operation of the Garage.

PHOA and TBI argue, among other things, that the License Agreements are not licenses but recorded, appurtenant, perpetual servitudes.  PHOA and TBI claim that the License

---

[22] 1994 Agreement, Page 11, ¶ 10(b).

[23] 1994 Agreement, Page 11-12, ¶10(b).

[24] 1994 Agreement, Page 12, ¶10(b).

[25] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code, aka the "Bankruptcy Code".

Agreements are either covenants or easements under California law because they grant ongoing, transferrable, irrevocable interests in the Garage.  If the License Agreements are real property interests, either covenants or easements, PHOA and TBI argue that Debtor cannot reject them under § 365(a).

### III. Legal Standard

"Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."[26]  Property interests "are created and defined by state law", and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[27]

"Generally, courts look to the intent of the parties concerning the property to determine whether the agreement should be interpreted to create a lease, easement or license."[28] "Even where a writing exists which categorizes the agreement concerning the property as either a lease, easement or license, that categorization will not control the determination, although the courts will consider the title and language of the document used in deciding the nature of the interest at stake."[29]

---

[26] Butner v. United States, 440 U.S. 48, 54 (1979).

[27] Id. at 55.

[28] United States v. S. Cal. Edison Co., 300 F. Supp. 2d 964, 987 (E.D. Cal. 2004).

[29] Id.

### A. Covenants

A covenant running with the land is a restriction on the use of the grantor's land that "binds successive owners of a servient estate, and frequently benefits the owners of a related (and often adjacent) dominant estate, who are entitled to the benefits of the servitude."[30]  "A covenant runs with the land when it is appurtenant to the estate granted and passes with it, '... so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them.'"[31]  "To run with the land, a covenant must touch and concern land, which means it must affect the parties as owners of the particular estates in land or relate to the use of land."[32]

"The primary characteristic of a covenant running with the land is that both liability upon it and enforceability of it pass with the transfer of the estate.  The benefits or burdens pass by implication of law rather than under principles of contract."[33]  "[A]lthough restrictive covenants contain the characteristics of both a contract and an interest in land, the primary nature of such covenants is preservation of a land interest, not future duties in contract."[34]

---

[30] In re Snow, 201 B.R. 968, 972 (Bankr. C.D. Cal. 1996).

[31] Anthony v. Brea Glenbrook Club, 58 Cal. App. 3d 506, 510 (1976) (quoting Cal. Civ. Code § 1460).

[32] Self v. Sharafi, 220 Cal. App. 4th 483, 488 (2013).

[33] Id.

[34] In re Hayes, No. ADV.07-00045-RBK, 2008 WL 8444812, at *10 (B.A.P. 9th Cir. Mar. 31, 2008) (citing Gouveia v. Tazbir, 37 F.3d 295, 298-99 (7th Cir. 1994)).

Pursuant to Cal. Civ. Code § 1461, "[t]he only covenants which run with the land are those specified in this Title, and those which are incidental thereto."[35] A covenant can run with the land under either Cal. Civ. Code §§ 1462 or 1468.[36] Pursuant to Cal. Civ. Code § 1462, "[e]very covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land."

Pursuant to Cal. Civ. Code § 1468, "[e]ach covenant, made by an owner of land with the owner of other land or made by a grantor of land with the grantee of land conveyed, or made by the grantee of land conveyed with the grantor thereof, to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, runs with both the land owned by or granted to the covenantor and the land owned by or granted to the covenantee and shall . . . benefit or be binding upon each successive owner, during his ownership[.]" For a covenant to run with the land pursuant to Cal. Civ. Code § 1468, "(1) the benefited and burdened lands must be particularly described in the instrument creating the covenant, either a deed between grantor and grantee or an agreement between landowners, (2) the covenantor's successors must be expressly bound for the benefit of the covenantee's land, (3) the covenant must concern the use, repair, maintenance, or improvement of the property or the

---

[35] <u>Self v. Sharafi</u>, 220 Cal. App. 4th at 488.

[36] <u>Id.</u>

Case: 25-30669    Doc# 115    Filed: 03/04/26    Entered: 03/04/26 09:31:14    Page 12 of

payment of taxes and assessments and (4) the agreement must be recorded."[37]

**B.   Easements**

"An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land."[38]  "An easement creates a *nonpossessory* right to enter and use land in another's possession and obligates the possessor not to interfere with the uses authorized by the easement."[39]  "Thus, '[t]he owner of the easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose . . . ."'"[40]

"The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement."[41]  "While it is true that ordinarily an easement is a right in fee, it is not necessarily so."[42]  "The

---

[37] Oceanside Cmty. Ass'n v. Oceanside Land Co., 147 Cal. App. 3d 166, 174 n.4 (1983); Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP, 191 Cal. App. 4th 1500, 1517-18 (2011).

[38] Main Street Plaza v. Cartwright & Main, LLC, 194 Cal. App. 4th 1044, 1053 (2017).

[39] Id. (emphasis added); Blackmore v. Powell, 150 Cal. App. 4th 1593, 1598 (2007) ("An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership.").

[40] Blackmore v. Powell, 150 Cal. App. 4th at 1598 (citation omitted); Golden West Baseball Co. v. City of Anaheim, 25 Cal. App. 4th 11, 35 (1994) ("[T]he holder of an easement merely has a right to use the property.").

[41] Main Street Plaza v. Cartwright & Main, LLC, 194 Cal. App. 4th at 1054 (citation omitted).

[42] Eastman v. Piper, 68 Cal. App. 554, 562 (Dist. Ct. App. 1924).

Case: 25-30699   Doc# 1115   Filed: 03/04/26   Entered: 03/04/26 09:31:24   Page 13 of
29

interest of an easement may be less than a freehold; it may be a chattel interest.  That is, it may be an estate in fee, or less than fee, or even for a term of years."[43]

An easement "may be created by (1) an express grant, (2) an express reservation, (3) an implied grant, (4) an implied reservation, (5) necessity, (6) prescription, (7) a recorded covenant, (8) dedication, (9) condemnation, (10) estoppel, or (11) a court decision."[44]  Additionally, an easement is appurtenant when "it attaches to [the grantee's] property, the so-called dominant tenement, and burdens [the grantor's] property, the so-called servient tenement."[45]  The grantor of an easement may charge fees for the use and enjoyment of an easement.[46]

### C.   Licenses

"A license has been defined by the California courts as 'an authority to do a particular act, or series of acts, on another's land, without possessing any estate therein.'"[47] Licenses are "impermanent, personal, always revocable,

---

[43] Id.

[44] Main Street Plaza v. Cartwright & Main, LLC, 194 Cal. App. 4th at 1053-54; Golden West Baseball Co. v. City of Anaheim, 25 Cal. App. 4th at 35 ("An easement . . . may be created by contract even though it does not contain formal words of conveyance.").

[45] Blackmore v. Powell, 150 Cal. App. 4th at 1599.

[46] Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc., 231 Cal. App. 4th 134, 171-72 (2014) (finding that a grantor charging monthly "rent" for a perpetual, non-exclusive easement did not transform the parties into a landlord-tenant relationship so long as the interest being granted was non-exclusive and perpetual).

[47] Smith v. Royal Ins. Co., 111 F.2d 667, 670 (9th Cir. 1940) (citation omitted).

unassignable privilege[s] and cannot constitute a legal interest in land."[48]  Moreover, "a license, being a mere personal privilege, is *never extended* to the heirs or assigns of the licensee [because] any attempt by the licensee to assign the license ordinarily destroys and terminates it."[49]  "[A] license does not run with the land to bind a subsequent purchaser."[50]

Generally, a "license is best understood as a residuary category, which [applies] whenever an interest does not meet the definitional parameters of a lease or easement.  A license, commonly viewed as an interest of much less significance than other property rights, is often stated to be not an interest in land at all, but only the mere permission of the landowner."[51]

When determining whether an agreement is a license, covenant, or easement, "[i]f the language [of an agreement] is in any respect uncertain or ambiguous, then the court must read the instrument in the light of the situation of the property and the surrounding circumstances, to the end that the intention of the parties may be ascertained and given effect."[52]

---

[48] United States v. S. Cal. Edison Co., 300 F. Supp. 2d at 987.

[49] Gamerberg v. 3000 E. 11th St. LLC, 44 Cal. App. 5th 424, 429 (2020); Eastman v. Piper, 68 Cal. App. at 562 (finding that granting the use of one's land to a grantee and its heirs and assigns indicates "that something more than a license was intended to be granted").

[50] Riverside Cnty. Transportation Com. v. S. California Gas Co., 54 Cal. App. 5th 823, 841 (2020), as modified on denial of reh'g (Sept. 16, 2020).

[51] Gamerberg, 44 Cal. App. 5th at 429.

[52] Eastman v. Piper, 68 Cal. App. at 561.

Case: 25-30699   Doc# 118   Filed: 02/04/26   Entered: 02/04/26 09:21:29   Page 15 of 29

**IV. Analysis**

The License Agreements are ambiguous as to what interest they grant PHOA and its members. They are clearly labeled as licenses, specify that "only a license of space is granted hereby . . . no bailment is created", and prohibit assignment of the individual licenses outside of narrowly defined methods. But the License Agreements are perpetual, irrevocable, and contain many provisions which are antithetical to the principals of licenses under California law. Therefore, the court must read them "in the light of the situation" of the Garage and "the surrounding circumstances, to the end that the intention of the parties may be ascertained and given effect."[53]

**A. The License Agreements are covenants**

The surrounding circumstances and apparent intention of the parties weigh in favor of finding that the License Agreements are covenants.[54]

First, the License Agreements satisfy the Cal. Civ. Code § 1468 and <u>Oceanside</u> four-factor test.[55] Each License granted under the agreements identifies both the specific parking space by lot and the precise PHOA member receiving the benefit of that parking space. Second, Debtor's successors are expressly bound to continue providing the parking space, subject to compliance with the License Agreements' terms, as each License is "irrevocable, appurtenant to [PHOA's property], shall inure

---

[53] <u>Id.</u>

[54] <u>Id.</u>

[55] 147 Cal. App. 3d at 174 n.4; <u>Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP</u>, 191 Cal. App. 4th at 1517-18.

Case: 25-30699   Doc# 118   Filed: 02/04/26   Entered: 02/04/26 09:21:29   Page 16 of 29

to the benefit of [PHOA], [PHOA's members] and the owner or owners of [PHOA's property] from time to time and shall burden and be binding upon [the Garage] and the successive owners of the [Garage]."[56]  Third, the License Agreements touch and concern the Garage because they affect both Debtor's ownership of the Garage and PHOA's use of the Garage:  (i) Debtor must provide parking access, signage, and Garage upkeep; and (ii) PHOA and its members may park in the Garage.  Finally, the parties recorded the License Agreements with the City and County of San Francisco.  Therefore, the License Agreements satisfy the four-factor Oceanside analysis and are covenants under California law.[57]

The court also finds that the License Agreements are covenants in all but name.  A "primary characteristic of a covenant running with the land is that both liability upon it and enforceability of it pass with the transfer of the estate," and the License Agreements appear to do just that.[58]  The License Agreements are expressly *appurtenant* to PHOA, shall run with the land to successive owners of both PHOA and Debtor, and successive owners of PHOA "shall be deemed to have assumed" PHOA's or its members' "obligations . . . by acceptance of the deed or other instrument of conveyance."  This language weighs

[56] Absent violation of the License Agreements' express terms, the License Agreements "shall remain in full force and effect in perpetuity."

[57] 147 Cal. App. 3d at 174 n.4; Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP, 191 Cal. App. 4th at 1517-18.

[58] Self v. Sharafi, 220 Cal. App. 4th at 488.

heavily in favor of finding that the License Agreements are covenants.

Additionally, licenses are "always revocable", yet the License Agreements are expressly "irrevocable" and, if performed in compliance with their terms, will "remain in full force and effect in perpetuity."[59] Even in the event of material breach, PHOA, its members, and any first lienholder on PHOA's property have the *right* to cure the breach, and Debtor has no right to terminate the License Agreements if PHOA cures its breach in a timely manner. This indicates that the parties intended the License Agreements to be functionally irrevocable, which is inconsistent with the core principles of licenses under California law and weighs heavily in favor of finding that the License Agreements are covenants.[60]

Finally, the License Agreements provide inheritable, irrevocable, and perpetual parking rights, which indicates that their primary nature is "preservation of a land interest, not future duties in contract."[61] Accordingly, the License Agreements' express terms, combined with the surrounding circumstances and apparent intention of the parties, weighs in favor of finding that the License Agreements are covenants.

---

[59] United States v. S. Cal. Edison Co., 300 F. Supp. 2d at 987.

[60] Id.

[61] In re Hayes, 2008 WL 8444812, at *10; Gamerberg, 44 Cal. App. 5th at 429 ("Unlike covenants that run with the land . . . a license is a personal right and confers no interest in land: '[I]t merely makes lawful an act that otherwise would constitute a trespass.'").

## B.  Alternatively, the License Agreements are Easements

If the License Agreements are not covenants, the surrounding circumstances and apparent intention of the parties weigh in favor of finding that they are easements.[62]

"The distinction between a license and an easement is often subtle and difficult to discern."[63]  When comparing an easement to a license, the "primary distinction is that a license is normally revocable at will."[64]  "California courts have long recognized that '[a]n irrevocable license . . . is for all intents and purposes the equivalent of an easement.'"[65]

The License Agreements are "irrevocable" and, subject to compliance with the terms of the agreements, will remain in full force and effect in perpetuity.  This alone leads the court to conclude that the License Agreements are easements under California law.  While Debtor argues that California courts have recognized the existence of irrevocable licenses, those limited instances involved licenses that courts deemed irrevocable under the principals of *equity*, not due to their express terms.[66]

---

[62] Eastman v. Piper, 68 Cal. App. at 560.

[63] Id.

[64] Golden West Baseball Co. v. City of Anaheim, 25 Cal. App. 4th at 36; Richardson v. Franc, 233 Cal. App. 4th 744, 751 (2015) ("A licensor generally can revoke a license at any time without excuse or without consideration to the licensee.").

[65] Gamerberg, 44 Cal. App. 5th at 434 (quoting Barnes v. Hussa, 136 Cal. App. 4th 1358, 1370 (2006)).

[66] Stoner v. Zucker, 148 Cal. 516, 519 (1906) ("[T]here are many cases where a mere parol license which has been executed, and where investments have been made upon the faith of it, has been held irrevocable"); Gamerberg, 44 Cal. App. 5th at 428 ("The grant of an irrevocable license is 'based in equity'").

Case: 25-30699   Doc# 118   Filed: 02/04/26   Entered: 02/04/26 09:21:20   Page 19 of 29

Furthermore, "a license, being a mere personal privilege, is never extended to the heirs or assigns of the licensee."[67] The License Agreements are expressly appurtenant to PHOA's property, are inheritable to successive owners of PHOA's property, and the obligations under the License Agreements pass to the successive owners of both PHOA and Debtor.  Therefore, the explicit intent for the License Agreements to pass to the parties' successors is incompatible with the principles of licenses under California law and weighs in favor of finding that the License Agreements are easements.

Finally, while the parties exclusively defined the agreements as licenses, "[e]ven where a writing exists which categorizes the agreement concerning the property as either a lease, easement or license, that categorization will not control the determination."[68]  The License Agreements' status as appurtenant, irrevocable, and lasting in perpetuity, combined with the express right to cure any material breach and the above mentioned factors, indicates that despite their label as licenses, "something more than a license was intended to be granted; that it was intended to create an inheritable interest . . . in short, an easement."[69]  Accordingly, if the License

[67] Gamerberg, 44 Cal. App. 5th at 429; Eastman v. Piper, 68 Cal. App. at 562 (finding that granting the use of one's land to a grantee and its heirs and assigns indicates "that something more than a license was intended to be granted"); Riverside Cnty. Transportation Com. v. S. California Gas Co., 54 Cal. App. 5th at 841 ("[A] license does not run with the land to bind a subsequent purchaser.").

[68] United States v. S. Cal. Edison Co., 300 F. Supp. 2d at 987.

[69] Eastman v. Piper, 68 Cal. App. at 562.

Case: 25-30699   Doc# 118   Filed: 02/04/26   Entered: 02/04/26 09:21:29   Page 20 of 29

Agreements are not covenants, then they are certainly easements.

**C. § 365(a)**

"Pursuant to Bankruptcy Code section 365(a), a chapter 11 debtor in possession, 'subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor.'"[70] "The Bankruptcy Code furnishes no express definition of an executory contract . . . but the legislative history to § 365(a) indicates that Congress intended the term to mean a contract 'on which performance is due to some extent on both sides.'"[71] "More precisely, a contract is executory if 'the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'"[72]

Courts have routinely held that restrictive covenants on real estate are not executory contracts subject to rejection under § 365(a).[73] Courts have also held that debtors cannot

---

[70] In re Player's Poker Club, Inc., 636 B.R. 811, 816 (Bankr. C.D. Cal. 2022).

[71] NLRB v. Bildisco & Bildisco, 465 U.S. 513. 522 n.6 (1984) (citation omitted).

[72] In re Robert L. Helms Constr. & Dev. Co., 139 F.3d 702, 705 (9th Cir. 1998) (citation omitted).

[73] In re Hayes, 2008 WL 8444812, at *10 ("Although there will almost always be some incidental continuing obligations under a restrictive covenant, those duties were not the kind of obligations Congress intended to impact in enacting § 365" (citing Gouveia v. Tazbir, 37 F.3d 295, 298-99 (7th Cir. 1994))); In re Badlands Energy, Inc., 608 B.R. 854, 875 (Bankr. D. Colo. 2019) ("Because the Agreements are covenants that run with the land . . . Section 365 is simply not available"); In re Sabine Oil & Gas Corp., 567 B.R. 869, 874 (S.D.N.Y. 2017) ("[I]t is not possible for a debtor to reject a covenant that 'runs with the land,' since such a covenant creates a property interest that is not extinguished through bankruptcy."), aff'd, 734 F. App'x 64 (2d Cir. 2018); In re Alta Mesa Res., Inc., 613 B.R. 90, 98 (Bankr. S.D. Tex. 2019)

reject easements using § 365(a).[74]  Therefore, because the License Agreements are either covenants or easements, Debtor cannot reject them under § 365(a).

**V.   Conclusion**

Accordingly, for the reasons stated above and on the record during the February 12 hearing, the Motion is hereby **DENIED**.

**\*\*END OF ORDER\*\***

---

("Real property covenants are not executory and are not subject to rejection.").

[74] In re PG&E Corp., No. 19-30088-DM, 2020 WL 5626350, at \*3 (Bankr. N.D. Cal. Feb. 28, 2020) ("Section 365 cannot be used to reject restrictive covenants and easements, assuming they in fact exist." (citing In re Hayes, 2008 WL 8444812, at \*10)).

## Court Service List

[None]